**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| **D.C. et al.,** | |
| **Plaintiffs,** | |
| **v.** | **Case No. 1:22-cv-01070** |
| **Fairfax County School Board, et al.** | |
| **Defendants.** | |

**MEMORANDUM IN SUPPORT OF**
**VIRGINIA DEPARTMENT OF EDUCATION AND SUPERINTENDENT BALOW'S**
**MOTION TO DISMISS PURSUANT TO RULES 12(b)(1) and 12(b)(6)**

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, Defendants, Virginia Department of Education ("VDOE"), and Jillian Balow, in her official capacity as Superintendent of Public Instruction of VDOE (collectively "VDOE Defendants"), by counsel, submit this Memorandum of Law in Support of their Motion to Dismiss the Complaint filed by D.C., by and through his guardians, Trevor and Vivian Chaplick ("D.C."), Trevor and Vivian Chaplick ("Chaplicks"), and Hear Our Voices, Inc. (collectively "Plaintiffs").

**I.      INTRODUCTION**

In reliance on speculation and flawed statistics, Plaintiffs bring the instant lawsuit alleging that due process hearings in Virginia and specifically in Fairfax are unfair and biased and thus violate federal and state law.  At its core, the Complaint alleges that D.C. did not receive a Free Appropriate Public Education ("FAPE").  Plaintiffs disagree with the Fairfax County Public Schools' ("FCPS") positions on D.C.'s placement and the outcome of D.C.'s 2015 due process hearing, and the Chaplicks have buyers' remorse about agreements they reached with FCPS for D.C.'s education and placements in 2015 and 2021.  And although the Chaplicks never filed a due

1

process complaint for their most recent disagreement with FCPS arising out of D.C.'s placement in October 2021, they have filed this proposed class action lawsuit against the VDOE Defendants. In doing so, Plaintiffs have ignored the administrative process for resolving disputes between parents and local educational agencies required under Virginia's Administrative Code. As such, all of Plaintiffs' claims are barred for failure to exhaust administrative remedies. Moreover, Plaintiffs lack standing, and the Eleventh Amendment bars all but Plaintiffs' IDEA claims. Further, as a matter of law, the allegations fail to plausibly allege a cause of action against the VDOE Defendants. The Complaint should be dismissed with prejudice.

## II.   FACTUAL ALLEGATIONS

The Complaint alleges that D.C. is a nineteen-year-old, educationally disabled student as defined under the Individuals with Disabilities Education Act ("IDEA"). Compl. ¶ 18. Under the IDEA, children with disabilities attending public school in Virginia must be provided a FAPE, which is achieved through the development and implementation of an Individualized Education Plan ("IEP"). 8VAC20-81-100; 8VAC20-81-110. Each disabled child's IEP is developed in a collaborative process by an IEP team composed of the child's parent(s), regular education teacher(s), special education teacher(s), a representative of the local school district, individuals who can interpret instructional implications of evaluation results, and other persons, such as counselors and therapists, who have knowledge or special expertise regarding the child. 8VAC20-81-110(C). In working toward a consensus in developing each child's IEP, the IEP team considers the strengths of the child, concerns of the parent for enhancing their child's education, the results of the initial or most recent evaluation of the child, and the academic, developmental, and functional needs of the child. 8VAC20-81-110(F). The IEP team determines the educational

placement of a child with a disability in the least restrictive environment.  8VAC20-81-130(A) and (C).

Here, in 2008, FCPS found D.C. eligible for special education services as a student with Autism and an Intellectual Disability and provided him with an IEP.  *Id.* ¶ 5.  Pursuant to his IEP, D.C. was placed in a special education program at a Fairfax County school building.  *Id.* ¶ 6. D.C.'s parents, the Chaplicks, petitioned FCPS for a residential placement in the Grafton Integrated Health Network's Integrated Residential/Education Program ("Grafton"), located in Winchester, Virginia.  *Id.* ¶ 7.  FCPS found that D.C. was appropriately placed in the public-school setting and did not approve the request for residential placement at Grafton.  *Id.* ¶ 10.  In July 2014, the Chaplicks enrolled D.C. in Grafton at their own expense.[1]  *Id.* ¶ 103.

On July 26, 2015, the Chaplicks filed a due process complaint to challenge FCPS' placement of D.C. in a public day school setting.  *Id.*  After the Chaplicks rejected FCPS' settlement offer, a due process hearing was held, in which Morgan Brooke-Devlin ("Devlin") served as the hearing officer and the Chaplicks contended that D.C. required a residential placement to make educational progress and prevent physical risk to himself and others.  *Id.* ¶¶ 104-106.  On September 9, 2015, Devlin found in favor of FCPS and denied the Chaplicks' request for residential placement.  *Id.* ¶ 106.  In an October 2015 letter to VDOE, D.C.'s attorney alleged that Devlin was biased, and her opinion misinformed, and he asked that she not be appointed to any further due process actions.  *Id.* ¶¶ 107-109.  After the hearing, the Chaplicks entered into a

---

[1] Local school districts are not required to pay for the cost of education, including special education and related services, of a child with a disability at a private school or facility if the local school district made a FAPE available to the child and the parents elected to place the child in a private school or facility.  8VAC20-81-150(B)(1); 34 CFR 300.148(a).  Disagreements between parents and local school districts regarding the availability of an appropriate program for the child and the question of financial responsibility are subject to due process procedures.  8VAC20-81-150(B)(2); 34 CFR 300.148(b); *see also* 8VAC20-81-210.

settlement agreement with FCPS, whereby FCPS provided financial support for the day portion of D.C.'s educational placement at Grafton and the Chaplicks and insurance paid the residential costs. *Id.* ¶ 111.

During the COVID-19 pandemic, Grafton began pressing the Chaplicks to transfer D.C., who turned 18-years-old in 2020, to an adult group home not operated by Grafton. *Id.* ¶¶ 1, 112. On September 1, 2020, D.C.'s parents "requested that FCPS support D.C.'s program and residential placement at Grafton." *Id.* ¶ 112. FCPS convened an IEP meeting with the Chaplicks and staff from Grafton to discuss the parents' request to change D.C.'s IEP. *Id.* ¶ 113. At the meeting, Adam Cahuantzi, a FCPS employee, recommended continuing the day placement at Grafton. *Id.* ¶¶ 113-114. The parents pursued additional IEP meetings and requested that Cahuantzi recuse himself, claiming he had not treated them as equal IEP team participants and did not have D.C.'s best interests at heart. *Id.* ¶ 117.

In February 2021, the Chaplicks served FCPS with formal notice for a due process hearing, claiming FCPS failed to propose an appropriate residential program and placement for D.C. in the 2020-2021 school year. *Id.* ¶¶ 119-120. After notice that Devlin would serve as the hearing officer, the Chaplicks moved for Devlin's recusal based on her prior involvement with D.C. and his family, which she denied. *Id.* ¶¶ 120-121. D.C.'s counsel then filed a petition to disqualify Devlin on grounds that she was unable to serve as an impartial hearing officer, which Devlin also denied.[2] *Id.* ¶¶ 121, 124, 128.

---

[2] The Supreme Court of Virginia administers the impartial hearing officer system and appoints the special education hearing officer when a party files a due process complaint and requests a hearing. 8VAC20-81-210(B), and (H)(1)(a). After notice of the hearing officer's appointment, the parties can object to the appointment by presenting a request for consideration to the hearing officer, and if the hearing officer's ruling on the objection does not resolve the issue, the parties have five business days to file an affidavit with the Executive Secretary of the Supreme Court of Virginia or the objection is waived. 8VAC20-81-210(H)(3), and (a).

Then, in April 2021, the Chaplicks started securing DD Waiver funds for certain residential services and contacted ResCare, a provider of adult group homes, due to Grafton's position that D.C. should enter an adult group home. *Id.* ¶¶ 133-134. FCPS also held additional IEP meetings with the Chaplicks and, on August 4, 2021, FCPS agreed that D.C. required residential placement and approved him for residential placement at Grafton. *Id.* ¶¶ 129, 131. On August 17, 2021, the Chaplicks signed and returned the agreed-upon IEP to FCPS, providing that D.C. would be placed in Grafton's residential program. *Id.* ¶ 132.

Not long after, the Chaplicks received notice of an opening at a ResCare adult group home. *Id.* ¶¶ 134-136. On September 16, 2021, the Chaplicks notified FCPS that D.C. would be moving on October 7, 2021 to a ResCare group home and asked if another IEP meeting was necessary. *Id.* ¶ 137. D.C.'s parents wanted D.C. to continue to attend Grafton for his education if he had a service for transportation from the group home. *Id.* ¶ 135. On October 5, 2021, FCPS responded that once D.C. moved into the group home, "FCPS will no longer be able to implement the IEP as agreed-upon and D.C. will access Grafton as a day school student. The group home, ResCare, is not associated with Grafton's residential program." *Id.* ¶ 138. FCPS also stated another IEP meeting was not necessary at that time. *Id.* ¶ 139. Because D.C moved to the group home, FCPS changed his IEP from residential to day placement. *See id.* ¶ 143. The DD Waiver would pay residential services but not room and board at the group home. *Id.* ¶¶ 134, 136.

In this lawsuit, Plaintiffs allege violations of due process and equal protection under § 1983, the IDEA, Virginia Code § 22.1-214, and the Virginia Administrative Code, and claim that Virginia's statutory and administrative provisions violate the IDEA. Compl. ¶¶ 150-191. D.C. also brings claims against FCPS for allegedly failing to hold an IEP meeting, provide a FAPE, and offer appropriate program and placement, and against FCPS and VDOE for an alleged due process

5

violation under the IDEA and Virginia law.  *Id.* ¶¶ 192-200.  For relief, on behalf of themselves and a putative class of all others similarly situated, Plaintiffs ask for declaratory and injunctive relief, reimbursement for residential costs and expenses at Grafton and ResCare, attorney's fees, and costs.

## III.   LEGAL STANDARD

### A.   Federal Rule of Civil Procedure 12(b)(1)

Rule 12(b)(1) of the Federal Rules of Civil Procedure enables a party to move for dismissal by challenging a court's jurisdiction over a subject matter.  Fed. R. Civ. P. 12(b)(1); *see Nelson v. United States Postal Serv.*, 189 F. Supp. 2d 450, 454 (W.D. Va. 2002).  A court must dismiss a case where the court finds subject matter jurisdiction lacking.  *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006*).  A plaintiff bears the burden of proof for establishing that federal subject matter jurisdiction is proper.  *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009). A court may dismiss a complaint which fails to allege facts to demonstrate subject matter jurisdiction.  *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

### B.   Federal Rule of Civil Procedure 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "The function of a motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint."  *Allen v. Coll. of William & Mary,* 245 F. Supp. 2d 777, 783 (E.D. Va. 2003).  In considering the complaint in the light most favorable to the non-moving party, a court must grant a motion to dismiss if the plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  While detailed factual allegations are unnecessary, a plaintiff is obligated to provide the "grounds" of his

"entitlement to relief," and this requires more than labels and conclusions and a formulaic recitation of the elements of a cause of action in the form of allegations that raise a right to relief above the speculative level. *Id*. at 555. The plaintiff must show that there is more than a mere possibility that a defendant acted unlawfully. *Id*. at 556.

In *Ashcroft v. Iqbal*, the Supreme Court of the United States explained: "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 556 U.S. 662, 678 (2009). Not only are legal conclusions not to be accepted as true, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (quoting *Twombly*, 550 U.S. at 555). Additionally, the task is "context-specific," meaning the Court is allowed to impose on the analysis its "judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (internal citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not 'show[n]'--that the pleader is entitled to relief." *Id*. at 679.

## IV.   ARGUMENT

### A.   Plaintiffs Fail to Establish Standing

#### 1.   D.C. and the Chaplicks Fail to Allege an Injury in Fact that is Fairly Traceable to the VDOE Defendants

D.C. and his parents' claims against the VDOE Defendants fail because they do not have standing. Article III of the Constitution limits the judicial power of the federal courts to "cases" and "controversies," and thus, "restricts it . . . to redress[ing] or prevent[ing] actual or imminently threatened injury to persons caused by private or official violations of the law." *Summers v. Earth Island Inst.*, 555 U.S. 488, 492 (2009) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). "A claim is justiciable if the 'conflicting contentions of the parties . . . present a real,

substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract.'" *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006) (citing *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)).

"[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."[3] *Friends of Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 562 U.S. 167, 180-81 (2000) (citing *Lujan*, 504 U.S. at 560-61). "A plaintiff's injury satisfies the traceability element of standing when there is 'a causal connection between the injury and the [defendant's] conduct complained of by the plaintiff." *Disability Rights S.C. v. McMaster*, 24 F.4th 893, 901 (4th Cir. 2022). To establish redressability, "[the] plaintiff must show that the court has the power to grant the plaintiff's requested relief." *Buscemi v. Bell*, 964 F.3d 252, 259 (4th Cir. 2020). The plaintiff bears the burden of showing standing. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2207 (2021) (citing *Lujan*, 504 U.S. at 561).

Further, injunctive relief "'is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again.'" *Thomas v. Salvation Army S. Terr.,* 841 F.3d 632, 638 (4th Cir. 2016) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)). "In short, an injury should

---

[3] In a class action, standing is analyzed based on the allegations of personal injury made by the named plaintiff, and thus a putative class cannot establish Article III standing "without a significant allegation of harm to the named plaintiff in particular." *Baehr v. Creig Northrop Team, P.C.*, 953 F.3d 244, 252-53 (4th Cir. 2020) (quoting *Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*, 892 F.3d 613, 620 (4th Cir. 2018)). At the appropriate time, the VDOE Defendants will oppose any motion to certify and fully discuss the reasons class certification is inappropriate in this case.

be 'certainly impending' to serve as the basis for standing in a suit for injunctive relief." *Griffin v. Dep't of Labor Fed. Credit Union*, 912 F.3d 649, 655 (4th Cir. 2015) (citing *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)); *see also Simmons v. Poe*, 47 F.3d 1370, 1382 (4th Cir. 1995) ("The law is well settled that federal injunctive relief is an extreme remedy.")

Here, D.C. fails to allege an injury in fact.  The crux of the Complaint is that due process hearing officers are allegedly biased in favor of local educational agencies.  *See generally* Compl. But D.C.'s alleged injury-in-fact stems from his parents' own decision in 2021 to move him into a group home not operated by Grafton, which caused FCPS to change D.C.'s IEP to reflect that he is a day student at Grafton.  *See* Compl. ¶ 138.  D.C. never filed a request for a due process hearing to challenge that decision.  Plainly, with no due process hearing and no decision by a hearing officer, D.C. could not have suffered an injury based on a "biased" hearing officer's decision.

Likewise, in February 2021, the Chaplicks served FCPS with a formal request for a due process hearing but no due process hearing ever took place because, after additional meetings, FCPS and the Chaplicks agreed on the terms of D.C.'s IEP in August 2021.  Thus, there can be no injury-in-fact arising from a due-process hearing request that the Chaplicks voluntarily abandoned. Compl. ¶¶ 120, 129, 132.  In September 2015, the Chaplicks also challenged the appropriateness of D.C.'s IEP in a due process hearing, but the Chaplicks did not appeal this decision to a state or federal district court and instead entered into a settlement agreement with FCPS.  Compl. ¶¶ 106-108, 111.  Any claim with respect to this 2015 decision is time-barred.  8VAC20-81-210(T)(1) (hearing officer's decision is final and binding unless it is appealed in a state circuit court within 180 days or in federal district court within 90 days of the decision); Va. Code § 22.1-214(D); *Manning by Manning v. Fairfax Cnty. Sch. Bd.*, 176 F.3d 235, 237-38 (4th Cir. 1999) (establishing the statute of limitations for IDEA claims is two years in Virginia).

9

Accordingly, D.C. fails to allege an injury-in-fact.[4]  And to the extent D.C. claims to be injured because any due process hearing he requested would have been flawed, such a speculative injury fails to show standing, especially since he did not know who the Office of the Executive Secretary of the Virginia Supreme Court would appoint to serve as hearing officer for the hypothetical hearing.[5]  Moreover, D.C. has not filed a due process complaint.  *See* Compl. ¶ 147. And it is nothing more than speculation to suggest that if D.C. filed a due process complaint and took it to a hearing that his rights under the IDEA would be violated.  Without immediacy of impending harm, D.C. is not entitled to the injunctive relief sought.

In addition, D.C. and the Chaplicks fail to establish that any "injury" is traceable to the VDOE Defendants.  The Complaint lacks plausible factual allegations to show a causal connection between D.C.'s alleged injury and the alleged conduct of the VDOE Defendants.  First, as alleged in the Complaint, VDOE was not directly involved with determining the appropriateness of D.C.'s IEP to provide him with a FAPE.  *See* Compl. ¶¶ 5, 113, 116; 8VAC20-81-30(B).  And any allegation of a denial of FAPE based on the appointment of Devlin to D.C.'s second due process complaint in February 2021, which never went to a hearing, is supported only by conclusory allegations comprised of D.C.'s opinion of Devlin and a disagreement with her finding in his 2015 due process hearing.  *See* Compl. ¶¶ 104-109.  D.C. has not alleged facts to plausibly demonstrate widespread systemic issues with due process hearings across Virginia that are fairly traceable to VDOE's conduct.

---

[4] D.C.'s parents' claims are predicated on allegations concerning D.C.'s IEP, and thus, because D.C. fails to allege an injury-in-fact, the Chaplicks also fail to allege an injury-in-fact.

[5] In February 2021, D.C. objected to Devlin's appointment as hearing officer by submitting a petition to disqualify to Devlin, but D.C. never lodged any objection of Devlin's appointment with the Supreme Court of Virginia and thus he waived the objection.  8VAC20-81-210(H)(3), and (a).

Also, D.C.'s reliance on flawed statistics, which he claims show that VDOE oversees a sham due process hearing system stacked with biased hearing officers, fails to make the requisite nexus.  *See* Compl. ¶ 52.  D.C. claims that between 2010 and 2021, 847 due process claims were filed in Virginia under the IDEA, and of those cases, only 13 resulted in a ruling granting the relief requested by a disabled student or the student's parent, equaling less than 1.5 percent in the entire state of Virginia.  *Id.* ¶ 52.  He further claims the statistics in Northern Virginia are even worse, finding .76 percent for the disabled student or student's parents.  *Id.*

These statistics, however, are flawed.  Namely, in drawing conclusions as to rulings in favor of parents and in favor of schools, D.C. uses the total number of due process claims, which includes withdrawn, settled, and dismissed cases that constituted about 86 percent of the total due process claims filed from 2010-2021.  *Id.* ¶ 52; ECF No. 1-1.  Obviously, by employing the total number of due process claims filed rather than the total number of due process claims actually adjudicated, D.C.'s statistical findings are skewed.  *Id.*  When withdrawn, settled, and dismissed claims are excluded from the calculation, D.C.'s Exhibit A shows that of the 246 cases that went to a hearing from 2010 through July 2021, approximately 72 percent resulted in decisions D.C. claims to be in favor of the school district, 11 percent in favor of the parent, and 17 percent resulted in split decisions.[6]  ECF No. 1-1.  D.C.'s statistics are also skewed by conflating dismissed claims with rulings for schools and excluding partial rulings for parents.  ECF Nos. 1-1, 1-2, 1-3. Likewise, D.C. alleges Virginia's system is biased based on studies he claims show that other states have higher percentages of findings in favor of students in due process hearings than Virginia, however, those statistics are not comparable because some of them examine the outcome

---

[6] The VDOE Defendants do not concede and reserve the right to dispute the accuracy of D.C.'s data in Exhibits A-C.

of hearings, not the total number of complaints filed.  *See* Compl. ¶ 63 n.9.  The studies are also

incomplete and suffer from other flaws; indeed, his own authority questions the accuracy of these

statistics.[7]  *See id.* ¶ 63 nn.8-9.

Moreover, even if national and other state's statistics show higher percentages of decisions

in favor of parents, they do not show a biased due process system in Virginia.  For instance, as the

Complaint alleges, New York and New Jersey are two of the nine states where at least 80 percent,

if not more, of all due process hearings occur, and there, the burden of proof is placed on the school

district, not the party bringing the complaint as in Virginia.  Compl. ¶¶ 61, 65 n.12.   Thus, in New

York and New Jersey, where parents only need to show their selected placement is appropriate, it

would not be surprising if parents "win" more often, and with New York in particular having one

of the largest school systems in the nation, its statistics would certainly raise the nationwide

average for decisions in favor of parents.   Additionally, some states have a two-tiered system,

which allows an appeal of a hearing officer's decision to a state review officer prior to an appeal

to federal or state court while states with a single-tier system allow for an appeal directly to a

federal or state court.  20 U.S.C. § 1415(g), (i)(2); 34 C.F.R. § 300.514(b), (d).  It is unclear from

some of the studies cited by D.C. if the decisions in favor of parents or school districts were

---

[7] For instance, D.C. relies on the Gershwin-Mueller and Carranza study to claim that in 41 states, school districts prevailed 58.6 percent of the time and parents prevailed 30.4 percent of the time, with 10.4 percent of the cases involving a split decision.  But the Zirkel and Skidmore article also cited by D.C. clearly questions the reliability of the Gershwin-Mueller and Carranza statistics.  *See* Perry A Zirkel & Cathy A. Skidmore, National Trends in the Frequency and Outcomes of Hearing and Review Officer Decisions under the IDEA: An Empirical Analysis, 29 Ohio State J. on Disp. Resol. 538-39 (2014) (criticizing the Gerswin-Mueller and Carranza study's incomplete representation of states, reliance on responding states summaries rather than full decisions, lack of clarity, and use of a variable below research norms).

subsequently appealed and what impact, if any, an appeal would have on the overall statistics.[8]  At bottom, comparing apples to oranges in reliance on flawed statistics fails to show plausible factual allegations demonstrating an injury in fact that is fairly traceable to the VDOE Defendants.

Further, D.C.'s speculative and conclusory allegation that parental deterrence is an intended consequence of Virginia's system of alleged crony hearing officers is baseless and wholly without factual support.  *Id.* ¶ 59.  D.C. is assuming that parents "lose" every time cases are withdrawn, settle, or there is split decision in favor of the parents and the school district.  But that is sheer speculation.  And it is contrary to the fact that the system is intended to be a collaborative one, where parents and schools work together to find a good solution with consensus.  D.C. is speculating about why parties withdraw due process claims, and clearly, cost is not the issue given that parents can be awarded attorney's fees if they prevail in a due process hearing or prevail when appealing a hearing officer's decision in federal or state court.  8VAC20-81-210(S)(4); 8VAC20-81-310(A); 34 CFR 300.517.

In addition, D.C.'s vague and conclusory allegations that the VDOE certified and retained biased hearing officers due to financial interests fails to plausibly allege that the purportedly-biased due process procedures are fairly traceable to the VDOE Defendants.  Compl. ¶¶ 90-102.  In conclusory form, D.C. claims VDOE certifies and retains hearing officers due to financial interests, but he never actually explains what financial interest VDOE has in having hearing officers rule in favor of the school districts.  *Id.*  VDOE does not fund the special education and related services to provide a FAPE, and thus rulings in favor of parents have no impact on VDOE's budget.

---

[8] *See* Compl. ¶ 63 n.9, Tracey Gershwin Mueller & Francisco Carranza, *An Examination of Special Education Due Process Hearings*, 22 J. Disability Policy Studies, 131, 137 (2011) (studying 41 states at the hearing level without mentioning if any of the cases were an appeal to a state review office or state or federal court).

8VAC20-81-10 (providing that a FAPE is provided at "public expense," which means that the local education agency either pays for the full cost of the service or evaluation or ensures that the service or evaluation is otherwise provided at no cost to the parent).  Further, hearing officers get paid regardless of how they rule.  *See* 8VAC-81-210(S) (costs of independent evaluation, special education hearing officer, court reporters, and transcripts are shared by the local educational agency and the VDOE).  And hearing officers are presumed to be unbiased, *Schweiker v. McClure*, 456 U.S. 188, 195 (1982), decisions in prior hearings are insufficient to show bias, *see Liteky v. United States*, 510 U.S. 540, 555 (1994), and hearing officers are subject to disqualification for bias and prejudice.  Va. Code § 2.2-4024.1(B).  Moreover, the VDOE Defendants do not assign hearing officers to any particular case; the Office of the Executive Secretary of the Supreme Court of Virginia does.  Va. Code § 2.2-4024(B); 8VAC20-81-210(H).  And again, students and their parents can receive attorney's fees to be paid by the local school district, not VDOE, if they prevail in a due process hearing.  8VAC20-81-210(S)(4); 8VAC20-81-310(A); 34 CFR 300.517.

In sum, D.C. fails to allege an injury-in-fact, any certainly impending injury that would entitle him to seek prospective injunctive relief, and any causal connection between his alleged injury and the VDOE Defendants' alleged conduct to establish traceability.  Accordingly, D.C. and his parents lack standing and the Complaint must be dismissed for lack of subject-matter jurisdiction.

### 2.    Plaintiff Hear Our Voices, Inc. Lacks Standing

There are two primary types of organizational standing – representational and direct stake standing.  Plaintiff Hear Our Voices, Inc. ("HOV") has neither.

For representational standing, "[a]n association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests

at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Friends of Earth, Inc.* 562 U.S. at 180-81 (2000) (citing *Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 343 (1977)).  To establish representational standing, an organizational plaintiff must first "make specific allegations establishing that at least one identified member had suffered or would suffer harm." *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009).  Here, HOV only claims that it has members who are residents of Virginia and Fairfax County but fails to provide specific allegations establishing that at least one member has suffered or would suffer harm.  Compl. ¶ 20. Indeed, the Complaint does not claim that the only named individual plaintiff in the lawsuit – D.C. – is a member; and as discussed *supra*, D.C. lacks standing.

HOV also fails to show that the participation of its individual members in the lawsuit would not be required.  *Hunt*, 432 U.S. at 343-344.  In the instant case, the alleged injuries would arise from violations of federal law as a result of alleged sham due process hearings.  Compl. ¶ 22.  To assess the merits of these claims, this Court would be required to consider the individual circumstances, especially for determination of the appropriateness of an IEP, which by its name indicates its specific, individualized nature.  And an analysis of any conduct by the VDOE Defendants toward individual members of HOV would be required with respect to the claimed constitutional violations.  HOV does not have standing based on its representation of any alleged members.

HOV also fails to establish that it has standing in its own right.  In assessing associational standing, courts conduct the same inquiry as with an individual to determine if the association alleged such a personal stake in the outcome of the matter to warrant federal court jurisdiction. *Md. Highways Contractors Ass'n v. Maryland*, 933 F.2d 1246, 1251 (4th Cir. 1991) (citing *Havens*

*Realty Corp. v. Coleman*, 455 U.S. 363, 378-79; *Allen v. Wright* 468 U.S. 737, 750 (1984)).  Thus, before an association or organization can avail itself of federal judicial power, it must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.  *CASA de Md., Inc. v. Trump*, 971 F. 3d 220, 237 (4th Cir. 2020).  An association or organization "may suffer an injury in fact when a defendant's actions impeded its efforts to carry out its mission."  *Id.* (citing *Lane v. Holder*, 703 F. 3d 668, 674 (4th Cir. 2012) (internal citations omitted)).

"Organizational injury, properly understood, is measured against a group's ability to operate as an organization, not its theoretical ability to *effectuate* its objectives in its ideal world."  *CASA de Md., Inc. v. Trump*, 971 F. 3d at 239 (emphasis in original).  "[T]he Supreme Court has made clear that standing demands the same of organizations as it does of individuals."  *Id.* at 240 (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378-79 (1982)).  And thus, "an organization's abstract concern with a subject that could be affected by an adjudication does not substitute for the concrete injury required by Art[icle] III."  *Id.* (citing *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 (1976)).  As with an individual, "an organization cannot satisfy this 'concrete injury' requirement through standalone philosophical objections to a law, gripes with how the law is enforced against other persons, or decisions to voluntarily spend money to combat the effects of a given policy."  *Id.* (citations omitted).

HOV's claimed mission is to end systematic mistreatment of persons with disabilities, including in school and its "principal mission" is to secure "appropriate and equal educational services for students with disabilities, including the right to a fair due process hearing before an impartial hearing officer as required by federal law."  Compl. ¶¶ 21-22.  HOV "was established to protect and advocate for the rights of persons with disabilities and to safeguard the rights of

16

individuals with developmental disabilities." *Id.* ¶ 20. These claimed missions, however, do not establish that HOV, the organization itself, has suffered an injury-in-fact. It does not allege that it is unable to operate as an organization due to the actions of the VDOE. Instead, HOV complains about how the IDEA and Virginia's regulations are applied with respect to students with disabilities. This is not an injury suffered by HOV as an organization, and thus it lacks organizational standing in addition to lacking representational standing.

### B.    Plaintiffs' Claims Must Be Dismissed for Failure to Exhaust Administrative Remedies

D.C.'s and his parents' claims against the VDOE Defendants arise from an alleged failure to comply with the procedural requirements of the IDEA and provide D.C. with a FAPE. *See* Compl. ¶¶ 162, 168, 172, 179, 185, 187, 189, 199. However, D.C. and the Chaplicks admit that they failed to exhaust administrative remedies before filing this lawsuit. Compl. ¶¶ 144-147. This failure is fatal to their claims.

The IDEA contains elaborate procedures designed to give parents or guardians of a child with a disability notification of the decisions affecting their child and an opportunity to object to these decisions. *Smith v. James C. Hormel Sch. of the Va. Inst. of Autism*, No. 3:08-cv-00030, 2009 U.S. Dist. LEXIS 38615, at *38-39 (W.D. Va. Apr. 22, 2009) (citing *MM v. Sch. Dist.*, 303 F.3d 523, 527 (4th Cir. 2002)). Parents or guardians who assert a violation under the IDEA must first request a due process hearing. *Id.* And they "may only file a suit in federal district court under the IDEA when they are aggrieved by a final administrative due process hearing decision." *A.W. v. Fairfax Cnty. Sch. Bd.*, 548 F. Supp. 2d 219, 222 (E.D. Va. 2008) (citing 20 U.S.C. §1415(I)(2)).

In Virginia, this administrative procedure is outlined in Title 8 of the Virginia Administrative Code. 8VAC20-81-210. Disputes regarding the educational placement and

services for a student are handled through a due process hearing system. *Id.* ¶ A.  Hearing officers

who "receive specialized training on the federal and state special education law and regulations"

preside over the due process hearings. *Id.* ¶¶ B-D.1.  After the hearing officer renders a final

decision, aggrieved parents have the right to appeal to state circuit court or to a federal district

court. *Id.* ¶ T; *see also* Va. Code § 22.1-214(D); 20 U.S.C. § 1415(i).  Because of deference to the

IDEA's administrative machinery and the district court's unique role in an IDEA case, a plaintiff's

failure to exhaust his claims "deprives [federal courts] of subject matter jurisdiction over those

claims." *MM*, 303 F.3d at 536.

Exhaustion of these administrative remedies is required under the IDEA. *Smith*, 2009 U.S.

Dist. LEXIS 38615, at *38-39 (citing 20 U.S.C. § 1415(I)); *see also Scruggs v. Campbell*, 630

F.2d 237, 239 (4th Cir. 1980) ("[T]he Act contemplates exhaustion of administrative remedies.").

Moreover, the exhaustion requirement applicable to the IDEA equally applies to any and all claims

challenging the denial of FAPE. *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 755 (2017); *see also*

*A.W.*, 548 F. Supp. 2d at 222 ("[T]he IDEA requires that where the relief sought is also available

under the IDEA, even if suit is brought under another provision, plaintiff must first exhaust all

administrative remedies available under the IDEA.").  Plaintiffs cannot escape the IDEA's

exhaustion requirements "merely by bringing the suit under a statute other than the IDEA." *Fry*,

137 S. Ct. at 754-55.  "[W]hen the gravamen of a complaint seeks redress for a school's failure to

provide a FAPE, even if not phrased or framed in precisely that way," all claims must be exhausted.

*Id.* at 755; *see also A.W.*, 548 F. Supp. 2d at 222 ("Parents may not circumvent the exhaustion

requirement of the IDEA simply by filing suit under another statute."); *see e.g. Bills v. Va. Dep't*

*of Educ.*, No. 6:21-cv-51, 2022 U.S. Dist. LEXIS 99437, at *5-6 (W.D. Va. June 2, 2022)

(dismissing IDEA, Virginia Administrative Code, Section 504, ADA, Virginia Human Rights Act,

and § 1983 claims for equal protection and due process for a failure to exhaust administrative remedies as required by the IDEA); *Z.G. v. Pamlico Cnty. Pub. Sch. Bd. of Educ.*, 744 F. App'x 769, 778-79 (4th Cir. 2018) (holding ADA and Section 504 claims were subject to the IDEA's exhaustion requirement); *J.T. v. de Blasio*, 500 F. Supp. 3d 137, 191-94 (S.D.N.Y. 2020) (holding Fourteenth Amendment, ADA, and Section 504 claims were subject to the IDEA's exhaustion requirement).

Counts III, V[9] and IX of the Complaint assert violations of the IDEA, and the exhaustion requirement undoubtedly applies. And although Counts I-II and IV are brought under other statutes, they are also subject to the IDEA's exhaustion requirement because the claims are all based on the alleged failure to provide for D.C.'s educational needs – a denial of a FAPE.[10] *See* Compl. ¶¶ 162, 168, 179, 185, 187, 189. D.C. and his parents' claims challenge the adequacy of procedures to provide a fair due process hearing, as required under the IDEA.[11] *See* Compl. ¶¶ 161, 168, 172, 179, 190, 200. These claims all amount to a challenge for the denial of a FAPE.

---

[9] There are two Count IVs in the Complaint. Compl. ¶¶ 174-187, 188-191. The second Count IV in the Complaint is referred to as Count V in this brief.

[10] Counts VI-VIII appear to be only against the FCPS Defendants, but to the extent D.C and his parents intend to assert these claims against the VDOE Defendants, they, too, are barred for failure to exhaust administrative remedies.

[11] Courts consider a "pair of hypothetical questions" to determine if a Plaintiff is seeking redress for an alleged failure to provide a FAPE. *Fry*, 137 S. Ct. at 755-56. "First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school—say, a public theater or a library?" *Fry*, 137 S.C. at 756. "[S]econd, could an *adult* at the school—say, an employee or visitor—have pressed essentially the same grievance?" *Id.* If the answer to those questions "is 'no,' then a plaintiff likely seeks relief for the denial of a FAPE, such that the exhaustion requirement applies." *Z.G..*, 744 F. Appx at 778-79. Here, the answer to both questions is no.

Accordingly, D.C. and his parents were required to exhaust administrative remedies for all the claims against the VDOE Defendants.  As stated in the Complaint, however, they did not.[12] Compl. ¶¶ 144-147.  Instead, they claim to fall under an exception to the exhaustion requirement for futility because of the allegedly flawed system and because the relief sought is not available through a due process administrative proceeding.[13]  *Id.* ¶¶ 144-149.

D.C. and the Chaplicks' assertion that it would be futile to exhaust administrative remedies because of an allegedly flawed system, however, is based on their disagreement with the hearing officer's ruling in 2015, and on speculation, flawed statistics, and conclusory allegations, which fail to show futility.  Further, none of these alleged system flaws excuse their failure to exhaust their administrative remedies.  Plaintiffs' own allegations undermine their assertion that due process administrative proceedings are futile and will not provide relief, because when they did engage in the due process proceedings, they obtained settlements and the relief they sought.

The Fourth Circuit has held that the unavailability of the specific relief sought in the administrative process does not render the administrative process futile.  *Bills*, 2022 U.S. Dist. LEXIS at *13 (citing *Z.G.*, 744 F. App'x at 777-78); *see also McMillen v. New Caney Indep. Sch. Dist.*, 939 F.3d 640, 647 (5th Cir. 2019) (holding that the "IDEA requires plaintiffs who were denied a free appropriate public education to exhaust regardless of the remedy they seek"); *Perez v. Sturgis Public Schs.*, 3 F.4th 236 (6th Cir. 2021) (same).  Indeed, the unavailability of a remedy

---

[12] Any claims related to D.C.'s 2015-2016 due process hearing are time-barred.  8VAC20-81-210(T)(1); 20 U.S.C. § 1415(i)(2).  D.C. also either withdrew or settled his 2021 due process complaint, (Compl. ¶¶ 120, 129, 132), and there are no allegations that he filed a due process complaint related to any change to his IEP after moving to the adult group home in October 2021.

[13] D.C. and the Chaplicks bear the burden of proving an exception applies to the exhaustion requirement.  *See Honig v. Doe*, 484 U.S. 305, 326-27 (1988).

in the administrative process "does not render the administrative process futile because, if it did, 'any party could sidestep administrative procedures by simply drafting a civil complaint that requests [unavailable] relief.   Such occurrences would render the administrative proceedings obsolete and would ultimately require federal courts to regularly determine educational policies.'" *Bills*, 2022 U.S. Dist. LEXIS at *14 (quoting *Pullen v. Botetourt Cnty. Sch. Bd.*, No. 94-cv-686, 1995 U.S. Dist. LEXIS 8522, at *3 (W.D. Va. Feb. 13, 1995)).   The Fourth Circuit has never held that a claim of "systemic violations" renders administrative exhaustion futile.   And even courts recognizing some systemic exception have held that "the fact that a complaint 'is structured as a class action seeking injunctive relief, without more, does not excuse exhaustion,'" and "the systemic exception is not met every time a plaintiff challenges centralized, uniform policies that affect all students within a school or school district." *T.R. v. School Dist. of Philadelphia*, 4 F.4th 179, 192 (3d Cir. 2021) (internal citations and quotations omitted).   Plaintiffs should not be able to evade the IDEA's exhaustion requirement by simply requesting unavailable class-wide relief. Thus, all of the claims against the VDOE Defendants should be dismissed, as this Court lacks subject matter jurisdiction because Plaintiffs failed to exhaust administrative remedies as required by the IDEA.

## C.    The Eleventh Amendment Bars the § 1983 and State Law Claims against the VDOE Defendants

The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend, XI.  Sovereign immunity under the Eleventh Amendment "prevent[s] a state from being sued by one of its own citizens without its consent." *Waste Mgmt. Holdings v. Gilmore*, 252 F.3d 316 (4th Cir. 2001) (citing *Alden v. Maine*, 527 U.S. 706, 727-28 (1999)).  The Eleventh

Amendment applies not just to states, but also to their "agents and instrumentalities," *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997), and to state officials sued in their official capacities. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (citation omitted). "[A] suit against a state official in his or her official capacity is not a suit against the official but rather a suit against the official's office. As such, it is no different from a suit against the state itself." *Will*, 491 U.S. at 71. The Eleventh Amendment immunity affords full protection to states and state agencies from claims for injunctive or monetary relief. *McCray v. Md. Dep't of Transp.*, 741 F.3d 480, 483 (4th Cir. 2014).

Eleventh Amendment immunity can only be overcome if "(i) the State waives immunity, (ii) Congress abrogates immunity through legislation, or (iii) the plaintiff seeks prospective, injunctive relief against state officials for ongoing violations of federal law." *Gutierrez v. E. Beach Bay-Marine Marina, Inc.*, No. 2:14-cv-476, 2015 U.S. Dist. LEXIS 193628, at \*12 (E.D. Va. Sept. 23, 2015) (citing *Herring v. Cent. State Hosp.*, No. 3:14-cv-738, 2015 U.S. Dist. LEXIS 99074, at \*6-7 (E.D. Va. July 29, 2015)).

The VDOE is a state agency, and Superintendent Balow is a state official, who is sued in her official capacity, and thus both are entitled to Eleventh Amendment Immunity unless this immunity is overcome. Of all the counts in the Complaint against the VDOE Defendants, only Counts III, V and IX fall outside of the VDOE Defendants' immunity, as Congress expressly abrogated sovereign immunity for the IDEA. *See* 20 U.S.C. § 1403; 42 U.S.C. § 2000d-7; *In re Sec'y of the Dep't of Crime Control & Pub. Safety*, 7 F.3d 1140, 1149 (4th Cir. 1993) (citing *Quern v. Jordan*, 440 U.S. 332, 342 (1979) (finding 42 U.S.C. § 1983 does not abrogate a state's Eleventh Amendment immunity)); *see Va. Office of Prof. & Advocacy v. Va. Dep't. of Educ.*, 262 F. Supp. 2d 648, 655 (E.D. Va. 2003) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106

(1984) (holding Plaintiffs' state law claims, including alleged violations of the Virginia Administrative Code, against the Virginia Department of Education were unquestionably barred by the Eleventh Amendment); *see also Lighthouse Fellowship Church v. Northam*, 515 F. Supp. 3d 384, 398 (E.D. Va. 2021) ("[S]uits against state officers for violations of state law are absolutely barred by Eleventh Amendment immunity.").[14]  Accordingly, sovereign immunity bars the residue of Plaintiffs' claims against VDOE.

Furthermore, no exception lies to Superintendent Balow's immunity under the Eleventh Amendment.  State officials sued in their official capacities are unequivocally protected from claims for monetary damages, but pursuant to *Ex parte Young*, 209 U.S. 123 (1908), a court may issue prospective, injunctive relief against an official to prevent ongoing violations of federal law. *Bland v. Roberts*, 730 F.3d 368, 390-91 (4th Cir. 2013) (citing *McBurney v. Cuccinelli*, 616 F.3d 393, 399 (4th Cir. 2010)).  As discussed *supra*, the Complaint fails to allege any "ongoing violation of federal law."  Accordingly, the *Ex parte Young* exception does not apply, and the § 1983 and state law claims against the VDOE Defendants are barred by the Eleventh Amendment.

**D.    Plaintiffs Fail to Allege Any Cognizable Claim against the VDOE Defendants**

As seen *supra*, Plaintiffs' claims should be dismissed for a myriad of reasons under Rule 12(b)(1) of the Federal Rules of Civil Procedure.  The Complaint also fails to plausibly allege any cause of action against the VDOE Defendants and should be dismissed under Rule 12(b)(6).

**1.    D.C. and the Chaplicks Fail to Allege a Claim under § 1983**

The Complaint fails to allege liability under 42 U.S.C. § 1983 against Superintendent Balow.  To allege a claim under Section 1983 against an individual, "it must be 'affirmatively

---

[14] The *Ex parte Young* exception has no application to state law claims, as it is black-letter law that federal court may not grant injunctive relief "against state officials on the basis of state law." *Pennhurst*, 465 U.S. at 105-06, 117.

shown that the official charged acted personally in the deprivation of the plaintiff's rights.'" *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) (quoting *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)). The doctrine of respondeat superior does not apply to Section 1983 actions. *Id.* (citing *Vinnedge*, 550 F.2d at 928). "[S]upervisors . . . cannot be held liable under § 1983 without some predicate 'constitutional injury at the hands of the individual [state] officer.'" *Waybright v. Frederick County*, 528 F.3d 199, 203 (4th Cir. 2008) (quoting *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)) (alteration in original).

Here, Plaintiffs allege that Superintendent Balow serves as the executive officer of the VDOE and manages its internal and external operations.[15] Compl. ¶ 26. Plaintiffs make no other allegations with respect to Superintendent Balow to support their claims under § 1983. Thus, the § 1983 claims in Counts I-II must be dismissed as the allegations are insufficient to allege that Superintendent Balow acted personally in the deprivation of Plaintiffs' rights.

## 2. Plaintiffs Fail to Allege a Due Process Claim

To allege a procedural due process claim, a plaintiff must show (1) that he had a property or liberty interest, (2) of which a state actor deprived him, (3) without due process of law. *See Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 167, 172 (4th Cir. 1998); *Charlottesville Div. v. Dominion Transmission, Inc.*, 138 F. Supp. 3d 673, 698 (W.D. Va. 2015). Due process requires fair notice and an opportunity to be heard. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

Here, the Complaint does not allege any of the requisite elements. Plaintiffs claim to have a constitutionally protected interest in the procedures and requirements of the IDEA. Compl. ¶ 155. But the IDEA's protections do not amount to a fundamental right that procedural due process

---

[15] Of paragraphs 1-169 of the Complaint, which Plaintiffs rely on to allege claims under § 1983, Superintendent Balow is mentioned exactly once - only to name her as a party. Compl. ¶ 26.

protects.[16]   And Section 1983 only provides a remedy for federal rights, not those protected by state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988).  The IDEA confers statutory rights, created with a comprehensive statutory scheme governing its enforcement.  *Sellers v. School Bd. of City of Manassas*, 141 F.3d 524, 527 (4th Cir. 1998).  Plaintiffs cannot evade those statutory provisions by bringing a claim under § 1983 on the theory that a deprivation of IDEA rights violates the Constitution.  *Id.* at 529 ("Because IDEA provides a comprehensive remedial scheme for violations of its own requirements, we hold that parties may not sue under section 1983 for an IDEA violation.").

Even if Plaintiffs successfully pointed to a cognizable right, there is no deprivation and D.C. received all the process due.  At all times relevant, D.C. continued to receive a free public education, specifically, educational instruction at Grafton.  *See* Compl. ¶¶ 131, 138.  D.C. claims, however, that his "two due process hearings were not adjudicated by an impartial factfinder." Compl. ¶ 161.  To the extent D.C. brings a due process action based on the 2015 due process hearing, it is time barred.[17]   Moreover, based on the allegations in the Complaint, D.C. never adjudicated a second due process claim.  In February 2021, D.C. filed a second due process complaint for an alleged failure to propose an appropriate residential program and placement (Grafton) for the 2020-2021 school year, but before adjudication, the Chaplicks either withdrew

---

[16] *See Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997) ("[T]he Due Process Clause specially protects those fundamental rights and liberties which are, objectively, 'deeply rooted in this Nation's history and tradition,' such that 'neither liberty nor justice would exist if they were sacrificed.'" (citations omitted)); *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 35 (1973) ("Education, of course, is not among the rights afforded explicit protection under our Federal Constitution. Nor do we find any basis for saying it is implicitly so protected."); *Hawkins v. Freeman*, 195 F.3d 732, 739 (4th Cir. 1999).

[17] *Depaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018) (Section 1983 claims are subject to Virginia's two-year statute of limitations); Va. Code § 8.01-243(A).

or settled the claim and FCPS subsequently agreed that D.C. required residential placement at Grafton.  Compl. ¶¶ 119-120, 131.  The residential placement at Grafton was memorialized in D.C.'s IEP, which the Chaplicks signed in August 2021.  *Id.* ¶ 132.

As indicated *supra*, Title 8 of the Administrative Code provides for an impartial special education due process hearing to resolve disputes for education placement and services and the provision of FAPE to a child.  8VAC 20-81-210(A).  As alleged here, however, there was never a second due process hearing on which D.C. can bring a timely claim, and thus, D.C.'s allegations of a deprivation of a FAPE based on an inadequate IEP and a biased due process hearing without adequate due process of law rings empty.  Compl. ¶ 157.

The Complaint fails to sufficiently allege any deprivation by a state actor and that D.C. did not receive proper notice and a fair opportunity to be heard.  In sum, the due process claim is without merit and should be dismissed with prejudice.

### 3.        Plaintiffs Fail to Allege an Equal Protection Claim

Under the Equal Protection Clause of the Fourteenth Amendment "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const., amend. XIV.  The Equal Protection Clause of the Fourteenth Amendment demands that similarly situated persons be treated alike.  *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyer v. Doe*, 457 U.S. 202, 216 (1982)).  To state an equal protection claim, a plaintiff must allege facts that plausibly suggest: (1) that he was treated differently from others with whom he is similarly situated, and (2) that the differing treatment resulted from intentional discrimination.  *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001).  If a plaintiff satisfies this showing, a court then proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny.  *Id.*

In the instant case, D.C. fails to sufficiently allege that he was treated differently from other similarly situated persons.  Two groups of persons are "similarly situated" only if they "are similar in all aspects relevant to attaining the legitimate objectives" of the policy or legislation.  *Van Der Linde Hous., Inc. v. Rivanna Solid Waste Auth.*, 507 F.3d 290, 293 (4th Cir. 2007).  "Generally, in determining whether persons are similarly situated for equal protection purposes, a court must examine all relevant factors."  *United States v. Olvis*, 97 F.3d 739, 744 (4th Cir. 1996).  A plaintiff must identify persons materially identical to him who have received different treatment.  *Kolbe v. Hogan*, 813 F.3d 160, 185 (4th Cir. 2016).  Here, the Complaint fails to allege comparators sufficiently similar to D.C. with whom he was treated differently.  Likewise, D.C. fails the second prong of the analysis because the Complaint does not plead sufficient facts to show that the allegedly unequal treatment "was the result of *intentional or purposeful discrimination*."  *Equity in Ath., Inc. v. Dep't of Educ.*, 675 F. Supp. 2d 660, 679-80 (W.D. Va. 2009) (emphasis in original) (quoting *Williams v. Hansen*, 326 F.3d 569, 574 (4th Cir. 2003)).  D.C.'s conclusory allegations are insufficient to allege intentional or purposeful discrimination.  Accordingly, D.C. fails to allege an equal protection claim and Count II should be dismissed.

### 4.    Plaintiffs Fail to Allege an IDEA Claim

Plaintiffs fail to allege a claim under the IDEA.  The purpose of the IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education."  20 U.S.C. § 1400(d)(1)(A); Va. Code § 22.1-214.  The requirement of a FAPE, which is implemented through an IEP, is met when a school district provides personalized instruction with sufficient support services for the disabled child to benefit educationally from the instruction.  *MM v. Sch. Dist.*, 303 F.3d 523, 527 (4th Cir. 2002) (citing *Hartmann v. Loudon Cnty. Bd. of Educ.*, 118 F.3d 996, 1001 (4th Cir. 1997)).  In Virginia, the local school district is tasked with ensuring that an

IEP is developed and implemented for each child with a disability.  8VAC20-81-110(A).  The IDEA, however, does not require a school district to provide a disabled child with the best possible education, and once a FAPE is offered, the school district is not required to offer additional educational services.  *MM*, 303 F.3d at 526-27 (internal citations omitted).  Rather, an IEP is sufficient if it is "reasonably calculated to enable the child to receive educational benefits."  *Hogan v. Fairfax Cnty. Sch. Bd.*, 645 F. Supp. 2d 554, 562 (E.D. Va. 2009) (citing *Bd. of Educ. v. Rowley*, 458 U.S. 176, 207 (1982)).

To challenge the sufficiency of an IEP, parents can request a due process hearing.  *MM*, 303 F.3d at 527 (citing 20 U.S.C. § 1415(f)).  After filing notice of a complaint, if the parties cannot reach an agreement, the matter proceeds to an administrative hearing before a special education hearing officer.  20 U.S.C. § 1415(c)(2); 20 U.S.C. § 1415(f)(1)(A).  Any party aggrieved by a hearing officer's decision may appeal within 180 days in state court or within 90 days of the decision in federal court.  8VAC20-81-210(T).

Again, D.C. never took his February 2021 due process complaint to a hearing, and he never filed a due process complaint after the Chaplicks moved him to an adult group home in October 2021, which made it impossible for FCPS to implement the agreed upon IEP that provided for residential placement at Grafton.  Compl. ¶¶ 131, 137, 138.  The allegations in the Complaint fail to establish that D.C. was not provided with a FAPE.  To the contrary, the Complaint shows that D.C. did receive a FAPE.  From 2015 through October 2021, FCPS provided D.C. with day placement and some residential placement at Grafton, where he received educational instruction and achieved success according to the Chaplicks.  *See* Compl. ¶¶ 111, 115, 131, 132.  Thus, D.C. fails to show any deprivation of a FAPE under the IDEA.

Moreover, the Complaint also shows the VDOE Defendants were not responsible for creating and implementing D.C.'s IEP; FCPS was.  Further, for the reasons stated *supra*, D.C. and the Chaplicks fail to plausibly allege any deprivation of a FAPE based on speculative and conclusory allegations about a biased due process hearing system in Virginia that VDOE allegedly failed to adequately monitor.  Compl. ¶¶ 172(a)-(b).  Accordingly, the IDEA claims, Counts III, V and IX, should be dismissed for failure to state a claim.

### 5. Plaintiffs Fail to Allege Claims under State Law

As stated *supra*, the state law claims in Counts IV are barred by the Eleventh Amendment. Furthermore, Virginia Code § 22.1-214 confers the right to bring a civil action on a party challenging the decision of an administrative due process hearing in state court, and here, D.C. brings no such action.  *See McNeil v. Berg*, No. 99-1508-A, 1999 U.S. Dist. LEXIS 21939, at *5 (E.D. Va. Dec. 17, 1999) (holding that Virginia Code § 22.1-214 does not create a federal cause of action and only entitles a party to proceed in state circuit court).  Likewise, Virginia's Administrative Code provides no private right of action for D.C. to bring a claim against the VDOE Defendants in federal court for an alleged deprivation of a FAPE in violation of the IDEA. Accordingly, Plaintiffs' claims under state law must be dismissed.

## V.   CONCLUSION

For the foregoing reasons, Defendants, Virginia Department of Education and Jillian Balow, respectfully request that this Court Grant the Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6), dismiss this case with prejudice, and strike it from the docket.

**Respectfully submitted,**

*/s/ Amy E. Hensley*
Amy E. Hensley (VSB No. 80470)
Assistant Attorney General
Office of the Attorney General

202 North 9th Street
Richmond, Virginia 23219
Telephone: (804) 371-2267
Facsimile: (804) 371-2087
ahensley@oag.state.va.us
*Counsel of Record for VDOE
and Jillian Balow, in her official
capacity as Superintendent of
Public Instruction of VDOE*

Jason S. Miyares
Attorney General of Virginia

Steven G. Popps
Deputy Attorney General

Jacqueline C. Hedblom
Senior Assistant Attorney General/Chief

Deborah A. Love
Senior Assistant Attorney General/Chief

Adam G. Kane (VSB No. 98506)
Assistant Attorney General
Office of the Attorney General
202 North 9th Street
Richmond, Virginia 23219
Telephone: (804) 786-2073
Facsimile: (804) 371-2087
akane@oag.state.va.us
*Counsel of Record for VDOE
and Jillian Balow, in her official
capacity as Superintendent of Public
Instruction of VDOE*

Sandra S. Gregor (VSB No. 47421)
Assistant Attorney General
Office of the Attorney General
202 North 9th Street
Richmond, Virginia 23219
Telephone: (804) 786-1586
Facsimile: (804) 371-2087
sgregor@oag.state.va.us
*Counsel of Record for VDOE
and Jillian Balow, in her official
capacity as Superintendent of Public
Instruction of VDOE*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on the <u>16th </u>of December 2022, I filed a copy of the foregoing document using the Court's ECM/ECF filing system, which will send an electronic notification of the same (NEF) to counsel of record for the plaintiff.

<u>*/s/ Amy E. Hensley*            </u>
Amy E. Hensley
Assistant Attorney General