UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| D.C., by his parents and guardians, et al. | |
| *Plaintiffs,* | 1:22-cv-01070 (MSN-IDD) |
| v. | |
| FAIRFAX COUNTY SCHOOL BOARD, et al. | |
| *Defendants.* | |

BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED
COMPLAINT FILED PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6) ON
BEHALF OF DEFENDANTS FAIRFAX COUNTY SCHOOL BOARD AND DR.
MICHELLE REID

## I.   INTRODUCTION

Plaintiffs' First Amended Complaint ("FAC") attempts to fix the dispositive, significant, and fatal flaws in the originally filed complaint. However, the FAC still fails to state a claim against the Fairfax County School Board ("FCSB")[1] and its superintendent (collectively the "FCSB Defendants"). The FAC remains at heart a challenge to Virginia statutes, regulations, and administrative processes over which the FCSB Defendants have absolutely no responsibility, authority, or control. Although the FAC consists of 305 paragraphs of allegations prior to the first count being stated, the volume of allegations does not overcome one central flaw: Plaintiffs have failed to allege sufficient facts to support a claim that the Fairfax County Public Schools superintendent engaged in systemic due process or equal protection violations, or that the FCSB engaged in systemic violations of the Individuals with Disabilities Education Act (IDEA). 20

---

[1] The Plaintiffs refer to Fairfax County Public Schools ("FCPS") interchangeably with the FCSB. FCPS is a not a *sui juris* entity. The correct party is the FCSB. Va. Code § 22.1-28.

U.S.C. § 1415.  At most, the allegations state that two Fairfax County families disagreed with the individualized education programs offered to their students.  One of those families has appropriately taken advantage of the remedies offered by the IDEA—first by filing a request for an administrative due process hearing and then by filing a claim in this very Court, which is currently pending before another judge.[2]  The other family chose not to pursue available processes and remedies and instead attempts to circumvent those IDEA processes through this action.  Accordingly, the First Amended Complaint should be dismissed with prejudice with respect to the FCSB Defendants.

## II.    STATEMENT OF THE CASE

Plaintiffs are two students who reside in Fairfax County and are eligible to receive special education and related services (D.C. and M.B.), their parents (the Chaplicks and the Binghams), and Hear Our Voices, Inc. ("HOV"), which is described as a "private, non-profit member organization [ . . . ] incorporated in Delaware [ . . . and] established to protect and advocate for the rights of persons with disabilities and to safeguard the rights of individuals with developmental disabilities."  (FAC ¶ 38).  Plaintiffs have sued the FCSB, FCPS Superintendent Dr. Michelle Reid ("Superintendent Reid") in her official capacity, the Virginia Department of Education ("VDOE"), and VDOE Superintendent of Public Instruction Jillian Balow in her official capacity.

With respect to the FCSB Defendants, Plaintiffs attempt to pursue a class action on behalf of "the FCPS class," which they define as "'[a]ll students with disabilities aged 3 to 21

---

[2] M.B., et al. v. Fairfax County School Board, Case No. 1:22-cv-00930-TSE-IDD, Complaint for Declaratory and Injunctive Relief filed on August 15, 2022 based on alleged failure to comply with provisions of the IDEA pending before the Honorable T.S. Ellis, III. FAC ¶ 37.

2

residing in Fairfax County who have requested or received an evaluation for special education and related services, under the IDEA and their parents.'"[3]  FAC ¶ 60.  Plaintiffs allege that Superintendent Reid engaged in systemic violations of the Due Process (FAC Count I, ¶¶ 306-23) and Equal Protection Clauses (FAC Count II, ¶¶ 324-32) of the Fourteenth Amendment, and that the FCSB engaged in systemic violations of the IDEA (FAC Count V, ¶¶ 343-48 and Count VI, ¶¶ 349-52).   Plaintiffs request declaratory and injunctive relief. FAC ¶¶ 354-55, 363-66.

    In support of their claims for relief, Plaintiffs attack the overall Virginia statutory and regulatory system for implementing the IDEA.  Plaintiffs do not allege—nor can they as a matter of law—that the FCSB Defendants exercise any authority, responsibility, or control over Virginia laws and regulations.  Instead, Plaintiffs make sweeping and conclusory statements that the FCSB Defendants engage in a pattern or practice of denying the rights of the FCPS class, without offering any specific grounds that would support such a conclusion.  Plaintiffs offer the experience of two of FCPS' tens of thousands of students who have requested or received an evaluation for special education and related services, claims by unnamed parents and an unnamed teacher from unknown time periods, supposed "data" on results of due process hearings in Virginia, and the resolutions of other legal matters to which the FCSB was a party (which are irrelevant to the allegations in this action and/or do not provide evidence of the systemic violations alleged).  Even taking all these allegations together, they do not amount to a legally cognizable action or an entitlement to relief.

---

[3] Plaintiffs allege that the identities of members of this class may be "ascertained from the records maintained by Defendants." FAC ¶ 61. The records maintained by VDOE and FCSB to which Plaintiffs refer are confidential records protected under the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g; 34 C.F.R. Part 99.

As such, the FCSB Defendants have filed a Motion to Dismiss the FAC under Fed. R.

Civ. P.  12(b)(1) for lack of subject matter jurisdiction, as well under Fed. R. Civ. P. 12(b)(6) for

failure to state a claim upon which relief can be granted.  The FCSB Defendants submit this brief

in support of their motion.

### III.    MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

#### A.  Legal Standard of Review

"Federal Rule of Civil Procedure 12(b)(1) permits a party to move to dismiss an action

for lack of subject matter jurisdiction." *Allen v. College of William & Mary*, 245 F. Supp. 2d 777,

782 (E.D. Va. 2003). In considering a Rule 12(b)(1) motion, the court "must ascertain whether

'plaintiff's allegations standing alone and taken as true plead jurisdiction and a meritorious cause

of action.'"  *Id.* (quoting *Allianz Ins. Co. of Canada v. Cho Yang Shipping Co., Ltd.*, 131 F.

Supp. 2d 787, 789 (E.D. Va. 2000)).  Plaintiffs have the burden of establishing that jurisdiction

exists. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  *See also Hutton v. Nat'l Bd.*

*of Examiners in Optometry, Inc.*, 892 F.3d 613, 619 n.5 (4th Cir. 2018) (quotations omitted);

*Allen*, 245 F. Supp. 2d at 782 (citations omitted).

#### B.  Argument: The First Amended Complaint Is an Improper Attempt to Avoid the Process Mandated by the IDEA

Despite hundreds of paragraphs describing the IDEA, special education services and

processes, federal and Virginia state law and regulations associated with the IDEA, and

numerous conclusory statements, it is clear that Plaintiffs' dispute with the FCSB Defendants is

ultimately about two families: the Chaplicks and the Binghams, and their children, D.C. and

M.B., respectively. They are dissatisfied with the individualized education programs ("IEPs")

offered by the FCSB to their children, and claim those IEPs resulted in a denial of the free

appropriate public education ("FAPE") to which they are entitled under the IDEA.  FAC ¶¶ 32,

4

36, 122.  *See also* 20 U.S.C. §§ 1401(9), 1401(14), 1412(a)(1), and 1414(d).  As discussed in more detail in Section IV of this Memorandum, the only allegations pled with even an iota of specificity against the FCSB Defendants are the claims made by these two families on behalf of their children.

When parents and the school system cannot reach agreement on how to design an IEP to ensure that the student achieves appropriate academic goals, the IDEA permits either parents or the school system to present a complaint for review by an independent hearing officer. 20 U.S.C. § 1415(b)(6). States must establish and maintain procedures for these "due process hearings" (20 U.S.C. § 1415(f)(1)(A)), which Virginia has done through the enactment of Section 22.1-214 of the Code of Virginia and VDOE's issuance of regulations. *See* 8 Va. Admin. Code § 20-81-210. A party to such an administrative action has the right to challenge the hearing officer's decision by filing a civil action in either federal or state court. 20 U.S.C. § 1415(i)(2); Va. Code Ann. § 22.1-214.

Here, however, the Chaplicks and the Binghams bring this action in an effort to circumvent the review process provided in and required by the IDEA.  The Chaplicks seek to avoid the administrative review process altogether.  The Binghams bring this action to hedge their bets against a potentially unfavorable outcome in the separate action they filed in this court (and which remains pending), seeking review of the decision rendered by an independent hearing officer in a prior administrative proceeding.

## 1. The Chaplicks have failed to exhaust the administrative remedies under the IDEA.

In order for a federal district court to have subject matter jurisdiction over a claim brought under the IDEA, a plaintiff must have first exhausted administrative remedies. 20 U.S.C. §§ 1415(f) and 1415(i). *See also K.I. v. Durham Pub. Schs. Bd. of Educ.*, 54 F.4th 779, 794-95

(4th Cir. 2022); *M.M. ex rel. D.M. & E.M. v. Sch. Dist. of Greenville Cnty.*, 303 F.3d 523, 536

(4th Cir. 2002). Courts have recognized only three narrow exceptions to this exhaustion

requirement: "(1) when the administrative process would have been futile; (2) when a school

board failed to give parents proper notification of their administrative rights; or (3) when

administrative exhaustion would have worked severe harm upon a disabled child." *M.M. ex rel.*

*D.M. & E.M.*, 303 F.3d at 536 (citations omitted); *Z.G. v. Pamlico Cnty. Pub. Sch. Bd. of Educ.*,

744 F. App'x 769, 777 (4th Cir. 2018). It is the Plaintiffs' burden to prove that such an exception

applies. *Id.*; *Bills v. Va. Dep't of Educ.*, 605 F. Supp 3d 744, 753 (W.D. Va. 2022), *appeal*

*docketed*, No. 22-1709 (4th Cir. July 6, 2022).

The Chaplicks do not claim to have exhausted the available administrative remedies, but

rather argue that the administrative process would be futile because (1) all hearing officers in

Virginia are biased against parents of students with disabilities; and (2) the systemic remedies

they seek cannot be provided by a hearing officer.  FAC ¶¶ 187-91.

With respect to the allegation that all Virginia hearing officers are biased, the law is clear

that hearing officers are presumed to be free from bias. *Schweiker v. McClure*, 456 U.S. 188, 195

(1982).  *See also Morris v. City of Danville*, 744 F.2d 1041, 1045 (4th Cir. 1984) (*quoting*

*Withrow v. Larkin*, 421 U.S. 35 (1975); *Antonia C. v. Kijakazi*, Civ. No. 3:20-cv-00987 (MHL),

2022 WL 3753962, at *7 (E.D. Va. Aug. 29, 2022); *Cavanagh v. Grasmick*, 75 F. Supp. 2d 446,

461 (D. Md. 1999). Decisions in earlier hearings are not sufficient to prove bias on the part of the

hearing officer. *See Liteky v. U.S.* 510 U.S. 540, 555 (1994) (*citing U.S. v. Grinnell Corp.*, 384

U.S. 563, 583 (1966)); *Antonia C.*, 2022 WL 3753962, at *8.

Plaintiffs' allegations contain insufficient facts to overcome the presumption of non-bias

and offer nothing more than speculation. Exhibits A, B, and C to the FAC present tables that

purport to compile statistics on due process outcomes throughout Virginia for two decades.[4] As the United States Court of Appeals for the Second Circuit has noted, "statistics alone, no matter how computed, cannot establish extrajudicial bias. There is no authority for, and no logic in, assuming that either party to a litigation is entitled to a certain percentage of favorable decisions." *In re International Business Machines*, 618 F.2d 923, 930 (2d Cir. 1980).

Moreover, Plaintiffs' conclusion based on these statistics that all hearing officers must be biased is a "false cause fallacy"—that is, the Plaintiffs drew a conclusion about the cause of the hearing officer decision statistics without evidence to support that conclusion. Indeed, the data presented could support a very different conclusion: that school systems use the mediation process, required by the IDEA prior to the commencement of a due process hearing, to resolve claims of legitimate IDEA violations, and even some that may not be legitimate, but resolution without a hearing makes the most practical sense. The number of complaints settled, withdrawn, or dismissed prior to hearing vastly outweighs the number of cases that are resolved through a hearing. If school districts receive favorable outcomes from hearings more frequently than parents, it is at least as likely that the cause of these statistics is that school districts endeavor to resolve cases in which they have potential liability and only litigate when the law and the facts predict a greater likelihood of success.

As to the type of relief sought, unavailability of the relief sought does not render the administrative process futile. *Z.G.*, 744 F. App'x at 777-78. *See also T.R. v. Sch. Dist. of Phila.*, 4 F.4th 179, 192-93 (3d Cir. 2021); *McMillen v. New Caney Indep. Sch. Dist.*, 939 F.3d 640, 647 (5th Cir. 2019). In order for the futility exception to apply, the alleged IDEA violation must be "unresolvable through the appeals process." *Charlotte-Mecklenburg Bd. of Ed. v. Brady*, No.

---

[4] The FCSB Defendants do not concede the accuracy of the statistics and reserve the right to dispute the underlying data and the conclusions drawn.

3:18-cv-00463-RJC-DSC, 2022 WL 989231, at *9 (W.D.N.C. Mar. 31, 2022).  More

importantly, the appeal process provided for under both federal and state law is expansive.  *Cnty.*

*Sch. Bd. of Henrico Cnty., Va. v. Z.P. ex rel. R.P.*, 399 F. 3d 298, 304 (4th Cir. 2005) (In actions

brought under the IDEA, "the district court considers the record of the state administrative

hearing, as well as any new evidence offered by a party, and makes findings based on the

preponderance of the evidence") (citing 20 U.S.C. § 1415(i)(2)(B));  Va. Code § 22.1-214 D., 8

Va. Admin. Code § 20-81-210 T.2. ("On appeal the court receives the record of the

administrative proceedings, hears additional evidence at the request of a party, bases its decision

on a preponderance of evidence, and grants the relief that the court determines to be

appropriate.")

> The claims presented by the Chaplicks are "the exact type of claims decided every day"

by hearing officers. *Brady*, 2022 WL 989231, at *9. Their "attempt to circumvent the

administrative procedures of the IDEA and come directly to the federal courts is exactly the

situation Congress sought to avoid by creating the appeals procedure of the IDEA." *Koster*, 921

F. Supp. at 1456.

> Because the "gravamen" of the Chaplicks' claims against the FCSB Defendants is an

alleged denial of FAPE offered to D.C., they are required to exhaust their administrative

remedies and their claims must be dismissed. *Fry v. Napoleon Community Schs.*, 580 U.S. 154,

169-70 (2017) (the exhaustion requirement applies to any and all claims challenging the denial of

a FAPE).

### 2.   The Binghams' claims are duplicative of claims in an action currently pending before the Court.

> Unlike the Chaplicks, the Binghams did avail themselves of the remedies provided by the

IDEA.  The Binghams filed a request for a due process hearing in January of 2022.  FAC ¶ 35.

The hearing officer determined that the FCSB had offered a FAPE to M.B.  FAC ¶ 36.  In August of 2022, the Binghams filed an action in the United States District Court for the Eastern District of Virginia, challenging the hearing officer's decision.  FAC ¶ 37.  That action is still pending.  According to the joint discovery plan in that action, motions for judgment are due the same day as the motions to dismiss in this matter.

Because the Binghams' claims against the FCSB Defendants regarding an alleged denial of FAPE being offered to M.B. are already under review by another judge in this Court, their claims must be dismissed. *See Arendi v. LG Electronics*, 47 F.4th 1380, 1384 (D.C. Cir. 2022) (quoting *Walton v. Eaton Corp.*, 563 F.2d 66, 70 (3d Cir. 1977) (en banc) ("The duplicative-litigation doctrine prevents plaintiffs from 'maintain[ing] two separate actions involving the same subject matter at the same time in the same court . . . against the same defendant.")) (alterations in original).

## IV.   MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

### A.  Legal Standard of Review

Dismissal under Rule 12(b)(6) is proper when a plaintiff is not "entitled to relief under any legal theory which might plausibly be suggested by the facts alleged." *Allen v. Coll. of William & Mary*, 245 F. Supp. 2d 777, 783 (quoting *Harrison v. U.S. Postal Serv.*, 840 F.2d 1149, 1152 (4th Cir. 1988)). The court must construe the allegations in the complaint and any exhibits "'in the light most favorable to the plaintiff.'" *Id.* (quoting *Schatz v. Rosenberg*, 943 F.2d 485, 489 (4th Cir. 1991)).  However, the Court is not required to accept legal conclusions, including legal conclusions couched as factual allegations.  *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (stating that on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the … claim is and the grounds upon which it rests[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). Although "detailed factual allegations" are not required to withstand a Rule 12(b)(6) motion, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Papasan*, 478 U.S. at 286). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* (citing 5 Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004) (stating that "the pleading must contain something more…than…a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).

**B.    Argument: The First Amended Complaint Fails to State Any Cognizable Claim Against the FCSB Defendants.[5]**

A simple perusal of its Table of Contents reveals that the FAC's focus is on the alleged actions of VDOE.  The FAC's substantive content contains a plethora of allegations regarding the Plaintiffs' disagreement with VDOE's actions and inactions.  However, it takes a fine eye to locate any allegations even possibly related to the actions of the FCSB Defendants.  And once

---

[5] Many of Plaintiff's factual allegations are inaccurate, false, or misleading.  However, as they must, the FCSB Defendants presume the allegations contained in the FAC are true for the purposes of this motion only.

those allegations are examined, it becomes evident that no cognizable claim has been stated

against the FCSB Defendants.[6]

### 1. Plaintiffs Fail to State a Claim against Superintendent Reid under § 1983 (Counts I and II)

The FAC fails to state claims under 42 U.S.C. § 1983 against Superintendent Reid in her

official capacity.[7] Section 1983 does not create or establish any federally protected right but

provides a procedural or remedial function authorizing plaintiffs to assert a claim for relief

against a defendant who, acting under color of state law, violated the plaintiff's federal rights

created by the United States Constitution or other federal law. *Albright v. Oliver*, 510 U.S. 266,

271 (1994); *Graham v. Connor*, 490 U.S. 386, 393-94 (1989).

### a. Counts I and II are an improper attempt to characterize claims under the IDEA as Section 1983 claims.

Although Counts I and II are styled as Section 1983 claims against Superintendent Reid

based on alleged due process and equal protection violations, they are improper attempts to

shoehorn IDEA claims into a different cause of action.  The United States Court of Appeals for

the Fourth Circuit has held that parties may not proceed on Section 1983 claims for IDEA

violations "[b]ecause IDEA provides a comprehensive remedial scheme for violations of its own

requirements." *Sellers v. Sch. Bd. of City of Manassas*, 141 F.3d 524, 527 (4th Cir. 1998).

It is clear from the language in each Count that the "federal rights" Plaintiffs seek to

assert under Section 1983 are those set forth in the IDEA—the rights to FAPE equal to that of

---

[6] The FAC contains a total of six counts.  However, Counts III and IV are alleged only against VDOE.  Therefore, those counts will not be addressed in this memorandum.

[7] Although Plaintiffs name Superintendent Reid in her official capacity, and not the FCSB, as a defendant to Counts I and II, an official capacity Section 1983 claim against Superintendent Reid is essentially the same claim that could be brought against the entity of which she is an agent—the FCSB.  *Monell v. Dep't of Soc. Servs of City of N.Y.*, 436 U.S. 658, 690-91 (1978); *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

their peers without disabilities, an IEP, and impartial due process hearings.  Because these rights

are granted by the IDEA, any action to vindicate those rights must be brought under, and

pursuant to the processes established by, the IDEA.

As an IDEA claim, Counts I and II fail.  First, the Plaintiffs have not named the proper

defendant to an IDEA claim.  The FCSB, not Superintendent Reid, is the proper defendant to an

IDEA claim.  Superintendent Reid is neither a "lead agency" under 34 C.F.R. § 302.22 nor a

"local education agency" under 34 C.F.R. § 303.23.  Plaintiffs cannot fix the error by repleading

the claim against the FCSB because, as discussed above, Plaintiffs have not established subject

matter jurisdiction for IDEA claims and, as discussed below, Plaintiffs have not stated a claim

for relief under the IDEA.

Accordingly, Counts I and II should be dismissed.

### b. Plaintiffs fail to state a Section 1983 claim for due process and equal protection violations.

Even if Plaintiffs could circumvent the IDEA by using Section 1983 to bring due process

and equal protection challenges, they have failed to state such claims.  To proceed on a Section

1983 claim, Plaintiffs must show two elements: (1) that they have been deprived of a right

secured by the Constitution and/or the laws of the United States; and (2) that Superintendent

Reid deprived them of this right while acting under color of state law. *Flagg Bros. v. Brooks,* 436

U.S. 149, 155 (1978).  The FAC fails to meet either element.

### *Plaintiffs did not sufficiently allege a deprivation of due process.*

Count I of the FAC alleges that Superintendent Reid violated the FCPS class's

Fourteenth Amendment right to due process by interfering with, or depriving them of, "their

property and liberty interest in [a free appropriate public education ("FAPE")], their property

12

interest in an adequate IEP, and their liberty interest in an Impartial Due Process Hearing consistent with adequate due process of law."  FAC ¶ 313.

To allege a due process claim, Plaintiffs must show (1) that the FCPS class had a constitutionally protected property or liberty interest, (2) of which a state actor deprived them, (3) without due process of law.  *See Stone v. Univ. Of Md. Med. Sys. Corp.*, 855 F.2d 167, 172 (4th Cir. 1998); *Charlottesville Div. v. Dominion Transmission, Inc.*, 138 F. Supp. 3d 673, 398 (W.D. Va. 2015).  Due process requires fair notice and an opportunity to be heard.  *Matthews v. Eldridge*, 424 U.S. 319, 333 (1976).

Here, the FAC entirely fails to make any allegations to meet the required elements for a due process claim.  The Plaintiffs claim to have a constitutionally protected interest in receiving a FAPE through an appropriate IEP, and to challenge any disagreement they have with the FCSB through an impartial due process hearing—all of which are afforded to them through the IDEA.  However, the statutory protections of FAPE, an IEP, and an administrative hearing, as created by the IDEA, are not fundamental rights that are "deeply rooted in the Nation's history and tradition" such that they would be the type of constitutionally protected interests that would support a due process claim.  *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997) (internal quotations and citations omitted).  Indeed, the United States Supreme Court has held that education "is not among the rights afforded the explicit protection under our Federal Constitution."  *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 35 (1973).

Even if Plaintiffs could pursue a Section 1983 claim based on a deprivation of rights bestowed by the IDEA, the FAC provides no fact in support of the conclusory allegations that "FCPS" has "established a rigged system" to deny students FAPE, IEPs, and impartial due process hearings.  FAC ¶ 2.  Instead, the FAC attempts to support those allegations by

referencing (1) the individual experiences of the two students who are named Plaintiffs;[8] (2)

"multiple consent decrees" from other unrelated proceedings (FAC ¶ 2);[9] and (3) an allegation of

an *ex parte* communication between an FCSB employee and a hearing officer.[10]

However, the parents of two students disagreeing with the FCSB's proposed IEP and

being disappointed by the results of due process hearings can hardly be extrapolated to mean that

Superintendent Reid has engaged in systemic due process violations.  The "sheer possibility" of

such an inference would be "speculative" at most.  *See Iqbal*, 556 U.S. at 678; *Twombly*, 550

U.S. at 555.

The "multiple consent decrees" referenced in paragraph 2 of the FAC are in fact only two

consent decrees.  One resolved a dispute over FCSB's policy concerning restraining or secluding

students (FAC ¶ 302), which is completely unrelated to the allegations in this action.  The other

proceeding involved a Voluntary Resolution Agreement (VRA), which the FCSB entered into

with the United States Department of Education, Office of Civil Rights concerning the provision

of special education and related services to students during the unprecedent worldwide COVID-

19 pandemic.  FAC ¶¶ 282-85.[11]  The FCSB entered into the VRA to support tens of thousands

of students with disabilities, whose learning was impacted due to virtual instruction during the

worst of the pandemic.  This VRA is hardly evidence that the FCSB engaged in a pattern or

practice of denying FAPE, adequate IEPs, or impartial due process hearings before the pandemic

or after the return to in-person learning.  To the extent the VRA speaks to the provision of FAPE

---

[8] FAC ¶¶ 25, 28, 31-32, 34-35, 109, 115-121, 149, 208-09, 215-16, 251-58, 263-69, 281, 287, 289-93.
[9] *See also* FAC ¶¶ 282-85, 302.
[10] FAC ¶¶ 160-61.
[11] The FCSB did not admit any liability as part of the VRA.

to students with disabilities during virtual instruction, the FCSB agreed in the VRA to provide compensatory services to support those students.

The allegation of an *ex parte* communication between an FCSB employee and a hearing officer is in fact nothing more than evidence that the employee was following the Virginia regulations regarding the appointment of a hearing officer.  As described in the FAC, a hearing officer corresponded with an FCSB employee, "indicating that she would be available for a due process hearing in the near term."  FAC ¶ 160.  According to Virginia regulations, when a local education agency (LEA) receives a request for a due process hearing, the LEA "shall contact the Supreme Court of Virginia for the appointment of the special education hearing officer."  8 Va. Admin. Code § 20-81-210(H)(1)(a).  Once the Supreme Court of Virginia provides the LEA with the name of a hearing officer, the "local education agency contacts the special education hearing officer to confirm availability."  8 Va. Admin. Code § 20-81-210(H)(1)(b).  Only after receiving confirmation of the hearing officer's "availability" and "acceptance" does the LEA "notif[y] the special education hearing officer, with a copy to the parent(s) and the Virginia Department of Education of the appointment."  *Id.*  In other words, *ex parte* communications between the LEA and the hearing officer for the purpose of ascertaining the hearing officer's availability and acceptance are part of the procedures required by the Virginia regulations.  The email exchange between the FCSB employee and the hearing officer as described in the complaint is absolutely consistent with the actions that employee was required to take under the Virginia regulations and does not constitute a basis for a claim that Superintendent Reid denied Plaintiffs' due process rights.[12]

---

[12] As discussed in Section III of this Memorandum, Plaintiffs also offer purported statistics, which they claim demonstrate bias on the part of all hearing officers in Virginia. FAC ¶¶ 83-104

### *Plaintiffs did not sufficiently allege a deprivation of equal protection.*

Count II of the FAC alleges that Dr. Reid "singled out Plaintiffs as a class based on Plaintiffs' status as individuals with disabilities and parents of children with disabilities and denied them their constitutionally protected right to a free public education, [while s]imulataneously . . . provid[ing] other children without disabilities and their parents with the free public education required by the Constitution of Virginia."  FAC ¶ 330.

To state an equal protection claim, Plaintiffs must allege facts that plausibly suggest: (1) that they were treated differently from others who were similarly situated, and (2) that the differing treatment resulted from intentional discrimination. *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001).  Other than the "formulaic recitation of the elements" of an equal protection violation contained in the Count (*Twombly*, 550 U.S. at 555), Plaintiffs offer no grounds to support a claim for relief.  To the extent Plaintiffs rely on the allegations described above, they fail to establish a claim for relief for equal protection violations for the same reasons they fail to establish a claim for due process violations.

### *Plaintiffs do not sufficiently allege that Superintendent Reid deprived them of any right.*

Even if the allegations in the FAC somehow support that the FCPS class has been deprived of due process and/or equal protection, the FAC fails to allege liability against Superintendent Reid.  As the FAC states, Superintendent Reid "was elected by the [FCSB] and appointed effective July 1, 2022."  FAC ¶ 51.  The allegations in the FAC begin over two decades ago.  Clearly, Superintendent Reid could not have engaged in any action with respect to events that occurred for 20 years prior to her becoming Superintendent.  At most, the FAC

---

and Exhibits A, B, and C.   However, even if taken as true, these statistics offer no information about how Superintendent Reid is responsible for any hearing officer bias.

alleges that the two students who are named Plaintiffs are currently not satisfied with their IEPs and the FCSB's offer of FAPE.

To allege a claim under Section 1983 against an individual, "it must be 'affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights.'" *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) (quoting *Vinnedge v. Gibbs*, 550 F.2d 926, 928(4th Cir. 1977)). The doctrine of respondeat superior does not apply to Section 1983 actions. *Id*. (citing *Vinnedge*, 550 F.2d at 928). As the United States Court of Appeals for the Fourth Circuit has noted, "Supervisors . . . cannot be held liable under § 1983 without some predicate 'constitutional injury at the hands of the individual [state] officer." *Waybright v. Frederick Cnty.*, 528 F.3d 199, 203 (4th Cir. 2008) (quoting *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)) (alteration in original).

In this case, the entirety of Plaintiffs' allegations concerning Superintendent Reid are contained in one paragraph. FAC ¶ 51. Those allegations are that Superintendent Reid "is responsible for working in conjunction with the Board and for overseeing the daily operations of FCPS, including overseeing its IEP process, allocation of resources, training of employees, and methods of data collection." *Id*. Finally, the FAC alleges that Superintendent Reid "is the FCPS official responsible for ensuring FCPS' policies, practices, and procedures comply with the IDEA and other federal laws." *Id*. Because the FAC does not allege that Superintendent Reid personally undertook some action to deprive Plaintiffs of their due process and equal protection rights, Counts I and II must be dismissed as to Superintendent Reid.

### 2.  Plaintiff's Fail to Allege a Claim for Declaratory and/or Injunctive Relief against the FCSB under the IDEA (Counts V and VI)

The IDEA entitles students with disabilities to a "free appropriate public education," or "FAPE," including special education and related services at public expense. 20 U.S.C. §§

17

1401(9) and 1412(a)(1).   When a student is found eligible for special education and related services, the IDEA requires the development of an "individualized education program," or "IEP," designed to ensure that the student achieve appropriate academic goals. 20 U.S.C. § 1414(d).   In *Endrew F. ex rel. Joseph F. v. Douglas County School District RE-1*, 580 U.S. 386 (2017), the United States Supreme Court determined that an appropriate education for a student with a disability is one that is "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." 580 U.S. at 399. At the same time, *Endrew F.* held that an IEP must be "reasonable," but not "ideal." *Id*. (citing *Rowley*, 458 U.S. at 206-07).

Here, in Counts V and VI of the FAC, Plaintiffs claim that the FCSB has failed "to ensure that all children with disabilities residing in Fairfax County receive a free appropriate public education pursuant to" the IDEA.  FAC ¶¶ 345, 351.

### a.   Count V fails to state a claim for declaratory relief against the FCSB.

Count V seeks declaratory relief to remedy an alleged "systemic and pervasive failure to comply with the substantive rights and procedural safeguards afforded by the IDEA."  FAC ¶ 346.  Specifically, Count V alleges that the FCSB "behaved in a manner intent on concealing the violations by, among other things, hiding and refusing to disclose information to parents, excluding parents from meetings and hearings pertaining to the rights of the child, and providing parents incorrect information."  *Id*.  However, the FAC offers no substantive support for these claims.

Other than the FAC's broad, vague, and conclusory introductory statement that the FCSB created a system of "obstruction, burden, delay, concealment" (FAC ¶ 2), there is nothing to substantiate that the FCSB hid or refused to disclose information to parents.  Similarly, the FAC includes no allegations to substantiate that the FCSB systemically excludes parents from

18

meetings and hearings.  The closest allegation is the claim that Plaintiff D.C.'s parents inquired as to whether an IEP meeting was required before they unilaterally moved D.C. to an adult group home but did not receive what they deemed a sufficiently adequate or substantive response. FAC ¶¶ 263-69.  Whether the FCSB's response to D.C.'s parents was adequate may be an appropriate issue to be resolved by an administrative hearing officer, but is hardly sufficient to allege that D.C.'s parents were excluded from an IEP meeting that FCSB staff conducted without them—let alone that the FCSB systemically excludes parents from meetings and hearings.

As to the claim that the FCSB systemically provides parents with incorrect information, the FAC makes repeated, but conclusory, statements to this effect.[13]  But when it comes to specific allegations, the FAC falls short.  The FAC contains two paragraphs that reference the grades M.B. received, the accuracy of which M.B.'s parents dispute, and one paragraph in which Plaintiffs allege that the FCSB presented false testimony regarding D.C.'s abilities during a 2015 due process hearing.  FAC ¶¶ 208-09, 215.  The FAC also attempts to obfuscate the lack of facts to support a claim that the FCSB systemically provides parents with incorrect information by including additional allegations that are not only conclusory, but do not even clarify whether the actions were taken by the FCSB or one of its employees, or by an entirely different school division and its employees.[14]

---

[13] FAC ¶¶ 206-07, 209-10, 213-14, 217.

[14] FAC ¶¶ 5 (unidentified teachers from an unidentified school division "are instructed to minimize evidence of students' disabilities, exaggerate their academic progress, and conceal other relevant information"), 151 (identifying a teacher, but not which school division she was employed by, who allegedly testified at an unidentified due process hearing regarding how she calculates grades), 152 (describing an unidentified "special education coordinator" from an unidentified "Virginia LEA" regarding an unidentified principal from an unidentified school instructing her "to make after-the-fact changes to service logs and teacher notes"), 270-75 (alleging that unidentified lawyers for unidentified LEAs as well us unidentified administrators from unidentified LEAs "train and instruct LEA employees to give false information to parents").

Removing allegations that are entirely conclusory and/or are not specific to the FCSB, the Plaintiffs are left with a single disagreement about how the FCSB responded to one inquiry as to whether an IEP meeting should occur.  This single allegation is far from sufficient to state a claim of systemic violations of the IDEA warranting declaratory relief, and Count V should be dismissed.

### b. Count VI fails to state a claim for injunctive relief against the FSCB.

Count VI seeks injunctive relief to remedy failures by the FCSB to comply with the IDEA by (1) failing to conduct comprehensive evaluations and reevaluations of children suspected of having a disability; (2) failing to compose appropriate IEP teams; (3) failing to develop appropriate IEPs (by "placing arbitrary limits on special needs services, failing to include parents in the development of the IEP, concealing information pertinent to the development of the IEP and reevaluation process, and using inflated grades and false indicia of progress in order to manipulate the IEP and reevaluation process"); (4) failing to consistently and completely implement IEPs; (5) failing to authorize and pay for an appropriate independent educational evaluation ("IEE"); (6) failing to require employees to create and maintain accurate records regarding student progress; (7) failing to provide parents complete and unaltered records of their students' progress; (8) delaying implementation of IEPs and procedural safeguards; (9) using IDEA procedural safeguards in a manner that drastically increases costs to parents; and (10) engaging in bullying and threats of retaliation to frustrate the rights of the FCPS class.  FAC ¶ 351.

Although these broad allegations attempt to create the illusion of a school division systematically manipulating procedures in an effort to deny students with disabilities their right to a FAPE, Plaintiffs once again fail to allege with any specificity facts that would support such a

claim.  Plaintiffs rely on many of the conclusory and irrelevant statements discussed above. Plaintiffs also offer additional conclusory statements regarding "pervasive and systemic" tactics by the FCSB.[15]  Once again, Plaintiffs attempt to disguise their lack of specific allegations behind allegations based on the experiences of unidentified teachers, parents, and students from unidentified time periods,[16] and actions attributed not specifically to the FCSB, but to LEAs in Virginia.[17]

Plaintiffs also challenge VDOE's regulation regarding IEEs, alleging that it allows school divisions to avoid paying for IEEs by simply refusing to conduct their own evaluations.[18] Regardless of the accuracy of that allegation, Plaintiffs make no specific allegations about the FCSB's actions under the regulation.

Plaintiffs further attempt to support their allegation that the FCSB engages in systemic bullying and retaliation against parents and advocates by citing a single instance of the FCSB bringing an action for injunctive relief in Virginia court against two parents, seeking the return of erroneously produced attorney-client privileged documents containing confidential

---

[15] FAC ¶¶ 1-2, 4-5, 13, 15-16, 28, 63, 195, 200-01, 260, 280, 286.

[16] FAC ¶¶ 196-200.

[17] In addition to the paragraphs cited in footnote 14 above, *see* FAC ¶¶ 218-19 (Virginia LEA employees are "trained not to create records or disclose information" regarding failures to comply with the IDEA), 236-37 and 244-45 (LEAs in Virginia do not permit parents to inspect and review their student's education record and require parents to use the Virginia Freedom of Information Act process to gain access to those records), 249-50 (unidentified administrators from unidentified schools in unidentified school divisions predetermine outcomes resulting in a denial of services; unidentified school in unidentified school division alleged to have a policy that staff should treat the IEP process as "an adversarial dispute"), 295 (Virginia LEAs "employ outrageously aggressive retaliatory tactics against parents and advocates").

[18] The language of the Virginia regulation is consistent with the language of the federal regulation.  Compare 8 Va. Admin. Code § 20-81-170 ("The parent(s) has the right to an independent educational evaluation at public expense if the parent(s) disagrees with an evaluation component obtained by the local educational agency") with 35 C.F.R. 300.502 ("A parent has the right to an independent educational evaluation at public expense if the parent disagrees with an evaluation obtained by the public agency").

employee and student information.  FAC ¶¶ 296-98.  The FCSB disputes that this action was brought for the purpose of bullying or retaliating against the parents involved, and the court in the case made no such ruling.  In any event, one legal action seeking the return of privileged, confidential, and sensitive documents hardly supports a conclusion that the FCSB engages in systemic bullying or retaliation.

Once again, the only allegations made with any specificity surround the experiences of the two students and their parents who are named Plaintiffs in this action.[19]  Regardless of whether the grievances of the named Plaintiffs amount to a claim under the IDEA, they do not support a conclusion that the FCSB engaged in systemic violations.

Accordingly, Count VI of the FAC should be dismissed.

### 3.  The Amended Complaint Fails to Allege a Plausible Claim for Class-Wide Relief

The class claims should be dismissed for failure to state a claim because Plaintiffs fail to set forth sufficient facts to meet the threshold requirements under Federal Rule of Civil Procedure 23(a). *In re McCormick & Co.*, 217 F. Supp. 3d 124, 140 (D.D.C. 2016) (quoting *McCrary*, 687 F.3d at 1059) (amended on other issues, *In re McCormick & Co.*, 275 F. Supp. 3d 218 (D.D.C. 2017)) (holding that "class claims that fail to meet the requirements of Rule 23 may be properly dismissed by granting a Rule 12(b)(6) motion")); *Beck v. McDonald*, 848 F.2d 262, 269-71 (4th Cir. 2017)**.**

Rule 23(a) requires not merely the literal raising of "common 'questions,'" but rather "the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (emphasis in original)

---

[19] FAC ¶¶ 25, 28, 32, 34, 115-21, 209, 215-16, 251, 252-54, 256, 257-58, 264, 266-69, 281, 287, 289-93

(citations omitted); *D.L. v. Dist. of Columbia*, 713 F.3d 120, 125 (D.C. Cir. 2013). In other words, not only must the plaintiffs' claims depend upon a "common contention," but plaintiffs must "demonstrate that the class members 'have suffered *the same injury*.'" *Wal-Mart*, 564 U.S. at 349-50 (emphasis added) (quoting *Gen. Tel. Co. of SW. v. Falcon*, 457 U.S. 147, 157 (1982)); *see also Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 491 (2013) (Thomas, J., dissenting) ("A plaintiff seeking class certification is not required to prove the elements of his claim at the certification stage, but he must show that the elements of the claim are susceptible to class wide proof.")

The Supreme Court has explained the required level of commonality "does not mean merely that [members of the class] have all suffered a violation of the same provision of law." *Wal-Mart*, 564 U.S. at 350.  Rather, the "claims must depend upon a common contention" and "must be of such a nature that it is capable of class-wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims *in one stroke*."  *Id.* (emphasis added). "Without some glue holding the alleged *reasons* for all those decisions together," the Court held, "it will be impossible to say that examination of all the class members' claims for relief will produce a common answer to the crucial question." *Id*. at 352 (emphasis in original).

The Supreme Court went on to note specifically that Rule 23 class actions are not an appropriate vehicle for resolving individual allegations challenging distinct decisions made by different persons who had been given substantial discretion, because such situations are the antithesis of a situation in which the resolution of a challenge to a single policy or practice may efficiently resolve multiple claims at once. In *Wal-Mart*, the plaintiffs attempted to introduce "statistical and anecdotal evidence" to demonstrate a commonality of actions, but the Court

found such "evidence falls well short*." Wal-Mart*, 564 U.S. at 356.

In this case, with respect to the claims against the FCPS Defendants, the Plaintiffs identify a purported "FCPS Class" consisting of "[a]ll current students with disabilities aged 3 to 21 residing in Fairfax County who have requested or received an evaluation for special education and related services, under the IDEA and their parents."  FAC ¶¶ 59-60.

Adjudication of such claims as described for this class would require review of highly individualized facts given the nature of the IDEA process and the *individualized* education program requirements. Such highly individualized factual claims are not capable of class-wide proof and resolution. *See McCrary v. Stifel, Nicolaus, & Co.*, 687 F.3d 1052, 1058-59 (8th Cir. 2012) (dismissing class claim that would require review of highly individualized facts).[20]

## V.   CONCLUSION

A dissection of the FAC allegations reveals that the FAC is fatally lacking.  There are simply no allegations to support claims that the FCSB Defendants systemically violated federal law.  At most, the FAC alleges facts sufficient to demonstrate that two families are not satisfied with the IEPs offered to their children by the FCSB.  One of those families failed to exhaust administrative remedies, and the other family has another action pending in this Court, seeking redress for the same alleged violations identified in the FAC.  Accordingly, the Plaintiffs have

---

[20] The FCSB's arguments in support of failure to exhaust administrative remedies set forth in Section III above also pertain to the question of class certification. *Parent/professional Advocacy League v. City of Springfield Mass.*, 934 F.3d 13, 24 (1st Cir. 2019).  Adjudication of an FCPS class of claims would require court inquiry into each and every individual student's "claim" to determine whether there was an exhaustion of administrative remedies or prior adjudication of record by a Court, under the IDEA.  Because the individual Plaintiffs lack standing due to their failure to exhaust under the IDEA, the putative classes cannot establish Article III standing. *Baehr v. Creig Northrop Team, P.C.*, 953 F.3d 244, 252-53 (4th Cir. 2020) (citations and quotations omitted).

24

not established subject matter jurisdiction or any claim for relief.  The Fairfax County School

Board and Superintendent Michelle Reid, by counsel, respectfully request that the Court dismiss

with prejudice the First Amended Complaint and this action as to the FCSB Defendants pursuant

to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), and such other relief as the Court may

allow.

Respectfully submitted this 17th day of February, 2023.

**FAIRFAX COUNTY SCHOOL BOARD and DR. MICHELLE REID.**

By Counsel

_____/s/_____
Julia B. Judkins, VSB# 22597
Assistant Division Counsel
Fairfax County Public Schools
8115 Gatehouse Road
Falls Church, VA 22042
Telephone: 571-423-1035
Fax: 571-423-1257
jbjudkins@fcps.edu
*Counsel for the FCSB Defendants*

_____/s/_____
Jeanne-Marie Burke, VSB#41820
Assistant Division Counsel
Fairfax County Public Schools
8115 Gatehouse Road
Falls Church, VA 22042
Telephone: 571-423-1035
Fax: 571-423-1257
jbjudkins@fcps.edu
*Counsel for the FCSB Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 17, 2023, I electronically filed the foregoing Brief in Support of Motion to Dismiss with the Clerk of Court using the CM/ECF system, which will accomplish service on all parties who have appeared by counsel.

_____/s/_____

Julia B. Judkins, VSB# 22597
Assistant Division Counsel
Fairfax County Public Schools
8115 Gatehouse Road
Falls Church, VA 22042
Telephone: 571-423-1035
Fax: 571-423-1257
jbjudkins@fcps.edu
*Counsel for the FCSB Defendants*

26