**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| **D.C.,** *et al.*, | |
| **Plaintiffs,** | |
| **v.** | **Case No. 1:22-cv-01070** |
| **Fairfax County School Board,** *et al.* | |
| **Defendants.** | |

**MEMORANDUM IN SUPPORT OF**
**VIRGINIA DEPARTMENT OF EDUCATION AND SUPERINTENDENT BALOW'S**
**MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION**
<u>**COMPLAINT UNDER RULES 12(b)(1) AND 12(b)(6)**</u>

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................ iii

INTRODUCTION ............................................................................................................ 1

STATUTORY BACKGROUND ...................................................................................... 2

RELEVANT FACTUAL ALLEGATIONS ..................................................................... 4

    A.    D.C. and the Chaplicks ........................................................................ 4

        1.  2015 Dispute Over Placement in Public School Setting .................. 4

        2.  2020 Dispute Over Residential Placement for the 2020-2021 School Year ...... 4

        3.  2021 Dispute Over D.C.'s Change of Location ................................. 5

    B.    M.B. and the Binghams ...................................................................... 5

    C.    Hear Our Voices, Inc. ......................................................................... 6

    D.    Asserted Claims .................................................................................. 6

LEGAL STANDARD ....................................................................................................... 7

ARGUMENT .................................................................................................................... 7

    I.    All Plaintiffs Lack Standing ............................................................... 7

        A.    The Individual Plaintiffs Lack the Certainly Impending Injury Needed for Prospective Relief ...................................................... 7

        B.    Plaintiff Hear Our Voices, Inc. Lacks Standing .......................... 9

    II.    Plaintiffs Fail to State a Claim ........................................................... 12

        A.    Plaintiffs Fail to State a Claim under Section 1983 against Superintendent Balow ................................................................ 12

            1.    Plaintiffs Fail to State a Due Process Claim (Count I) ............ 12

            2.    Plaintiffs Fail to State an Equal Protection Claim (Count II) ...... 14

i

B.     D.C. and His Parents Failed to Exhaust Their Administrative Remedies ................................................................................................ 15

C.     D.C. and M.B. Waived Their Due Process Arguments by Failing to Raise Them in Their Due Process Hearings and in M.B.'s Related Federal Litigation (Count I) ......................................................................... 19

D.     D.C.'s Claims Are Barred by Collateral Estoppel (Counts I-II) ............... 20

E.     M.B.'s Claims Are Barred by the First-to-File Rule (Counts I-II) ............ 20

F.     Plaintiffs Fail to State an IDEA Claim (Counts III-IV) ............................ 21

G.     The Putative Class Allegations Should be Dismissed Because No Class Could Be Certified (Counts I-IV) ..................................................... 22

CONCLUSION ..................................................................................................... 25

CERTIFICATE OF SERVICE ............................................................................ 27

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*A.F. ex rel. Christine B. v. Española Pub. Schs.*,
    801 F.3d 1245 (10th Cir. 2015) ...................................................................17

*A.W. ex rel. Wilson v. Fairfax Cnty. Sch. Bd.*,
    548 F. Supp. 2d 219 (E.D. Va. 2008) ..........................................................16

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)........................................................................................7

*Baehr v. Creig Northrop Team, P.C.*,
    953 F.3d 244 (4th Cir. 2020) ..........................................................................8

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)........................................................................................7

*Bennett v. Berryhill*,
    No. 2:17cv520, 2019 U.S. Dist. LEXIS 39612 (E.D. Va. Feb. 15, 2019) .........19

*Bd. of Educ. v. Rowley*,
    458 U.S. 176 (1982).....................................................................................2, 3

*Bills v. Va. Dep't of Educ.*,
    No. 6:21-cv-51, 2022 U.S. Dist. LEXIS 99437 (W.D. Va. June 2, 2022).................16, 18

*Bryant v. Cheney*,
    924 F.2d 525 (4th Cir. 1991) ..........................................................................8

*Bryant v. King's Creek Plantation, L.L.C.*,
    No. 4:20-CV-00061, 2020 WL 6876292 (E.D. Va. June 22, 2020) ................25

*Capuano v. Fairfax Cnty. Pub. Bd.*,
    No. 1:13-cv-00568-GBL-TRJ,
    2013 U.S. Dist. LEXIS 155750 (E.D. Va. Oct. 29, 2013)..............................20

*City of L.A. v. Lyons*,
    461 U.S. 95 (1983)..........................................................................................8

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013)......................................................................................10

*DePaola v. Clarke*,
    884 F.3d 481 (4th Cir. 2018) ...................................................................................17

*Diaz-Fonseca v. Puerto Rico*,
    451 F.3d 13 (1st Cir. 2006)......................................................................................17

*DL v. District of Columbia*,
    713 F.3d 120, 128 (D.C. Cir. 2013).........................................................................24

*E.L. ex rel. Lorsson v. Chapel Hill-Carrboro Bd. of Educ.*,
    773 F.3d 509 (4th Cir. 2014) ...................................................................................15

*Ellicott Mach. Corp. v. Modern Welding Co.*,
    502 F.2d 178 (4th Cir. 1974) ...................................................................................21

*Elson v. Black*,
    56 F.4th 1002 (5th Cir. 2023) ..................................................................................22

*EQT Prod. Co. v. Adair*,
    764 F.3d 347 (4th Cir. 2014) .......................................................................23, 24, 25

*Equity in Ath., Inc. v. Dep't of Educ.*,
    675 F. Supp. 2d 660 (W.D. Va. 2009) ....................................................................14

*Farzana K. v. Ind. Dep't of Educ.*,
    473 F.3d 703 (7th Cir. 2007) ...................................................................................19

*Fisher v. Rite Aid Corp.*,
    Civ. Action No. RDB-09-1909,
    2010 U.S. Dist. LEXIS 56383 (D. Md. June 8, 2010) ...........................................21

*Fry v. Napoleon Cmty. Schs.*,
    580 U.S. 154 (2017)................................................................................................16

*Gaston v. LexisNexis Risk Sols., Inc.*,
    483 F. Supp. 3d 318 (W.D.N.C. 2020) ...................................................................23

*Gen. Tel. Co. of Sw. v. Falcon*,
    457 U.S. 147 (1982)................................................................................................22

*Griffin v. Dep't of Labor Fed. Credit Union*,
    912 F.3d 649 (4th Cir. 2019) .....................................................................................8

*Hanover Cnty. Unit of the NAACP v. Hanover Cnty.*,
    461 F. Supp. 3d 280 (E.D. Va. 2020) .....................................................................10

*Hartmann v. Loudon Cnty. Bd. of Educ.*,
118 F.3d 996 (4th Cir. 1997) .................................................................. 3

*Hawkins v. Freeman*,
195 F.3d 732 (4th Cir. 1999) .................................................................. 12

*Hoepfl v. Barlow*,
906 F. Supp. 317 (E.D. Va. 1995) ......................................................... 8

*Hogan v. Fairfax Cnty. Sch. Bd.*,
645 F. Supp. 2d 554 (E.D. Va. 2009) ................................................ 2, 3

*Hunt v. Wash. State Apple Advert. Comm'n*,
432 U.S. 333 (1977) ............................................................................... 10

*Jones Bros., Inc. v. Sec'y of Labor*,
898 F.3d 669 (6th Cir. 2018) .................................................................. 19

*Kendall v. Balcerzak*,
650 F.3d 515 (4th Cir. 2011) .................................................................. 13

*King v. Rubenstein*,
825 F.3d 206 (4th Cir. 2016) .................................................................. 7

*Klemic v. Dominion Transmission, Inc.*,
138 F. Supp. 3d 673 (W.D. Va. 2015) ................................................... 12

*Know Your IX v. DeVos*,
Civ. Action No. RDB-20-01224,
2020 U.S. Dist. LEXIS 194288 (D. Md. Oct. 20, 2020) ................... 10, 11

*Kolbe v. Hogan*,
813 F.3d 160 (4th Cir. 2016) .................................................................. 14

*Lane v. Holder*,
703 F.3d 668 (4th Cir. 2012) .................................................................. 11

*Learning Network, Inc. v. Discovery Comm'ns., Inc.*,
11 F. App'x 297 (4th Cir. 2001) ............................................................ 21

*Linda R.S. v. Richard D.*,
410 U.S. 614 (1973) ............................................................................... 10

*Mathews v. Eldridge*,
424 U.S. 319 (1976) ............................................................................... 12

v

*McMillen v. New Caney Indep. Sch. Dist.*,
   939 F.3d 640 (5th Cir. 2019) .......................................................................18

*Md. Highways Contractors Ass'n v. Maryland*,
   933 F.2d 1246 (4th Cir. 1991) ..................................................................9, 10

*Melton ex rel. Dutton v. Carolina Power & Light Co.*,
   283 F.R.D. 280 (D.S.C. 2012) ....................................................................25

*MM v. Sch. Dist. of Greenville Cnty.*,
   303 F.3d 523 (4th Cir. 2002) ........................................................................3

*Morrison v. Garraghty*,
   239 F.3d 648 (4th Cir. 2001) ......................................................................14

*Parent/Pro. Advoc. League v. City of Springfield*,
   934 F.3d 13 (1st Cir. 2019)....................................................................24, 25

*Pullen v. Botetourt Cnty. Sch. Bd.*,
   No. 94-cv-686, 1995 U.S. Dist. LEXIS 8522 (W.D. Va. Feb. 13, 1995) .........................18

*S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC*,
   713 F.3d 175 (4th Cir. 2013) .............................................................9, 10, 11

*San Antonio Indep. Sch. Dist. v. Rodriguez*,
   411 U.S. 1 (1973).......................................................................................12

*Sellers v. Sch. Bd. of Manassas*,
   141 F.3d 524 (4th Cir. 1998) ................................................................12, 13

*Sierra Club v. Morton*,
   405 U.S. 727 (1972)...................................................................................10

*Simon v. E. Ky. Welfare Rights Org.*,
   426 U.S. 26 (1976).....................................................................................10

*Stone v. Univ. of Md. Med. Sys. Corp.*,
   855 F.2d 167 (4th Cir. 1988) ......................................................................12

*T.R. v. Sch. Dist. of Phila.*,
   4 F.4th 179 (3d Cir. 2021) ..........................................................................19

*Thomas v. Salvation Army S. Terr.*,
   841 F.3d 632 (4th Cir. 2016) ........................................................................8

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190, 2207 (2021) ........................................................................8

*Tri Cnty. Paving, Inc. v. Ashe Cnty.*,
    281 F.3d 430 (4th Cir. 2002) ......................................................................13

*Turton v. Va. Dep't of Educ.*,
    No. 3:14CV446, 2014 WL 12539403 (E.D. Va. Sept. 23, 2014) .....................1

*United States ex rel. Vuyyuru v. Jadhav*,
    555 F.3d 337 (4th Cir. 2009) ........................................................................7

*United States v. Olvis*,
    97 F.3d 739 (4th Cir. 1996) ........................................................................14

*Va. Animal Owners All. v. Herring*,
    543 F. Supp. 3d 302 (E.D. Va. 2021) ........................................................8, 9

*Van Der Linde Hous., Inc. v. Rivanna Solid Waste Auth.*,
    507 F.3d 290 (4th Cir. 2007) ......................................................................14

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ......................................................................22, 23, 24

*Washington v. Glucksberg*,
    521 U.S. 702 (1997) ...................................................................................12

*West v. Atkins*,
    487 U.S. 42 (1988) .....................................................................................15

*Westmoreland Coal Co. v. Sharpe*,
    692 F.3d 317 (4th Cir. 2012) ......................................................................20

*Williams v. Hansen*,
    326 F.3d 569 (4th Cir. 2003) ......................................................................14

*Z.G. v. Pamlico Cnty. Pub. Schs. Bd. of Educ.*,
    744 F. App'x 769 (4th Cir. 2018) ..........................................................17, 18

## CONSTITUTION

U.S. Const. amend. XI ...........................................................................................12

U.S. Const. amend.  XIV ........................................................................................14

**STATUTES**

20 U.S.C. § 1400 ...................................................................................................................2

20 U.S.C. § 1401 ...................................................................................................................2

20 U.S.C. § 1412 ...................................................................................................................2

20 U.S.C. § 1415 ........................................................................................................... *passim*

42 U.S.C. § 1983 ........................................................................................................... *passim*

Va. Code § 8.01-243 ............................................................................................................17

Va. Code § 22.1-214 .......................................................................................................2, 16

8 Va. Admin. Code § 20-81-110 ............................................................................................2

8 Va. Admin. Code § 20–81–170 ...........................................................................................3

8 Va. Admin. Code § 20-81-190 ............................................................................................3

8 Va. Admin. Code § 20-81-200 ............................................................................................3

8 Va. Admin. Code § 20-81-210 .................................................................................3, 16, 18

**REGULATIONS**

34 C.F.R. § 300.502 ............................................................................................................15

34 C.F.R. § 300.507 ............................................................................................................16

34 C.F.R. § 300.511 ............................................................................................................16

**RULES**

Fed. R. Civ. P. 8 ...................................................................................................................1

Fed. R. Civ. P. 12 .............................................................................................................7, 22

Fed. R. Civ. P. 23 .....................................................................................................22, 23, 25

# INTRODUCTION

The Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415, implements free appropriate public education ("FAPE") for children with disabilities with an administrative system to reckon with the reality that not all parents' wishes can be accommodated.  First Amended Complaint ("FAC") ¶ 1.  This lawsuit seeks to circumvent administrative decisions Plaintiffs disagree with by insinuating a shadowy conspiracy among administrative hearing officers.  But Plaintiffs' speculative, scattershot allegations neither establish this Court's jurisdiction nor state any claim under the IDEA, the Constitution, or any other law.[1]  The Court should dismiss the Complaint for at least four reasons:

*First*, Plaintiffs all lack standing.  The individual Plaintiffs lodge criticisms of past administrative proceedings without any showing that such proceedings will recur.  So they lack the "certainly impending" injury needed to sue for prospective relief.  Plaintiff Hear Our Voices, Inc. ("HOV") likewise lacks standing because its individual members lack standing and because it cannot assert any injury of its own.

*Second*, D.C.'s claims are barred by his failure to exhaust his administrative remedies.  That exhaustion requirement is strict, and no exception excuses his decision to jump to federal court without completing the statutorily required process.

---

[1] Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  This 117-page FAC is anything but.  "Shotgun pleading," which this Court has rejected as violating Federal Rule of Civil Procedure 8(a)(2), is what "presents many different transactions, occurrences, and series of transactions or occurrences and that is presented in such a conclusory form that it is virtually impossible to ascertain what claims are asserted against which defendants and on what legal basis the respective claims are founded, and even whether, or why, the Court has subject matter jurisdiction." *Turton v. Va. Dep't of Educ.*, No. 3:14CV446, 2014 WL 12539403, at *2 (E.D. Va. Sept. 23, 2014).  Here, the FAC's sprawling web of allegations over 367 paragraphs makes it impossible to determine which allegations are connected to each count.

*Third*, Plaintiffs fail to state a claim under 42 U.S.C. § 1983 against Superintendent Balow because they cannot establish that Superintendent Balow acted personally in the alleged deprivation of Plaintiffs' statutory and constitutional rights and because they fail to state a due process or equal protection claim.  D.C.'s claims are also barred by collateral estoppel, while M.B.'s claims are barred by the first-to-file rule.  And the individual Plaintiffs' claims are both barred by waiver.

*Fourth*, the putative class claims should be dismissed because no class could be certified. Plaintiffs seek classes whose members cannot be ascertained without mini-trials to determine each member's IDEA eligibility or disability, whose claims require individualized due process determinations, and whose administrative proceedings must be exhausted before being joined to this litigation.

## STATUTORY BACKGROUND

The purpose of the IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education."  20 U.S.C. § 1400(d)(1)(A); Va. Code § 22.1-214.  The IDEA extends federal funding to states to provide disabled schoolchildren with a FAPE.  20 U.S.C. § 1412(a)(1)(A).  A FAPE "consists of educational instruction specially designed to meet the unique needs of the handicapped child . . . supported by such services as are necessary to permit the child 'to benefit' from the instruction."  *Bd. of Educ. v. Rowley*, 458 U.S. 176, 188-89 (1982); 20 U.S.C. § 1401(9).  A FAPE is implemented through an individualized education plan ("IEP").  *Hogan v. Fairfax Cnty. Sch. Bd.*, 645 F. Supp. 2d 554, 562 (E.D. Va. 2009).

Local educational agencies ("LEAs") are required by the IDEA to provide an IEP for each disabled child.  *Id.* at 562; 8 Va. Admin. Code § 20-81-110(A).  An IEP is sufficient if it is "'reasonably calculated to enable the child to receive educational benefits.'"  *Hogan*, 645 F. Supp.

2d at 562 (quoting *Rowley*, 458 U.S. at 207).  A school division satisfies the FAPE requirement when it provides personalized instruction with sufficient support services for the disabled child to benefit educationally from the instruction.  *MM v. Sch. Dist. of Greenville Cnty.*, 303 F.3d 523, 527 (4th Cir. 2002) (citing *Hartmann v. Loudon Cnty. Bd. of Educ.*, 118 F.3d 996, 1001 (4th Cir. 1997)).  The IDEA does not require a LEA to provide a disabled child with the education that his or her parents prefer.  *MM*, 303 F.3d at 526-27; *Hartmann*, 118 F.3d at 1001 (internal quotations omitted) (clarifying that the IDEA does not require the "furnishing of every special service necessary to maximize each handicapped child's potential.").  Once a FAPE is offered, the school division need not offer additional educational services.  *MM*, 303 F.3d at 526-27.

The IDEA establishes certain procedural safeguards to ensure the provision of FAPE by a state education agency ("SEA") or LEA. 20 U.S.C. § 1415; 8 Va. Admin. Code §§ 20–81–170, 20-81-190 - 210.  One such safeguard is the opportunity for an impartial due process hearing to challenge the sufficiency of an IEP.  *MM*, 303 F.3d at 527 (citing 20 U.S.C. § 1415(f)).  After filing notice of a complaint, if the parties cannot reach an agreement, the matter proceeds to an administrative hearing before a special education hearing officer.  20 U.S.C. § 1415(c)(2); *id.* § 1415(f)(1)(A).  Any party may appeal a hearing officer's decision within 180 days in state court or within 90 days of the decision in federal court.  8 Va. Admin. Code § 20-81-210(T).

## RELEVANT FACTUAL ALLEGATIONS[2]

**A.     D.C. and the Chaplicks**

**1.   2015 Dispute Over Placement in Public School Setting**

D.C. is a nineteen-year-old whom Fairfax County Public Schools ("FCPS") found eligible for special education services in 2008.  FAC ¶¶ 18, 22.  On June 26, 2015, the Chaplicks filed a request for due process hearing challenging FCPS's placement of D.C. in a public-school setting. *Id.* ¶ 27.  After a full due process hearing, a hearing officer issued a decision on September 9, 2015 in FCPS's favor.  *Id.*  ¶ 109.  After this decision, the Chaplicks entered into a December 8, 2015 settlement agreement with FCPS, under which FCPS provided financial support for the day program at the Grafton Integrated Health Network's Integrated Residential/Education Program ("Grafton") while the Chaplicks and insurance paid the residential costs.  *Id.* ¶ 114.

**2.   2020 Dispute Over Residential Placement for the 2020-2021 School Year**

On September 1, 2020, D.C.'s parents requested that FCPS support both D.C.'s day program and residential placement at Grafton.  *Id.* ¶ 115.  After convening IEP meetings to discuss the parents' request to change D.C.'s IEP with the Chaplicks and Grafton staff, FCPS recommended continuing only the day placement at Grafton.  *Id.* ¶¶ 116-17.  FCPS did not agree with the Chaplicks' recommendation for a residential placement at Grafton.  *Id.* ¶ 117.

On February 12, 2021, the Chaplicks made a formal request for a due process hearing alleging that FCPS had failed to propose an appropriate residential program and placement for the 2020-2021 school year.  *Id.* ¶¶ 122-23.  Although counsel for the Chaplicks sought to disqualify the hearing officer assigned to the due process hearing, the Chaplicks present no facts that they

---

[2] VDOE Defendants dispute Plaintiffs' version of events but recite them as true for purposes of this motion only.

ultimately ever pursued a due process hearing over D.C.'s placement for the 2020-2021 school year. *See id.* ¶¶ 123-31.

About six months later, after holding additional IEP meetings with the Chaplicks, on August 4, 2021, FCPS agreed with the Chaplicks that D.C. required residential placement and approved him for residential placement at Grafton. *Id.* ¶ 262.

### 3. 2021 Dispute Over D.C.'s Change of Location

A month later, on September 16, 2021, the Chaplicks wanted to change D.C.'s location from Grafton to a new group home. *Id.* ¶ 263. The Chaplicks notified FCPS that they would be moving D.C. to a ResCare group home on October 7, 2021, and asked if another IEP meeting was necessary. *Id.* FCPS told the Chaplicks that another IEP meeting was unnecessary, but disagreed that a location change was necessary for D.C. *Id.* ¶ 266. Yet in accordance with the Chaplicks' request to change D.C.'s location, FCPS changed D.C.'s placement because D.C. would be living in another facility that was not associated with Grafton, and FCPS would no longer be able to implement D.C.'s IEP as agreed-upon. *Id.* ¶ 264. In D.C.'s new placement arrangement, D.C. would still receive a day program placement at Grafton, but D.C. would not receive residential placement at Grafton, as he would be living in another group home that the Chaplicks selected. *Id.* ¶ 265. In a letter dated October 12, 2021, addressed to FCPS's outside counsel, the Chaplicks stated that FCPS's placement decision violated special education laws. *Id.* ¶ 267. Nowhere in the FAC do the Chaplicks or D.C. allege that they actually requested a due process hearing to challenge FCPS's placement decision.

### B. M.B. and the Binghams

M.B. is a fifteen-year-old educationally disabled student. *Id.* ¶ 29. In 2013, FCPS found M.B. eligible for special education services and provided him with an IEP that placed him in a

public-school setting.  *Id.* ¶¶ 31-32.  In fall 2021, the Binghams placed M.B. at the Phillips School, a private day school.  *Id.* ¶ 33.  In January 2022, the Binghams filed a request for a due process hearing, challenging FCPS's IEPs and placements for M.B. for the 2018-2019, 2019-2020, and 2020-2021 school years.  *Id.* ¶ 35.  On May 17, 2022, at the conclusion of a due process hearing, a hearing officer found that FCPS's IEPs and placements provided M.B. with a FAPE and denied the Binghams' relief.  *Id.* ¶¶ 36-37.  On August 15, 2022, M.B. and the Binghams filed a separate lawsuit in this Court, which remains pending, to challenge the hearing officer's decision.  *Id.*

### C.    Hear Our Voices, Inc.

HOV is a private, nonprofit member organization incorporated in Delaware that advocates for the rights of individuals with developmental disabilities.  *Id.* ¶¶ 38-39.  HOV analyzes laws affecting individuals with disabilities and offers educational resources to parents related to IDEA processes.  *Id.* ¶¶ 41-44.  Its principal mission is to secure appropriate and equal educational services for students with disabilities and to achieve better lives and educations for disabled and special needs children and their families.  *Id.* ¶¶ 39, 47. HOV also engages in lobbying efforts on special education issues, and special education legislation.  *Id.* ¶¶ 42, 44.  The Chaplicks and Binghams are members of HOV.  *Id.* ¶ 38.  HOV brings suit on its own behalf and on behalf of its members.  *Id.* ¶ 45.

### D.    Asserted Claims

Plaintiffs' FAC alleges a wide array of issues with due process hearings and alleged violations of the IDEA within the Commonwealth of Virginia.  Plaintiffs assert four claims against the Virginia Department of Education ("VDOE") and Jillian Balow ("Superintendent Balow") (collectively, the "VDOE Defendants").  Count I asserts that in violation of 42 U.S.C. § 1983, Superintendent Balow, in her individual capacity, denied Plaintiffs' due process rights by failing

6

to provide constitutionally protected property interests and procedures consistent with the requirements of the IDEA. *Id.* ¶¶ 306-23. Count II asserts that in violation of Section 1983, Superintendent Balow, in her individual capacity, denied Plaintiffs equal protections guaranteed under the IDEA. *Id.* ¶¶ 324-32. Count III seeks a declaratory judgment that the VDOE violated the IDEA by failing to ensure that children in the Commonwealth of Virginia receive a FAPE. *Id.* ¶¶ 333-38. And Count IV asks this Court to enjoin the VDOE from continuing practices that allegedly violate the IDEA. *Id.* ¶¶ 339-42.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) requires dismissal when the court lacks subject matter jurisdiction over the dispute. A plaintiff bears the burden of establishing subject matter jurisdiction. *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009). Rule 12(b)(6) requires dismissal when a complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To survive a motion to dismiss, a complaint must allege enough facts "to raise a right to relief above the speculative level." *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016). "Bare legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 679).

## ARGUMENT

### I.      All Plaintiffs Lack Standing.

#### A.      The Individual Plaintiffs Lack the Certainly Impending Injury Needed for Prospective Relief.

To pursue injunctive or declaratory relief, Article III requires D.C., M.B., and their respective parents to make "'a showing of irreparable injury, a requirement that cannot be met

where there is no showing of any real or immediate threat that the plaintiff will be wronged again.'" *Thomas v. Salvation Army S. Terr.*, 841 F.3d 632, 638 (4th Cir. 2016) (quoting *City of L.A. v. Lyons*, 461 U.S. 95, 111 (1983)). "In short, an injury should be 'certainly impending' to serve as the basis for standing in a suit for injunctive relief." *Griffin v. Dep't of Labor Fed. Credit Union*, 912 F.3d 649, 655 (4th Cir. 2019). Plaintiffs cannot show that "'real and immediate threat'" based "'only on events that occurred in the past, even if the past events amounted to a violation of federal law.'" *Va. Animal Owners All. v. Herring*, 543 F. Supp. 3d 302, 311–12 (E.D. Va. 2021) (first quoting *Bryant v. Cheney*, 924 F.2d 525, 529 (4th Cir. 1991); then quoting *Hoepfl v. Barlow*, 906 F. Supp. 317, 320 (E.D. Va. 1995)). "Absent a 'sufficient likelihood that [the plaintiff] will again be wronged in a similar way, [the plaintiff] is no more entitled to an injunction than any other citizen.'" *Va. Animal Owners All.*, 543 F. Supp. 3d at 312 (alterations in original) (quoting *Lyons*, 461 U.S. at 111). The plaintiff bears the burden of showing standing. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2207 (2021).[3]

D.C. alleges no future injury traceable to the VDOE Defendants. D.C. has not requested a due process hearing since February 2021, and indeed declined to file a request for a due process hearing regarding developments later in that year. *See* FAC ¶¶ 263, 265, 269. And although D.C. criticizes his 2015 due process hearing, *id.* ¶¶ 109-15, those allegations about "events that occurred in the past" do not show standing for prospective relief. *Va. Animal Owners All.*, 543 F. Supp. 3d at 311-12.

---

[3] In a class action, standing is analyzed based on the allegations of personal injury made by the named plaintiff, and thus a putative class cannot establish Article III standing "without a sufficient allegation of harm to the named plaintiff in particular." *Baehr v. Creig Northrop Team, P.C.*, 953 F.3d 244, 252-53 (4th Cir. 2020) (internal quotations omitted).

M.B. likewise lacks standing.  He too asserts past injuries that do not suffice to bring claims for prospective relief.  *Id.*  And although he is litigating claimed past injury against FCPS before this Court in another federal lawsuit, M.B. has not plausibly alleged a threat of a *future* injury by VDOE based on that alleged prior harm.  *See M.B. v. Fairfax Cnty. Sch. Bd.*, Case No. 22-cv-00930.  Indeed, M.B. does not plausibly allege that there is a real and immediate threat he will file another request for due process hearing and have his rights allegedly violated under the IDEA again.  The FAC thus lacks sufficient factual allegations that D.C., M.B., or their respective parents face any real and immediate threat that they will be wronged again in a similar way.

> **B.      Plaintiff Hear Our Voices, Inc. Lacks Standing.**

Plaintiff HOV also lacks standing to sue, either on behalf of its members (representational standing) or for its own alleged injuries (organizational standing).

First, HOV cannot meet the representational standing requirements that (1) its own members would have standing to sue in their own right; (2) the interests the organization seeks to protect are germane to the organization's purpose; and (3) neither the claim nor the relief sought requires the participation of individual members in the lawsuit.  *S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013) (citing *Md. Highways Contractors Ass'n v. Maryland*, 933 F.2d 1246, 1251 (4th Cir. 1991)).  HOV fails at step one.  The FAC identifies only the Chaplicks and the Binghams as members.  FAC ¶ 46.  But the Chaplicks and the Binghams lack standing to sue in their own right.  *See* Part I.A. *supra*.  Since HOV's representational standing depends on their individual standing, it lacks representational standing.

HOV also lacks representational standing because it fails to plausibly plead the third element—that the participation of its individual members would not be required in this lawsuit.

*Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 342-43 (1977).  The Chaplicks' and the Binghams' alleged injuries would arise from allegedly flawed due process hearings.  FAC ¶¶ 105, 140.  HOV's claim is thus anchored on the appropriateness of *individualized* education plans, and this Court would have to consider *individual* class members' distinct disabilities and circumstances to ascertain the merits of that claim.   Thus, Plaintiffs' claims are not the sort that a representative organization has standing to litigate in the abstract.  *See Hanover Cnty. Unit of the NAACP v. Hanover Cnty.*, 461 F. Supp. 3d 280, 289 (E.D. Va. 2020) ("[A]n organization lacks standing to assert claims of injunctive relief on behalf of its members where the fact and extent of the injury that gives rise to the claims for injunctive relief would require individualized proof.") (internal quotations omitted); *see, e.g., Md. Highways Contractors Ass'n, Inc.*, 933 F.2d at 1252 (holding that prong three of the test "is not met when . . . members must join the suit individually in order to protect their own interests").

Second, HOV lacks organizational standing to sue in its own right.   Organizational standing, like individual standing, requires that the organization (1) suffered an injury-in-fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.  *S. Walk at Broadlands Homeowner's Ass'n, Inc.*, 713 F.3d at 182.  An organization must be able to allege a concrete injury.  *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 (1976).  An organization cannot satisfy this "concrete injury" requirement through standalone philosophical objections to a law, gripes with how the law is enforced against other persons, or decisions to voluntarily spend money to combat the effects of a given policy.  *Sierra Club v. Morton*, 405 U.S. 727, 739 (1972); *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410-14 (2013); *see also Know Your IX v. DeVos*, Civ. Action No. RDB-20-01224, 2020 U.S. Dist. LEXIS 194288, at *17 (D. Md. Oct.

20, 2020) ("[A] voluntary reallocation of resources is insufficient to establish organizational standing.").

HOV's organizational standing hinges on the alleged diversion of its "time and money" towards special education in Virginia. FAC ¶ 40; *see also* ¶¶ 41-44. But those conclusory assertions of diversion amount to a mere "voluntary reallocation of resources." *Know Your IX*, 2020 U.S. Dist. LEXIS 194288, at *17. HOV's resources allocations do not impede its efforts to "carry out its mission" or frustrate "its stated organizational purpose," as HOV concedes in the FAC that it is still able to operate and function as an organization. *Lane v. Holder*, 703 F.3d 668, 674 (4th Cir. 2012); *S. Walk at Broadlands Homeowner's Ass'n, Inc.*, 713 F.3d at 183 (noting that organizational standing requires both an "injury to organizational purpose" and a "consequent drain" on resources); FAC ¶ 44. And in any event, HOV does not plausibly allege that its diverted activities are outside the organization's "principal mission of securing appropriate and equal education services for students with disabilities . . . including through assistance, advocacy, and legislative efforts." FAC ¶ 39; *compare* ¶ 44. *See also Know Your IX*, 2020 U.S. Dist. LEXIS 194288, at *19 ("If this Court were to allow a party whose organizational mission is to engage in policy advocacy to claim injury on the basis of a need to engage in that exact activity, *any* advocacy group could find standing . . . .") (emphasis in original). HOV thus lacks organizational standing as well as representational standing.

11

## II.     Plaintiffs Fail to State a Claim.

### A.     Plaintiffs Fail to State a Claim under Section 1983 against Superintendent Balow.[4]

#### 1.     Plaintiffs Fail to State a Due Process Claim (Count I).

Count I should also be dismissed because Plaintiffs plead no due process violation.  Due process requires fair notice and an opportunity to be heard.  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).  To allege a procedural due process claim, a plaintiff must show (1) that he had a property or liberty interest, (2) of which a state actor deprived him, (3) without due process of law. *See Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 167, 172 (4th Cir. 1988); *Klemic v. Dominion Transmission, Inc.*, 138 F. Supp. 3d 673, 698 (W.D. Va. 2015).

The FAC does not allege any of those elements.  Plaintiffs claim to have a constitutionally protected interest in the procedures and requirements of the IDEA.  FAC ¶¶ 311-12.  But the IDEA creates no fundamental right protected by procedural due process.[5]  The Fourth Circuit has made clear that "[b]ecause [the] IDEA provides a comprehensive remedial scheme for violations of its own requirements . . . parties may not sue under section 1983 for an IDEA violation." *See Sellers v. Sch. Bd. of Manassas*, 141 F.3d 524, 529 (4th Cir. 1998).  Yet this is exactly what Plaintiffs try to do here.  The IDEA confers statutory rights, created with a comprehensive statutory scheme governing its enforcement.  *Id.* at 527.  Plaintiffs cannot evade those statutory provisions by

---

[4] As required by the Eleventh Amendment, the FAC no longer asserts Section 1983 claims against VDOE.

[5] *See Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997) ("[T]he Due Process Clause specially protects those fundamental rights and liberties which are, objectively, 'deeply rooted in this Nation's history and tradition,' . . . such that 'neither liberty nor justice would exist if they were sacrificed.'" (citations omitted)); *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 35 (1973) ("Education, of course, is not among the rights afforded explicit protection under our Federal Constitution. Nor do we find any basis for saying it is implicitly so protected."); *Hawkins v. Freeman*, 195 F.3d 732, 739 (4th Cir. 1999).

bringing a claim under Section 1983 on the theory that a deprivation of IDEA rights violates the Constitution. *Id.* at 529.  As stated above, Plaintiffs' IDEA and Section 1983 claims are virtually the same.  Thus, Plaintiffs cannot bring Section 1983 claims for alleged IDEA violations.

Even if Plaintiffs had identified any cognizable right, there is no deprivation because D.C. and M.B. received all the process due.  At all relevant times, D.C. continued to receive a FAPE, specifically, educational instruction at Grafton.  *See* FAC ¶¶ 114, 262.  D.C. claims, however, that when the Chaplicks sought to have FCPS pay for the residential program in addition to the day program in 2021, his assigned hearing officer was biased and refused to recuse herself.  *Id.* ¶ 318.  And asserting that his hearing officer was biased without any factual allegations to support such bias is insufficient to state a claim for lack of process because D.C. chose not to avail himself of the available procedural remedies and did not pursue the due process hearing.  *See Kendall v. Balcerzak*, 650 F.3d 515, 528–30 (4th Cir. 2011) ("A procedural due process violation cannot have occurred when the governmental actor provides apparently adequate procedural remedies and the plaintiff has not availed himself of those remedies.") (alterations and internal quotations omitted); *see also Tri Cnty. Paving, Inc. v. Ashe Cnty.*, 281 F.3d 430, 436 (4th Cir. 2002) (holding that petitioner was not deprived of procedural due process when there was no evidence that petitioner was denied the opportunity to participate in proceedings or otherwise denied notice and opportunity to be heard).  D.C. and the Chaplicks fail to show that the hearing officers would receive greater pay in denying the parents' requests or have any personal stake at all in the outcome.  Thus, D.C.'s allegations of a deprivation of a FAPE based on an inadequate IEP and a biased due process hearing without adequate due process of law rings hollow.  FAC ¶ 313.

### 2.      Plaintiffs Fail to State an Equal Protection Claim (Count II).

Plaintiffs also fail to state any equal protection violation.  The Equal Protection Clause provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.  To state an equal protection claim, a plaintiff must allege facts that plausibly suggest: (1) that he was treated differently from others with whom he is similarly situated, and (2) that the differing treatment resulted from intentional discrimination. *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001).  If a plaintiff satisfies this showing, a court then proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny.  *Id.*

D.C. and M.B. do not allege that they were treated differently from other similarly situated persons.  Two groups of persons are "similarly situated" only if they "are similar in all aspects relevant to attaining the legitimate objectives" of the policy or legislation.  *Van Der Linde Hous., Inc. v. Rivanna Solid Waste Auth.*, 507 F.3d 290, 293 (4th Cir. 2007).  "Generally, in determining whether persons are similarly situated for equal protection purposes, a court must examine all relevant factors." *United States v. Olvis*, 97 F.3d 739, 744 (4th Cir. 1996).  A plaintiff must identify persons materially identical to him who have received different treatment.  *Kolbe v. Hogan*, 813 F.3d 160, 185 (4th Cir. 2016).

Here, the FAC fails to allege comparators sufficiently similar to D.C. and M.B. with whom they were treated differently.  Likewise, D.C. and M.B. fail the second prong of the analysis because the FAC does not plead sufficient facts to show that the allegedly unequal treatment "was the result of *intentional or purposeful discrimination*." *Equity in Ath., Inc. v. Dep't of Educ.*, 675 F. Supp. 2d 660, 679-80 (W.D. Va. 2009) (emphasis in original) (quoting *Williams v. Hansen*, 326 F.3d 569, 576 (4th Cir. 2003)).  Plaintiffs allege that they were treated differently than other

14

children without disabilities, as those students were given a "free public education required by the Constitution of Virginia," FAC ¶ 330, but Section 1983 provides a remedy only for federal rights, not those protected by state law. *West v. Atkins*, 487 U.S. 42, 48 (1988) ("To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States."). Nor does the FAC allege that D.C. and M.B. were not given a "free public education." Instead, the FAC claims that they were not afforded a FAPE, to which non-disabled students have no entitlement. Plaintiffs' equal protection claim thus fails for lack of a similarly situated comparator and because their conclusory allegations cannot allege intentional or purposeful discrimination.

### B. D.C. and His Parents Failed to Exhaust Their Administrative Remedies.

D.C. and his parents allege that the VDOE Defendants violated the procedural requirements of the IDEA and failed to provide D.C. with a FAPE. *See* FAC ¶¶ 335-37, 341-42. But the IDEA requires the exhaustion of administrative remedies—including administrative appeals provisions—before challenging the outcome of administrative proceedings in court. *See E.L. ex rel. Lorsson v. Chapel Hill-Carrboro Bd. of Educ.*, 773 F.3d 509, 514–15 (4th Cir. 2014). D.C. and the Chaplicks failed to exhaust administratively those remedies before suing and offer no cognizable excuse for that failure.

The IDEA is structured to give parents or guardians of a child with a disability an opportunity to object to decisions about evaluations, eligibility determinations, and the contents of the IEP. *See* 20 U.S.C. § 1415. First, a parent may request an independent education evaluation ("IEE"). 20 U.S.C. § 1415(b)(1); 34 C.F.R. § 300.502. Then, if there is still disagreement, parents can turn to the IDEA's dispute resolution procedures such as mediation or a preliminary meeting. 20 U.S.C. §§ 1415(e), (f)(1)(B)(i). Finally, if the disagreement remains, parties asserting an IDEA

15

violation can request a due process hearing, which is governed by state laws implementing the IDEA. 20 U.S.C. § 1415(f)(1)(A); 8 Va. Admin. Code § 20-81-210. A request for a due process hearing can generally only allege a violation that occurred in the two-year period before the alleged action forming the basis of the request for due process. 8 Va. Admin. Code § 20-81-210(E)(1); 34 C.F.R. § 300.507(a)(2); *Id.* § 300.511(e).

Both state and federal law make clear that aggrieved parties cannot appeal until *after* the hearing officer renders a final decision. 8 Va. Admin. Code. § 20-81-210(T); *see also* Va. Code § 22.1-214(D); 20 U.S.C. § 1415(i). A party has 90 days after the decision of the hearing officer to bring such an action in federal court. 20 U.S.C. § 1415(i)(2)(B); 8 Va. Admin. Code § 20-81-210(T).

The IDEA exhaustion requirement applies equally to claims challenging the denial of FAPE. *Fry v. Napoleon Cmty. Schs.*, 580 U.S. 154, 170 (2017) (stating that "when the gravamen of a complaint seeks redress for a school's failure to provide a FAPE, even if not phrased or framed in precisely that way," all claims must be exhausted); 8 Va. Admin. Code § 20-81-210(A)(4) (clarifying that the due process hearing system applies to matters relating to the "[p]rovision of a free appropriate public education to the child"). When the relief sought is also available under the IDEA, even if suit is brought under another provision, plaintiff must first exhaust all administrative remedies available under the IDEA. *A.W. ex rel. Wilson v. Fairfax Cnty. Sch. Bd.*, 548 F. Supp. 2d 219, 222 (E.D. Va. 2008); *Bills v. Va. Dep't of Educ.*, No. 6:21-cv-51, 2022 U.S. Dist. LEXIS 99437, at *5-6 (W.D. Va. June 2, 2022) (dismissing IDEA, Virginia Administrative Code, Section 504, ADA, Virginia Human Rights Act, and Section 1983 claims for equal protection and due process for a failure to exhaust administrative remedies as required by the

16

IDEA); *Z.G. v. Pamlico Cnty. Pub. Sch. Bd. of Educ.*, 744 F. App'x 769, 778-79 (4th Cir. 2018) (holding ADA and Section 504 claims were subject to the IDEA's exhaustion requirement).

The exhaustion requirements under federal and state law apply to Counts I through IV, which assert violations of the IDEA.  The IDEA does not permit parties to circumvent exhaustion requirements by filing under different statutes.  20 U.S.C. § 1415(l).  Thus, while Counts I-II are brought under Section 1983, they are still subject to the IDEA's exhaustion requirement because the claims are based on the alleged denial of D.C.'s FAPE and the requested relief is intertwined with the relief sought under the IDEA.  *See* FAC ¶¶ 320, 330-32, 356, 360-62; *see also, e.g.*, *Diaz-Fonseca v. Puerto Rico*, 451 F.3d 13, 29 (1st Cir. 2006) ("[W]here the underlying claim is one of violation of the IDEA, plaintiffs may not use § 1983—or any other federal statute for that matter—in an attempt to evade the limited remedial structure of the IDEA."); *A.F. ex rel. Christine B. v. Española Pub. Schs.*, 801 F.3d 1245, 1247 (10th Cir. 2015).

D.C. and his parents failed to exhaust their administrative remedies because they never pursued the due process hearing to completion for the dispute over D.C.'s placement in the 2020-2021 school year and never even requested a due process hearing for the dispute over changing D.C.'s group home in the fall of 2021.[6]  FAC ¶¶ 123-31, 263-66.  Rather than request a due process hearing, the Chaplicks moved D.C. to an adult group home in October 2021, making it impossible for FCPS to implement the agreed-upon IEP that provided for residential placement at Grafton. FAC ¶¶ 262-65.

---

[6] Any claims related to D.C. and the Chaplicks' 2015 due process hearing are time-barred because more than two years has passed, and D.C. and the Chaplicks conveniently assert that their "claims against FCPS, relating to D.C., do not include the time period prior to December 19, 2016."  FAC ¶ 114 n.27. Such claims also are barred under 42 U.S.C. § 1983.  *DePaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018) (Section 1983 claims are subject to Virginia's two-year statute of limitations); Va. Code § 8.01-243(A).

D.C. and his parents seek to circumvent the exhaustion requirements by suggesting that following the required state law processes would have been futile and that records related to due process hearings are impossible to obtain, even though VDOE publicly posts all Hearing Officer Decisions from fiscal year from 2001-2002 through 2021-2022 with appropriate redactions on its website.[7]   FAC ¶¶ 187-91.   Plaintiffs rely on conclusory statements about a subjective disagreement with a hearing officer's ruling in 2015, rank speculation, and flawed statistics to argue that it would have been futile to follow the due process procedures laid out in 8 Va. Admin. Code § 20-81-210.

Their futility argument fails for three reasons.  First, Plaintiffs' own allegations undermine their assertion that due process administrative proceedings are futile and will not provide relief, because when they *did* engage in due process proceedings, they obtained settlements and the relief they sought.   FAC ¶ 114.   Second, the unavailability of the specific relief sought in the administrative process does not render the administrative process futile.   *Bills*, 2022 U.S. Dist. LEXIS 99437, at *13 (citing *Z.G.*, 744 F. App'x at 777-78); *see also McMillen v. New Caney Indep. Sch. Dist.*, 939 F.3d 640, 647 (5th Cir. 2019) (holding that the "IDEA requires plaintiffs who were denied a free appropriate public education to exhaust regardless of the remedy they seek."). Moreover, the unavailability of a specific remedy in the administrative process "does not render the administrative process futile because, if it did, 'any party could sidestep administrative procedures by simply drafting a civil complaint that requests [unavailable] relief.'"   *Bills*, 2022 U.S. Dist. LEXIS 99437, at *14 (quoting *Pullen v. Botetourt Cnty. Sch. Bd.*, No. 94-cv-686, 1995 U.S. Dist. LEXIS 8522, at *3 (W.D. Va. Feb. 13, 1995)).   Third, the Fourth Circuit has never

---

[7]   Va. Dep't of Educ., Special Education Due Process Hearings, https://www.doe.virginia.gov/programs-services/special-education/resolving-disputes/special-education-due-process-hearings

recognized the "systemic" exception to exhaustion, or the theory that allegations of "systemic legal deficiencies" can excuse the IDEA's exhaustion requirement. *See T.R. v. Sch. Dist. of Phila.*, 4 F.4th 179, 192 (3d Cir. 2021).[8]  So no exception to the exhaustion requirement rescues D.C. and the Chaplicks from their concession that they refused to take part in a due process hearing about their disagreement on the appropriate residential program and placement for D.C. during the 2020-2021 school year.  FAC ¶¶ 122-31.

C.    **D.C. and M.B. Waived Their Due Process Arguments by Failing to Raise Them in Their Due Process Hearings and in M.B's Related Federal Litigation (Count I).**

A party waives a non-jurisdictional constitutional challenge by failing to raise it during administrative proceedings.  *See Bennett v. Berryhill*, No. 2:17cv520, 2019 U.S. Dist. LEXIS 39612, at *28 (E.D. Va. Feb. 15, 2019) (citing *Jones Bros., Inc. v. Sec'y of Labor*, 898 F.3d 669, 676 (6th Cir. 2018)); *see also Farzana K. v. Ind. Dep't of Educ.*, 473 F.3d 703, 705 (7th Cir. 2007) (noting that the concepts of waiver and forfeiture apply in the IDEA context).  Plaintiffs argue for the first time in this suit that Virginia's due process system as a whole is flawed, that VDOE maintains a biased hearing officer system, and that it is futile to seek administrative relief.  But Plaintiffs never made these arguments in their due process hearings or in M.B.'s related federal court litigation.  Plaintiffs' failure to make these arguments in the proceedings below provide another reason to dismiss their claims.

---

[8] Even courts (unlike the Fourth Circuit) that recognize the systemic exception limit the scope of that exception to avoid letting a party circumvent exhaustion merely by styling the complaint as a class action seeking injunctive relief or by challenging "centralized, uniform policies that affect all students within a school or school district."  *Id*.  So D.C.'s request for an injunction or class-wide relief does not excuse his failure to exhaust.

**D.     D.C.'s Claims Are Barred by Collateral Estoppel (Counts I-II).**

The doctrine of collateral estoppel also bars D.C.'s claims related to his 2015 placement dispute because that doctrine applies to IDEA administrative decisions.  *Capuano v. Fairfax Cnty. Pub. Bd.*, No. 1:13-cv-00568-GBL-TRJ, 2013 U.S. Dist. LEXIS 155750, at *12 (E.D. Va. Oct. 29, 2013).   Collateral estoppel binds D.C. as to that issue even as to claims against the VDOE Defendants because (1) that issue "is identical to one previously litigated;" (2) "the issue was actually determined" in the 2015 proceeding; (3) "the issue's determination was a critical and necessary part of the decision" in that 2015 proceeding; (4) that judgment in that 2015 proceeding is "final and valid;" and (5) D.C. "had a full and fair opportunity to litigate the issue" in that 2015 proceeding. *Westmoreland Coal Co. v. Sharpe*, 692 F.3d 317, 331 (4th Cir. 2012) (internal citations omitted).  Having had the chance to litigate then, it is entirely fair to preclude D.C. from relitigating the same issue here. *Id.*

In this case, D.C. and his parents' Section 1983 claims are virtually the same as the IDEA claims they raised in their prior due process hearings.  They litigated his claims in 2015 with a full and fair opportunity to litigate the issues raised in this case.  And they chose not to appeal the hearing officer's decision.  D.C. and his parents also chose not to file a request for due process hearing related to his location change, which required a change in his agreed-upon IEP.  But even though they chose not to appeal, collateral estoppel still applies. *Capuano*, 2013 U.S. Dist. LEXIS 155750, at *2–3 (finding that plaintiff's claims were barred because he chose not to appeal the decision of the administrative hearing).

**E.     M.B.'s Claims are Barred by the First-to-File Rule (Counts I-II).**

The Court should also dismiss M.B.'s attempt to relitigate claims over the same factual predicates he is already litigating in a pending lawsuit.  Under the "first-to-file" rule, a court should

give priority to the first suit unless the balance of convenience favors the second.  *See Ellicott Mach. Corp. v. Modern Welding Co.*, 502 F.2d 178, 180 n.2 (4th Cir. 1974); *Learning Network, Inc. v. Discovery Comm'cns., Inc.*, 11 F. App'x 297, 300-01 (4th Cir. 2001).  M.B. appealed the decision of his due process hearing in a separate federal lawsuit that was filed before this lawsuit.  He now attempts to litigate the same IDEA claims in this lawsuit under the guise of a Section 1983 action.  But allowing M.B. to again bring these IDEA claims in this lawsuit would duplicate litigation over these claims, which the first-to-file rule aims to prevent.  As such, dismissal is an appropriate remedy for second-filed claims.  *See, e.g.*, *Fisher v. Rite Aid Corp.*, Civ. Action No. RDB-09-1909, 2010 U.S. Dist. LEXIS 56383, at *11 (D. Md. June 8, 2010) (dismissing second-filed claim when plaintiff first filed their class-action lawsuit in another district).

**F      Plaintiffs Fail to State an IDEA Claim (Counts III-IV).**

Plaintiffs also fail to state a claim under the IDEA.  D.C.'s IDEA claim fails because he never pursued a due process hearing for his February 2021 placement dispute, and he never filed a request for due process hearing after the Chaplicks moved him to an adult group home in October 2021.  Those decisions made it impossible for FCPS to implement the agreed-upon IEP that provided for residential placement at Grafton.  FAC ¶¶ 262-65.

D.C. also fails to show that he was not provided a FAPE.  In fact, the FAC shows that from 2015 through October 2021, FCPS provided D.C. with day placement and some residential placement at Grafton, where he received educational instruction and achieved success according to the Chaplicks.  *See* FAC ¶¶ 106, 109, 114, 262.  Thus, D.C. and his parents fail to show any deprivation of a FAPE under the IDEA.

M.B. is presently litigating whether FCPS provided him with a FAPE in 2018-2019, 2019-2020, and 2020-2021 in another federal lawsuit.  FAC ¶¶ 35-37.  But M.B.'s and D.C.'s speculative

and conclusory allegations cannot show any deprivation of a FAPE by the VDOE Defendants.
Rather, the FAC shows the VDOE Defendants were not responsible for creating and implementing
their IEPs; FCPS was.   And the allegations cannot plausibly allege systemic flaws in special
education due process hearings because of VDOE's conduct.   So the IDEA claims should be
dismissed for failure to state a claim.

> ### G.   The Putative Class Allegations Should Be Dismissed Because No Class Could Be Certified (Counts I-IV).

Plaintiffs' allegations also reveal that the putative class claims would require heavily
individualized adjudication that would render a class action unworkable.   "[S]ometimes the
[class certification] issues are plain enough from the pleadings." *Gen. Tel. Co. of Sw. v.
Falcon*, 457 U.S. 147, 160 (1982).   Both Rule 12 and Rule 23(d)(1)(D) allow the dismissal of such
putative class allegations that cannot meet the requirements of Rule 23.   *See Elson v. Black*, 56
F.4th 1002, 1006 (5th Cir. 2023) ("District courts are permitted to make such determinations on
the pleadings and before discovery is complete when it is apparent from the complaint that a class
action cannot be maintained."); Rule 23(d)(1)(D) (a court "may issue orders that . . . require that
the pleadings be amended to eliminate allegations about representation of absent persons and that
the action proceed accordingly").

Plaintiffs seek certification under Rule 23(b)(2), which allows a class for injunctive or
declaratory relief only if "the party opposing the class has acted or refused to act on grounds that
apply generally to the class, so that final injunctive relief or corresponding declaratory relief is
appropriate respecting the class as a whole."   "Rule 23(b)(2) applies only when a single injunction
or declaratory judgment would provide relief to each member of the class. It does not authorize
class certification when each individual class member would be entitled to a *different* injunction
or declaratory judgment against the defendant." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338,

360 (2011) (emphasis in original). "Rule 23(b)(2) sets forth two basic requirements: (1) the party opposing the class must have acted, refused to act, or failed to perform a legal duty on grounds generally applicable to all class members, and (2) final relief of an injunctive nature or a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, must be appropriate." *Gaston v. LexisNexis Risk Sols., Inc.*, 483 F. Supp. 3d 318, 341 (W.D.N.C. 2020).

Plaintiffs must also satisfy each element of Rule 23(a): (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. And Plaintiffs must satisfy the "ascertainability" requirement by proposing a class whose members "a court can readily identify . . . in reference to objective criteria." *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014).

The FAC reveals that Plaintiffs will be unable to satisfy the requirements of Rule 23 for at least three reasons.

First, Plaintiffs cannot establish commonality under Rule 23(a)(2) because their allegations track the sort of proof that the Supreme Court found inadequate in *Wal-Mart Stores, Inc. v. Dukes*. There, the proposed class alleged that female employees had suffered a common "Title VII injury," 564 U.S. at 350, but that did not establish commonality because they had offered no "glue holding the alleged *reasons*" for the alleged Title VII violations together, *id.* at 352 (emphasis in original). It was critical that Wal-Mart managers had discretion to make individual employment decisions, *id.* at 343, and the Supreme Court found it "quite unbelievable that all managers would exercise their discretion in a common way without some common direction." *Id.* at 356. Plaintiffs

23

identified no common, official policy or direction, and the Supreme Court held that the plaintiffs' statistical and anecdotal evidence did not prove a "common mode of exercising discretion." *Id.*

Here, Plaintiffs likewise allege no "glue holding the alleged *reasons*" for the purported IDEA injury together. *Id.* at 352 (emphasis in original). Rather, they "challeng[e] hundreds"— indeed, thousands—"of individualized decisions made in a decentralized environment." *Parent/Pro. Advoc. League v. City of Springfield*, 934 F.3d 13, 29 (1st Cir. 2019) (affirming denial of certification for IDEA claim seeking injunction to provide class members with school-based behavior services). But they offer no plausible allegation of any "'common mode of exercising discretion.'" *Id.* (quoting *Wal-Mart Stores, Inc.*, 564 U.S. at 356). Instead, they rely on similar aggregate proof of purported injury, *see* FAC ¶¶ 83-104, without "identifying a particular driver— a 'uniform policy or practice that affects all class members.'" *Parent/Pro. Advoc. League*, 923 F.3d at 30 (quoting *DL v. District of Columbia*, 713 F.3d 120, 128 (D.C. Cir. 2013)). But "[a]bsent such a common driver," answering whether particular hearings would violate particular putative class members' rights "requires individualized determinations which defeat commonality." *Id.* at 31.

Second, Plaintiffs fail the ascertainability requirement because their putative class members would be "impossible to identify without extensive and individualized fact-finding or 'mini-trials.'" *EQT Prod. Co.*, 764 F.3d at 358 (internal quotations omitted). Both proposed class definitions turn on fact-intensive questions that would require mini-trials just to determine whether a particular person is even in the class. The VDOE Class requires an "eligib[ility] for special education and related services." FAC ¶ 59. And the FCPS Class requires that "current students [have] disabilities." *Id.* ¶ 60. Indeed, those questions of eligibility and disability are often the subject of hotly contested IDEA disputes. Because determining proposed class membership would

create heavily individualized "administrative challenges," *EQT Prod. Co.*, 764 F.3d at 360, those classes could not be certified.[9]

Third, final injunctive or declaratory relief would *not* be appropriate under Rule 23(b)(2) given the need for exhaustion of administrative remedies by absent class members.   As explained in Part II.B above, the IDEA's exhaustion requirement is a cornerstone part of the statutory scheme for resolving IDEA disputes.  Because different putative class members will be differently situated and require resolution of different hearing issues, the exhaustion requirement cannot be excused or satisfied by a meager handful of named plaintiffs. *See Parent/Pro. Advoc. League*, 934 F.3d at 32-33 (affirming the denial of class certification based on the need for absent class members to exhaust).

## CONCLUSION

For these reasons, the Court should grant VDOE and Superintendent Balow's Motion to Dismiss.

Dated: February 17, 2023                              Respectfully submitted,

                                                      MᴄGᴜɪʀᴇWᴏᴏᴅs LLP

                                                      */s/ Jackie L. White*
                                                      Jackie L. White (VSB No. 96317)
                                                      1750 Tysons Boulevard
                                                      Suite 1800
                                                      Tysons, VA 22102
                                                      Telephone: (703) 712-5474
                                                      Facsimile: (703) 712-5206

---

[9] For similar reasons, the proposed class definitions would create impermissible "fail-safe classes," which "are proposed classes that require a court to rule on the merits of the claim . . . in order to tell who was included in the class."  *Bryant v. King's Creek Plantation, L.L.C.*, No. 4:20-CV-00061, 2020 WL 6876292, at *2 (E.D. Va. June 22, 2020) (alteration in original) (internal quotations omitted).  Fail-safe classes are "'improper because a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment.'"  *Id.* (quoting *Melton ex rel. Dutton v. Carolina Power & Light Co.*, 283 F.R.D. 280, 288 (D.S.C. 2012)).

jwhite@mcguirewoods.com
*Counsel of Record for VDOE
and Jillian Balow, in her official capacity as
Superintendent of Public Instruction of
VDOE*

Farnaz F. Thompson (VSB No. 75892)
888 16th Street NW
Suite 500
Washington, DC 20006
Telephone: (202) 857-2488
Facsimile: (202) 828-3358
fthompson@mcguirewoods.com

Brian D. Schmalzbach (VSB No. 88544)
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
Telephone: (804) 775-4746
Facsimile: (804) 698-2304
bschmalzbach@mcguirewoods.com

Amy E. Hensley (VSB No. 80470)
Assistant Attorney General
Office of the Attorney General
202 North 9th Street
Richmond, Virginia 23219
Telephone: (804) 371-2267
Facsimile: (804) 371-2087
ahensley@oag.state.va.us

Jason S. Miyares
Attorney General of Virginia

Steven G. Popps
Deputy Attorney General

Jacqueline C. Hedblom
Senior Assistant Attorney General/Chief

Deborah A. Love
Senior Assistant Attorney General/Chief

26

**CERTIFICATE OF SERVICE**

I hereby certify that on the 17th of February 2023, I filed a copy of this document using the Court's ECM/ECF filing system, which will send an electronic notification of the same (NEF) to counsel of record for the plaintiff.

/s/ Jackie L. White
Jackie L. White (VSB No. 96317)
MCGUIREWOODS LLP
1750 Tysons Boulevard
Suite 1800
Tysons, VA 22102
Telephone: (703) 712-5474
Facsimile: (703) 712-5206
jwhite@mcguirewoods.com
