# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | |
|---|---|
| **D.C.,** *et al.* | |
|       **Plaintiffs,** | |
|       **v.** | **Case No.: 1:22-CV-01070-MSN-IDD** |
| **FAIRFAX COUNTY SCHOOL BOARD,** *et al.* | |
|       **Defendants.** | |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................................................ 1

II.     BACKGROUND ......................................................................................................... 2

III.    MOTION TO DISMISS STANDARDS .................................................................... 7

IV.     THE PLAINTIFFS ALL HAVE STANDING .......................................................... 7

        A.      Plaintiffs Have Standing to Seek Prospective Relief ................................... 8

        B.      HOV Has Both Direct and Associational Standing ..................................... 10

                1.   HOV Has Direct Standing Because The Amended Complaint Properly Alleges That HOV Suffered a Redressable Injury in Fact That Is Traceable to Defendants' Actions and Inactions .......................................................................... 11

                2.   HOV Has Associational Standing to Sue on Behalf of Its Members Because the Amended Complaint Plausibly Alleges That It Satisfies Each Prong of the *Hunt* Test ........................................................................................................ 13

V.      THE ADMINISTRATIVE EXHAUSTION REQUIREMENT OF THE IDEA DOES NOT BAR ANY OF PLAINTIFFS' CLAIMS .......................................................... 15

        A.      Plaintiffs Had No Administrative Remedy Against VDOE ......................... 16

        B.      Plaintiffs Were Not Required to Exhaust Administrative Remedies Because They Have Brought a Systemic Challenge to Defendants' Violations ......................... 17

        C.      Plaintiffs Were Not Required to Exhaust Administrative Remedies Because Systemic Bias Renders the Administrative Process Futile ................................... 19

        D.      Plaintiffs' Class Claims Were Vicariously Exhausted Through M.B.'s and His Parents' Exhaustion of Their Individual Claims .................................................. 21

VI.     DEFENDANTS' MOTION TO STRIKE PLAINTIFFS' CLASS CLAIMS IS UNFOUNDED AND PREMATURE ....................................................................... 22

VII.    NO CLAIMS ARE WAIVED OR COLLATERALLY ESTOPPED .............................. 25

VIII.   THE DUPLICATIVE LITIGATION DOCTRINE DOES NOT BAR M.B.'s CLAIMS 28

IX.     PLAINTIFFS HAVE STATED CLAIMS FOR VIOLATIONS OF THE IDEA AGAINST ALL DEFENDANTS ............................................................................................... 30

        A.      Plaintiffs Have Stated a Claim Against the VDOE Defendants for Violation of the IDEA ...................................................................................................... 31

        B.      Plaintiffs Have Stated a Claim Against the FCSB Defendants for Violation of the IDEA ...................................................................................................... 33

X.      PLAINTIFFS HAVE PROPERLY PLED CLAIMS UNDER 42 U.S.C. § 1983 ............ 34

        A.      Plaintiffs' Section 1983 Claims Are Not Barred by the IDEA ............................ 34

i

B.    Plaintiffs Have Properly Pled Claims Against Superintendents Balow and Reid in Their Official Capacities .................................................................................. 36

1.   Plaintiffs Have Alleged That Defendants Balow and Reid Deprived Them of Due Process ......................................................................................................... 37

C.    Plaintiffs Have Adequately Alleged That Defendants Balow and Reid Deprived Them of Their Rights to Equal Protection ........................................................... 43

1.   Plaintiffs Allege That They Have Been Singled Out as A Class of Disabled Children and their Families ................................................................................. 43

2.   Plaintiffs Allege That Defendants Acted with Discriminatory Bias ............... 44

3.   Plaintiffs Allege That Defendants' Actions Violated Their Fundamental Rights and Cannot Withstand Strict Scrutiny ............................................................... 46

XI.   CONCLUSION ............................................................................................................. 50

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Albemarle Paper Co. v. Moody*,
    422 U.S. 405 (1975)..................................................................................................21

*Antonia C. v. Kijakazi*
    No. 3:20-CV-00987 (MHL), 2022 WL 3753962 at *7 (E.D. Va. May 9, 2022)....................21

*Arendi S.A.R.L. v. LG Elecs. Inc.*,
    47 F.4th 1380 (Fed. Cir. 2022) ...............................................................................30

*Bearden v. Georgia*,
    461 U.S. 660 (1983)..................................................................................................47

*Beth V. by Yvonne V. v. Carroll*,
    87 F.3d 80 (3d Cir. 1996) .......................................................................................17

*Bills v. Va. Dep't of Educ.*,
    605 F. Supp. 3d 744 (W.D. Va. 2022) ......................................................................35

*Blackman v. District of Columbia*,
    277 F. Supp. 2d 71 (D.D.C. 2003)............................................................................32

*Breitling v. Solenberger*,
    585 F. Supp. 289 (W.D. Va. 1984) ...........................................................................39

*Brigham v. State*,
    166 Vt. 246 (Vt. 1997)..............................................................................................48

*Brightview Grp., LP v. Glynn*,
    No. CV SAG-21-3027, 2022 WL 743937 (D. Md. Mar. 11, 2022) ............................29

*Bryant v. Kings Creek Plantation, L.L.C.*,
    No. 4:20-CV-00061, 2020 WL 6876292 (E.D. Va. June 22, 2020) ............................22

*Charleston Waterkeeper v. Frontier Logistics*,
    488 F. Supp. 3d 240 (D. S.C. 2020)..........................................................................13

*Chester Upland Sch. Dist. v. Pennsylvania*,
    No. CIV.A. 12-132, 2012 WL 1473969 (E.D. Pa. Apr. 25, 2012) .....................23, 24

*Connecticut Coalition for Justice in Educ. Funding, Inc. v. Rell*,
    295 Conn. 240 (Conn. 2010)......................................................................................48

*Council of Parent Att'ys & Advocs., Inc. v. DeVos*,
    365 F. Supp. 3d 28 (D.D.C. 2019) ........................................................................14

*Courthouse News Serv. v. Schaefer*,
    440 F. Supp. 3d 532 (E.D. Va. 2020) ...................................................................36

*Crump v. Tcoombs & Assocs., LLC*,
    No. 2:13CV707, 2014 WL 4748520 (E.D. Va. Sept. 23, 2014) ...........................25

*D.M. v. New Jersey Dep't of Educ.*,
    801 F.3d 205 (3d Cir. 2015).................................................................................16

*Deal v. Mercer Cnty. Bd. of Educ.*,
    911 F.3d 183 (4th Cir. 2018) ............................................................................9, 10

*Doe ex rel. Doe v. Hampden-Wilbraham Regional School Dist.*,
    715 F. Supp. 2d 185 (D. Mass. 2010) ..................................................................31

*Doe v. Arizona Dep't of Educ.*,
    111 F.3d 678 (9th Cir. 1997) ...............................................................................17

*Doe v. Kidd*,
    501 F.3d 348 (4th Cir. 2007) ...............................................................................26

*Doe v. Ohio*,
    No. 2:91-cv-464, 2012 WL 12985973 (S.D. Ohio 2012) ................................48, 49

*Dyer v. Air Methods Corp.*,
    No. 9:20-CV-2309-DCN, 2020 WL 7398711 (D.S.C. Dec. 17, 2020) ..................28

*Echtenkamp v. Loudon Cnty. Pub. Sch.*,
    263 F. Supp. 2d 1043 (E.D. Va. 2003) ................................................................37

*EQT Prod. Co. v. Adair*,
    764 F.3d 347 (4th Cir. 2014) ...............................................................................24

*Equity in Athletics, Inc. v. Dep't of Educ.*,
    675 F. Supp. 2d 660 (W.D. Va. 2009) .............................................................14, 46

*Equity in Athletics v. Dep't of Educ.*,
    639 F.3d 91 (4th Cir. 2011) ........................................................................13, 14, 43

*Fisher v. Rite Aid Corp.*,
    Civ. Action No. RDB-09-1909, 2010 U.S. Dist. LEXIS 56383, at *11
    (D. Md. June 8, 2010) ........................................................................................30

*Friends of Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
    562 U.S. 167 (2000).............................................................................................8

*G.T. by Michelle v. Bd. of Educ. of Cnty. of Kanawha,*
   No. 2:20-CV-00057, 2021 WL 3744607 (S.D.W. Va. Aug. 24, 2021) ............................23, 24

*Goldberg v. Kelly,*
   397 U.S. 254 (1970).................................................................................................................40

*Goldstein v. Chestnut Ridge Volunteer Fire Dep't,*
   218 F.3d 337 (4th Cir. 2000) ..................................................................................................37

*Goodman v. Praxair, Inc.,*
   494 F.3d 458 (4th Cir. 2007) ..................................................................................................26

*Goss v. Lopez,*
   419 U.S. 565 (1975).................................................................................................................38

*Goyer v. Adams,*
   No. 21-7294, 2022 WL 17848959 (4th Cir. Dec. 22, 2022).......................................................7

*Griffin v. Illinois,*
   351 U.S. 12 (1956)...................................................................................................................47

*Hanover Cnty. Unit of the Nat'l Ass'n of Colored People v. Hanover County,*
   461 F. Supp. 3d 280 (E.D. Va. 2020) ......................................................................................14

*Havens Realty Corp. v. Coleman,*
   455 U.S. 363 (1982).........................................................................................................11, 12

*Heldman on Behalf of T.H. v. Sobel,*
   962 F.2d 148 (2d Cir. 1992).....................................................................................................19

*Henderson v. Corelogic Nat'l Background Data, LLC,*
   No. 3:12CV97, 2016 WL 4611571 (E.D. Va. Sept. 2, 2016).....................................................25

*Himmelbrand v. Harrison,*
   484 F. Supp. 803 (W.D. Va. 1980) ..........................................................................................37

*Honig v. Doe,*
   484 U.S. 305 (1988).................................................................................................................17

*Hunt v. Wash. State Apple Advert. Comm'n,*
   432 U.S. 333 (1977).........................................................................................................11, 13

*In re Murchison,*
   349 U.S. 133 (1955).................................................................................................................40

*In re Int'l Bus. Machs.,*
   618 F.2d 923 (2d Cir. 1980) ....................................................................................................21

v

*Int'l Woodworkers of Am., AFL-CIO, CLC v. Chesapeake Bay Plywood Corp.*,
   659 F.2d 1259 (4th Cir. 1981) ...............................................................................................23

*J.N. v. Oregon Dep't of Educ.*,
   338 F.R.D. 256 (D. Or. 2021) .................................................................................................10

*J.S. ex rel. N.S. v. Attica Cent. Sch.*,
   386 F.3d 107 (2d Cir. 2004)..............................................................................................17, 18

*Jarboe v. Md. Dep't of Pub. Safety & Corr. Servs.*,
   Civ. A. No. ELH-12-572, 2013 WL 1010357 (D. Md. Mar. 13, 2013)...................................22

*Jefferson v. Sch. Bd. of City of Norfolk, Virginia*,
   No. 2:10cv316, 2011 WL 13195917 (E.D. Va. Feb. 28, 2011).............................................40

*Joint Anti–Fascist Refugee Comm. v. McGrath*,
   341 U.S. 123 (1951)................................................................................................................8

*K.I. v. Durham Public School Board of Education*,
   No. 1:19CV857, 2020 WL 3512213 (M.D.N.C. June 29, 2020)............................................19

*Kentucky v. Graham*,
   473 U.S. 159 (1985)...............................................................................................................36

*Kerns v. United States*,
   585 F.3d 187 (4th Cir. 2009) ...................................................................................................7

*King v. McMillan*,
   233 F. App'x 242 (4th Cir. 2007) ...........................................................................................22

*Know Your IX v. DeVos*,
   Civ. A. No. RDB-20-01224, 2020 U.S. Dist. LEXIS 194288
   (D. Md. Oct. 20, 2020)............................................................................................................12

*Kolbe v. Hogan*,
   849 F.3d 114 (4th Cir. 2017) .................................................................................................44

*Krakauer v. Dish Network*,
   LLC, No. 1:14-CV-333, 2017 WL 4417957 (M.D.N.C. Oct. 3, 2017) ...................................28

*Kravitz v. U.S. Dep't of Com.*,
   366 F. Supp. 3d 681 (D. Md. 2019) .......................................................................................12

*L.J. by and through Hudson v. Pittsburg Unified School District*,
   850 F.3d 996 (9th Cir. 2017) .................................................................................................31

*Lane v. Holder*,
   703 F.3d 668 (4th Cir. 2012) .................................................................................................12

*Lee v. Va. State Bd. of Elections*,
   188 F. Supp. 3d 577 (E.D. Va. 2016) ...................................................................12

*Lewis v. City of Chicago*,
   560 U.S. 205 (2010)........................................................................................21

*Liteky v. U.S.*,
   510 U.S. 540 (1994)........................................................................................ 21

*Lucky Dogs LLC v. City of Santa Rosa*,
   913 F. Supp. 2d 853 (N.D. Cal. 2012) ...........................................................40, 41

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992)........................................................................................11

*Lytle v. Doyle*,
   326 F.3d 463 (4th Cir. 2003) .........................................................................37

*M.A. v. State Operated Sch. Dist. of Newark*,
   344 F.3d 335 (3d Cir. 2003)..........................................................................16

*M.C. by & through M.N. v. Antelope Valley Union High Sch. Dist.*,
   858 F.3d 1189 (9th Cir. 2017) .......................................................................26

*M.H. ex rel. K.H. v. Mount Vernon City Sch. Dist.*,
   No. 13 CV 3596 VB, 2014 WL 901578 (S.D.N.Y. Mar. 3, 2014) .........................38

*Mallette v. Arlington Cnty. Emps. Supplemental Ret. Sys. II*,
   91 F.3d 630 (4th Cir. 1996) .......................................................................37, 38

*Maryland Highways Contractors Ass'n, Inc. v. State of Md.*,
   933 F.2d 1246 (4th Cir. 1991) .......................................................................15

*Mathews v. Eldridge*,
   424 U.S. 319 (1976)........................................................................................38

*McDonald v. Dunning*,
   760 F. Supp. 1156 (E.D. Va. 1991) ...............................................................36

*McMillen v. New Caney Indep. Sch. Dist.*,
   939 F.3d 640 (5th Cir. 2019) .........................................................................19

*Md. Shall Issue, Inc. v. Hogan*,
   963 F.3d 356 (4th Cir. 2020) .........................................................................11

*MM ex rel. DM v. Sch. Dist. of Greenville Cnty.*,
   303 F.3d 523 (4th Cir. 2002) .........................................................................15

*Monegain v. Dep't of Motor Vehicles*,
  491 F. Supp. 3d 117 (E.D. Va. 2020) ......................................................43

*Morrison v. Garraghty*,
  239 F.3d 648 (4th Cir. 2001) ...................................................................43

*Mrs. W. v. Tirozzi*,
  832 F.2d 748 (2d Cir. 1987)......................................................................16

*MVP Grp. Int'l, Inc. v. Smith Mountain Indus., Inc.*,
  No. 2:11-CV-2608, 2012 WL 425010 (D.S.C. Feb. 9, 2012)....................29

*Nat'l Coal. For Students with Disabilities Educ. & Legal Fund v. Scales*,
  150 F. Supp. 2d 845 (D. Md. 2001).........................................................13

*Parent/Pro. Advoc. League v. City of Springfield, Massachusetts*,
  934 F.3d 13 (1st Cir. 2019).......................................................................25

*Plyler v. Doe*,
  457 U.S. 202 (1982)............................................................................44, 49

*Pullen v. Botetourt Cnty. Sch. Bd.*,
  No. CIV. 94-686-R, 1995 WL 738983 (W.D. Va. Feb. 13, 1995) ....................15, 17

*R. A-G ex rel. R.B. v. Buffalo City Sch. Dist. Bd. of Educ.*,
  No. 12-CV-960S, 2013 WL 3354424 (W.D.N.Y. July 3, 2013) ............................23

*R.S. v. Bedford Cent. Sch. Dist.*,
  899 F. Supp. 2d 285 (S.D.N.Y. 2012).......................................................20

*Retail Indus. Leaders Ass'n v. Fielder*,
  475 F.3d 180 (4th Cir. 2007) ...................................................................15

*Richards v. Berryhill*,
  759 F. App'x 187 (4th Cir. 2019) .............................................................33

*Robertson v. Apker*,
  700 F. App'x 301 (4th Cir. 2017) (unpublished)......................................28

*Rockwell Int'l Corp. v. United States*,
  549 U.S. 457 (2007)..................................................................................11

*Roland M. v. Concord School Committee*,
  910 F.2d 983 (1st Cir. 1990) ....................................................................31

*Ross v. City of Memphis*,
  394 F. Supp. 2d 1024 (W.D. Tenn. 2005)................................................40

*Ryan v. Illinois Dep't of Child. & Fam. Servs.*,
  185 F.3d 751 (7th Cir. 1999) ................................................................40

*San Antonio Ind. Sch. Dist. v. Rodriguez*,
  411 U.S. 1 (1973)................................................................................46

*Schweiker v. McClure*,
  456 U.S. 188 (1982)............................................................................21

*Scott v. Commonwealth*,
  247 Va. 379 (Va. 1994)........................................................................47

*Sellers by Sellers v. School Bd. of Manassas*,
  141 F.3d 524 (4th Cir. 1998) (*Sellers*)................................................34, 35

*Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*,
  329 F. Supp. 2d 574 (D. Md. 2004) ......................................................29

*Sharpe v. Winterville Police Dep't*,
  59 F.4th 674 (4th Cir. 2023) ................................................................36

*Stevenson ex rel. Stevenson v. Martin Cnty. Bd. of Educ.*,
  3 F. App'x 25 (4th Cir. 2001) ..............................................................38

*Sylvia Dev. Corp. v. Calvert Cnty., Md.*,
  48 F.3d 810 (4th Cir. 1995) ................................................................45

*Taubman Realty Grp. Ltd. v. Mineta*,
  198 F. Supp. 2d 744 (E.D. Va. 2002) ....................................................14

*Tumey v. Ohio*,
  273 U.S. 510 (1927)............................................................................40

*United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*,
  517 U.S. 544 (1996)............................................................................14

*Van Der Linde Hous., Inc. v. Rivanna Solid Waste Auth.*,
  507 F.3d 290 (4th Cir. 2007) ..............................................................3

*W.H. by & through M.H. D.R. v. Tennessee Dep't of Educ.*,
  No. 3:15-1014, 2016 WL 236996 (M.D. Tenn. Jan. 20, 2016) ................16

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011)............................................................................23

*Ward v. Monroeville*,
  409 U.S. 57 (1972)..............................................................................40

*Westmoreland Coal Co. v. Sharpe ex rel. Sharpe*,
  692 F.3d 317 (4th Cir. 2012) ................................................27

*White v. BFI Waste Serv., LLC*,
  375 F.3d 288 (4th Cir. 2004) ................................................22

*Z.G. v. Pamlico Cty. Pub. Sch. Bd. of Educ.*,
  744 Fed. App'x. 769 (4th Cir. 2018) ...........................15, 19

*Zablocki v. Redhail*,
  434 U.S. 374 (1978)................................................46

**Statutes**

United States Code Title 20, Section 1400, *et seq.* – Individuals with Disabilities
  Education Act............................................... *passim*

United States Code Title 42, Section 1983 – Civil Action for Deprivation of
  Rights ............................................... *passim*

**Rules**

Fed. R. Civ. Pro. 12................................................7, 25, 33

Fed. R. Civ. Pro. 23................................................23, 24, 25

Fed. R. Civ. Pro. 8................................................25, 34

**Other Authorities**

Derek Black, *Freedom, Democracy, and the Right To Education*,
  116 Northwestern L.R.1031, 1036–1037 (2022)................................................48

I.      INTRODUCTION

In the First Amended Complaint ("FAC"), Plaintiffs describe in painstaking detail how Defendants are preventing disabled children in Virginia from receiving the educational services guaranteed by the Individuals with Disabilities Education Act (the "IDEA").  They explain that Defendants have established a multi-faceted system designed to obstruct, delay, and ultimately prevent families from receiving and vindicating their rights.  And they explain how Defendants' actions constitute ongoing violations of law which have persisted for years despite, and in defiance of, investigations and interventions by federal educational agencies.  Plaintiffs allege that these deprivations are systemic and structural in nature, and at this point, can only be remedied through an action by this Court.

Rather than attempt to explain why these allegations fall short, Defendants instead rely on misdirection.  They first reframe Plaintiffs' claims concerning systemic state-wide violations of law into individual grievances of two families dissatisfied with their children's education.  They then obfuscate the issues raised by misapplying and misinterpreting the law, and they attempt to apply a heightened pleading standard that does not exist.  Defendants also raise a plethora of issues that are neither appropriate for resolution on a motion to dismiss nor meritorious.  Defendants essentially argue that Plaintiffs must rely on the hopelessly broken system that Defendants have created to fix that hopelessly broken system.  Were that true, Defendants' conduct would be forever insulated from review.

The FAC carefully establishes that this Court has jurisdiction over Plaintiffs' claims.  The Plaintiffs also have standing because they are suffering an ongoing injury that is the direct result of Defendants' violations of federal law, and this injury can be brought to an end by this Court.  Plaintiffs further demonstrate that they were not required to seek relief from Defendants' conduct through an individual due process hearing before coming to this Court.  Plaintiffs had no

opportunity to seek such a hearing against the Virginia Department of Education ("VDOE").  They have also brought systemic claims against all Defendants that a due process hearing officer cannot redress, and it would have been futile for them to attempt to overcome the pervasive biases of VDOE's broken due process hearing system.  Moreover, Plaintiffs M.B. and his parents have vicariously exhausted any administrative remedies on behalf of the putative classes.

In addition, contrary to Defendants' assertions, Plaintiffs' allegations adequately state claims against Defendants for violations of the IDEA.  Plaintiffs set forth, in detail, how VDOE and the Fairfax County School Board ("FCSB") violate Plaintiffs' substantive and procedural rights under the IDEA.  Defendants also seek dismissal based on assertions regarding duplicative litigation, estoppel, waiver, and class certification, but these arguments are legally unsupported and they turn on factual issues that are not properly raised on a motion to dismiss.

Plaintiffs also allege that Superintendents Balow and Reid have deprived them of property interests in both the Free Appropriate Public Education ("FAPE") guaranteed by the IDEA, and the free public education enshrined in the Virginia Constitution, without adequate procedural safeguards.  These actions violate the Due Process Clause of the United States Constitution.  And, because Defendants have treated Plaintiffs differently than children without disabilities in relation to these fundamental rights, Defendants' conduct also violates the Equal Protection Clause.

Defendants' motions should be denied.

## II.    BACKGROUND

Congress enacted the IDEA to guarantee children with disabilities an education that meets their needs and to make parents of children with disabilities partners in how their children are educated.  The IDEA grants children a substantive right to a FAPE, *see* 20 U.S.C. § 1401(9), and grants children and their families procedural rights to safeguard that FAPE, *see* 20 U.S.C. § 1415.  Under the IDEA, school associations receiving funds are required, among other things, to identify,

evaluate, and supply special education services to children with disabilities. *See* 20 U.S.C. § 1407(a)(1). They must also provide procedural safeguards to ensure access to FAPE. *See id.* at §§ 1407(a)(1); 1415. The Commonwealth and Fairfax County have accepted significant funds under the IDEA, and are bound to carry out these IDEA mandates. *See* FAC ¶¶ 78–79.

One of the most important rights guaranteed by the IDEA is the right to a fair and impartial due process hearing in which parents can challenge a school's action in relation to their disabled child. The IDEA requires states to provide "an opportunity for any party to present a complaint . . . with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(6). When such a complaint is lodged, "the parents or the local educational agency involved in such complaint shall have an opportunity for an impartial due process hearing, which shall be conducted by the State educational agency or by the local educational agency, as determined by State law or by the State educational agency." *Id.* at 20 U.S.C. § 1415(f)(1)(A).

In the Commonwealth, Defendant VDOE is the state-wide executive department responsible for overseeing the implementation of the IDEA. *See* FAC ¶ 52. As the Virginia Superintendent of Public Instruction, Defendant Jillian Balow is the executive officer responsible for ensuring that VDOE complies with the IDEA. *See* FAC ¶ 53.

Defendant FCSB is similarly responsible for ensuring that all children with disabilities residing in that school division have a right to a FAPE, as well as providing various other substantive and procedural rights under the IDEA. *See* FAC ¶ 50. Defendant Michelle Reid is the Superintendent of FCSB who is responsible for overseeing the daily operations of FCSB, including IDEA compliance. *See* FAC ¶ 51.

Rather than faithfully implement the IDEA, Defendants have implemented their own system: one designed to delay, limit, and ultimately deny special education services to the children across the Commonwealth.  *See* FAC ¶¶ 187–91; *see also* FAC ¶¶ 195–201.  As alleged in the FAC, and modeled below,  this system violates the IDEA from beginning to end:



At the outset, VDOE and FCSB establish procedures and processes to delay or prevent appropriate evaluations of children with disabilities. *See* FAC ¶¶ 195–201, 222–28, 300.  This prevents children from receiving badly needed services during crucial stages of their development.

If a child is able to obtain an evaluation, often times by securing one at the family's expense, FCSB still wields an array of tools to avoid providing necessary educational services.  First, FCSB downplays or outright rejects the findings of independent evaluations.  *See* FAC ¶¶ 195–201.  And when FCSB does conduct an evaluation, it is often woefully insufficient—leading to further deprivations and delays.  *See id.*

Then, FCSB transforms the IEP process from the collaboration between families and schools described in the IDEA into an adversarial contest where school administrators hold the final say.  *See* FAC ¶¶ 249–50.  School employees are  instructed to hide this reality from parents both through what those employees say, and what they omit.  *See* FAC ¶¶ 218–19.

Once an IEP is implemented, FCSB exaggerates students' performance through grade inflation and other means. *See* FAC ¶¶ 206–22  This practice masks that those students are not making progress and need additional services under the IDEA.

To further hide students' need for additional services, FCSB blocks parents' access to their children's educational records in direct contravention of the IDEA. *See* FAC ¶ 46, 221–22; 235–45. This delay tactic prevents parents from timely understanding the full extent of their children's disabilities and need for additional help.

When FCSB can delay no more, it limits or denies needed services outright. *See* FAC ¶¶ 255–69; 275. By this time, children may have gone for multiple school years without receiving the FAPE guaranteed by the IDEA. Other  Local Education Agencies ("LEAs") engage in similar tactics, and students across the Commonwealth suffer.

Throughout this process, VDOE is required to exercise oversight to ensure that LEAs like FCSB comply with the IDEA. But, as the United States Department of Education has determined after multiple investigations, VDOE consistently fails. *See* FAC ¶ 180.

Even after navigating this torturous process, parents and children are still subjected to further roadblocks. Although the IDEA mandates due process hearings and other avenues for reviewing whether LEAs are complying with the IDEA, in the Commonwealth,  no such avenues exist. *See* FAC ¶¶ 178–91. In its place, VDOE has established a fatally biased system set up to ensure that LEAs, including FCSB, can deny educational services with impunity. *See id.* For at least the past 20 years, the same core group of VDOE due process hearing officers has consistently denied relief to children and families. FAC ¶ 90. Since 2003, hearing officers in Virginia have ruled fully in favor of disabled children only 25 times out 1,391 cases – representing only 1.8% of

the total cases filed.  The percentage of rulings in favor of families has only worsened in the most

recent decade, as reflected in the following chart excerpted from Exhibit A to the FAC:

**Hearing Officer Ruling Results for the Period from 2010 through July 2021**

| Key Statistics | Northern Virginia | | Virginia | |
|---|---|---|---|---|
| | Officers | Pct | Officers | Pct |
| Number of Hearing Officers with Zero Rulings for Parents | 10 | 83.33% | 14 | 63.64% |
| Outcomes of Cases Initiated | Cases | Pct | Cases | Pct |
| Withdrawn | 191 | 48.35% | 433 | 51.12% |
| Settled | 68 | 17.22% | 115 | 13.58% |
| Dismissed or in Ruling in Favor of Schools | 127 | 32.15% | 266 | 31.40% |
| Partial Decision for Parents and School District | 6 | 1.52% | 20 | 2.36% |
| Ruled in Favor of Parents | 3 | 0.76% | 13 | 1.53% |
| Total Cases | 395 | 100% | 847 | 100% |

Plaintiffs have all been harmed, and continue to be harmed, by Defendants' systemic

violations of the IDEA.  Named Plaintiffs M.B. and D.C. are each students with disabilities who

reside in Fairfax County, Virginia. *See* FAC ¶¶ 18–37.  They have both been denied their rights to

an appropriate public education as protected by the IDEA and the Virginia Constitution.  *Id.*  Their

respective parents, who are named Plaintiffs in their own right, have devoted significant time and

money to pursue procedural safeguards afforded by the IDEA to obtain for their children the FAPE

Defendants have failed to provide.  *Id.*  D.C., M.B., and their families are not the only ones who

have suffered from Defendants' actions.  Named Plaintiff Hear Our Voices, or "HOV," is an

association that includes families with disabilities in Fairfax County and across the

Commonwealth of Virginia who have likewise been deprived their educational rights by the very

local and state educational agencies who were charged with safeguarding those rights.  *See* FAC

¶¶ 38–49.  Consistent with the breadth of Defendants' violations, Plaintiffs seek relief for two

classes of similarly situated children and families who have likewise been harmed by Defendants'

pattern and practice of unlawful conduct.

It would be impossible to remedy these systemic violations through an administrative hearing, let alone through VDOE's biased due process hearing system.  For that reason, Plaintiffs have brought this action for injunctive and declaratory relief against Defendants to address their failure to provide eligible children with the FAPE to which they are entitled under the IDEA. Plaintiffs also seek to address Defendants' violations of the guarantees of equal protection and due process under the Fourteenth Amendment to the Constitution of the United States.

III.    <u>MOTION TO DISMISS STANDARDS</u>

To survive a motion to dismiss for failure to state a claim under Fed. R. Civ. Pro. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Goyer v. Adams*, No. 21-7294, 2022 WL 17848959, at *1 (4th Cir. Dec. 22, 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Id.* (quoting *Iqbal*, 556 U.S. at 678).

The standard on a motion to dismiss for lack of jurisdiction under Fed. R. Civ. Pro. 12(b)(1) depends on the nature of the motion.  Because Defendants argue that the facts in the FAC are insufficient, "the trial court must apply a standard patterned on Rule 12(b)(6) and assume the truthfulness of the facts alleged."  *Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009). Where "the jurisdictional facts are inextricably intertwined with those central to the merits, the court should resolve the relevant factual disputes only after appropriate discovery, unless the jurisdictional allegations are clearly immaterial or wholly unsubstantial and frivolous."  *Id.*

IV.    <u>THE PLAINTIFFS ALL HAVE STANDING</u>

Defendants argue wrongly that Plaintiffs lack standing.  "[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly

7

traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 562 U.S. 167, 180–81 (2000).  Plaintiffs' allegations that they are being deprived of their rights under the IDEA and the Fourteenth Amendment to the United States Constitution by Defendants' ongoing unlawful practices satisfy these requirements.

### A.      Plaintiffs Have Standing to Seek Prospective Relief

Plaintiffs allege that Defendants are engaged in ongoing violations of federal law that cause Plaintiffs ongoing injury.  They have plausibly claimed that VDOE "continues to fail to ensure that appropriate procedural safeguards are put in place as required by 20 U.S.C. § 1415, including a fair and impartial due process hearing before a qualified and impartial hearing officer, as required by federal law and regulations."  *See* FAC ¶ 341.  Plaintiffs explain that the VDOE Defendants' violations injure them by, for example, "depri[ving] children and their families of the protections afforded by the IDEA," FAC ¶ 196, including "viable avenues of relief through adequate due process hearings," *id.* at ¶ 280, and depriving children of the free full, initial evaluation required under 20 U.S.C. § 1414(a), *see id.* at ¶ 225.  As further examples, D.C.'s and M.B.'s parents have plausibly alleged that Defendants' actions have compelled them to pay, *and continue to pay*, for a significant portion of the services to which their children are entitled under the IDEA.  *See* FAC ¶¶ 293–94 (noting that, due to Defendants' refusal to properly implement or enforce the requirements of the IDEA, M.B. is now at the private Phillips School, where his education "is neither free, nor public"); ¶¶ 260–69 (describing how FCSB's unilateral decision to modify D.C.'s placement from residential to day school, combined with VDOE's failure to properly implement and oversee the protections of Virginia's IDEA system, have forced D.C.'s parents to pay for D.C.'s residential expenses since August 2021).

8

To challenge Plaintiffs' standing to seek prospective relief, the VDOE Defendants[1] assert that M.B. and D.C. (1) cannot seek prospective relief unless they "allege a sufficient likelihood that [they] will again be wronged in a similar way," and (2) have not alleged "future injury traceable to the VDOE Defendants."  VDOE Motion at 7.  They are wrong on both scores.

First, Plaintiffs do not need to plead imminent injury where, as here, they have alleged that they suffer an actual, *ongoing* injury.  *See  Deal v. Mercer Cnty. Bd. of Educ.,* 911 F.3d 183, 188–89 (4th Cir. 2018) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).  *Deal* is instructive.  There, a family sought relief for ongoing injuries caused by violations of the Establishment Clause of the First Amendment based on a West Virginia county school board's weekly in-school bible lessons for elementary and middle school students.  *See id.* at 186.  On appeal, the county school board contended that these injuries were not sufficiently imminent to permit injunctive relief.  *See id.* at 188.  The Fourth Circuit rejected this argument, holding:  "This framing of the issue fundamentally misapprehends appellants' claims.  Appellants seek relief not just for past injuries or from some speculative future injury, which would implicate the imminence requirement.  Rather, appellants also claim to suffer from two actual, ongoing injuries: (1) near-daily avoidance of contact with an alleged state-sponsored religious exercise, and (2) enduring feelings of marginalization and exclusion resulting therefrom."  *Id.*  The court went on to note that "to the extent that the County asks us to import the imminence requirement into cases involving ongoing injuries, its argument makes little sense."  *Id.*

---

[1] The FCSB Defendants appropriately do not contend that Plaintiffs' injuries are insufficient to seek prospective relief.

9

Like the family in *Deal*, Plaintiffs need not allege that their ongoing injury is imminent to seek prospective relief.  Rather, Plaintiffs are being injured *now*, and may properly seek prospective relief to bring that injury to an end.

Moreover, even if Plaintiffs were required to allege that their injuries are sufficiently likely to recur, they have done so.  They allege that Defendants' systemic violations of the IDEA are long-standing and continuous, as discussed throughout the FAC.  *See, e.g.,* FAC ¶¶ 81–104, 142–86, 232, 282–86.  As an example of these widespread and recurring violations, Plaintiffs describe how VDOE has maintained a sham due process hearing system composed of biased hearing officers for at least the past twenty years.  *See, e.g.,* FAC ¶¶ 89–90, 81–104, 142–86.  Plaintiffs allege that they have been victimized by this due process hearing system and suffered injury as a result.  *See* FAC ¶¶ 105–41 (describing D.C. and M.B.'s due process hearings).  When, in 2021, D.C. most recently attempted to avail himself of this system, he was again injured by being deprived a fair, impartial hearing officer as required under federal law.  *See id.* at ¶¶ 123–25; 318.

Confronted with similar state-wide violations of the IDEA, other courts have concluded that plaintiffs have standing to seek prospective relief against state defendants like VDOE.  *See, e.g. J.N. v. Oregon Dep't of Educ.*, 338 F.R.D. 256, 273 (D. Or. 2021) (holding on class certification that "because plaintiff demonstrated that statewide policies and practices create common risk of IDEA, ADA, and Section 504 violations, they have shown that *all* class members, including the named plaintiffs, have standing to seek injunctive relief against the state based on a significant risk of future FAPE denials").  Plaintiffs respectfully request that this Court do the same.

### B.      HOV Has Both Direct and Associational Standing

Plaintiff HOV also has standing for each claim brought in this case.  HOV's standing is properly evaluated as of January 20, 2023 — the date on which the FAC was filed.  *See Rockwell*

*Int'l Corp. v. United States*, 549 U.S. 457, 473–74 (2007) ("when a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction.").  The FAC plausibly alleges that as of that date, HOV has both direct standing, because HOV plausibly alleges that it suffered a redressable injury in fact that is traceable to Defendants' actions, and associational standing, because HOV satisfies the requirements of *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

> 1.  *HOV Has Direct Standing Because The Amended Complaint Properly Alleges That HOV Suffered a Redressable Injury in Fact That Is Traceable to Defendants' Actions and Inactions*

Plaintiff HOV has established direct standing by plausibly alleging that it has suffered a redressable injury in fact that is traceable to Defendants' actions and inactions.  An association, like HOV, can bring suit for injuries to itself when it "independently satisfies the elements of Article III standing" for each claim and type of relief.  *Md. Shall Issue, Inc. v. Hogan*, 963 F.3d 356, 361 (4th Cir. 2020).  This means that the association must have suffered (1) an injury in fact that is (2) fairly traceable to the defendants' actions, and that will (3) likely be redressed by a favorable decision.  *See Lujan*, 504 U.S. at 560.

HOV has suffered an injury in fact because Defendants' actions led to an involuntary diversion of its resources and those actions perceptibly impaired and frustrated HOV's ability to carry out its mission.  *See* FAC ¶ 40; *see also Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982).  Defendants' unlawful practices have forced HOV to divert resources away from its national legislative efforts, planned meetings with officials and constituents, efforts to promote the establishment of law school disability rights clinics, and efforts to create and improve resources for parents of disabled children, and towards uncovering and addressing the more immediate and insidious issues in Virginia.  *See* FAC ¶¶ 41–44; *see also Kravitz v. U.S. Dep't of Com.*, 366 F.

Supp. 3d 681, 733 (D. Md. 2019); *Lee v. Va. State Bd. of Elections*, 188 F. Supp. 3d 577, 584–85 (E.D. Va. 2016).

Unlike the organization in *Lane v. Holder*, *see* VDOE's Motion at 8, HOV's diversion of resources was not a self-inflicted "budgetary choice[]." *Lane v. Holder*, 703 F.3d 668, 675 (4th Cir. 2012).[2] Rather, to prevent Defendants from further impairing HOV's mission to protect the rights of special needs students and their families, HOV has no choice but to invest significant time and money into investigating Defendants, hiring counsel to pursue Freedom of Information Act ("FOIA") requests, reaching out to and speaking with regulatory agencies, spreading media awareness, and otherwise counteracting Defendants' conduct. *See* FAC ¶ 44; *see also Defs. of Wildlife v. Boyles,* 608 F. Supp. 3d 336, 343 (D.S.C. 2022) ("Because Defendants [sic] alleged conduct has perceptibly impaired Plaintiffs' ability to carry out their missions and because Plaintiffs used resources to counteract that impairment, Plaintiffs have met the injury standard set out in *Havens Realty*.")

HOV's injury is fairly traceable to Defendants' actions, as HOV would not be forced to divert resources from other projects to address wrongdoing in Virginia but for Defendants' actions and inactions. FAC ¶ 44. Courts in the Fourth Circuit have held that similar allegations of noncompliance leading to an organization's diversion of resources and a frustration of its mission were "sufficient to show an actual or threatened injury in fact that is fairly traceable to the alleged

---

[2] Defendant VDOE's reference to *Know Your IX v. DeVos* is similarly inapposite. *See* VDOE Motion at 10–11 (citing *Know Your IX v. DeVos*, Civ. A. No. RDB-20-01224, 2020 U.S. Dist. LEXIS 194288, at *17 (D. Md. Oct. 20, 2020)). The plaintiff organization in *Know Your IX* was challenging the promulgation of a rule, claiming that the rule would injure its ability to engage in policy advocacy. *Know Your IX*, 2020 U.S. Dist. LEXIS 194288, at **17–19. The court noted that this situation was different from a "diversion of resources away from the organization's primary mission in order to address an allegedly improper action," *id.* at *18, as is the case here.

illegal action and is likely redressed by a favorable court decision ordering injunctive relief." *Nat'l Coal. For Students with Disabilities Educ. & Legal Fund v. Scales*, 150 F. Supp. 2d 845, 850 (D. Md. 2001).

To redress its injury in fact resulting from Defendants' actions, HOV seeks injunctive and declaratory relief to stop Defendants' unlawful practices and noncompliance, which will allow HOV to return its focus to legislative and advocacy activities. *See* FAC ¶¶ 44, 354–66; *see also Charleston Waterkeeper v. Frontier Logistics*, 488 F. Supp. 3d 240, 254 (D. S.C. 2020) ("In short, plaintiffs have alleged ongoing pollution and now request an injunction to stop that pollution. Such allegations are more than sufficient to demonstrate redressability."). This is more than enough to demonstrate redressability as "no explicit guarantee of redress to a plaintiff is required" at the pleading stage. *Equity in Athletics v. Dep't of Educ.*, 639 F.3d 91, 100 (4th Cir. 2011).

Because HOV has plausibly alleged that it has suffered injury in fact directly traceable to Defendants' actions and redressable by a favorable decision, HOV has established direct standing to bring this lawsuit for injunctive and declaratory relief on its own behalf.

> 2. *HOV Has Associational Standing to Sue on Behalf of Its Members Because the Amended Complaint Plausibly Alleges That It Satisfies Each Prong of the Hunt Test*

HOV has also independently demonstrated associational standing to sue on behalf of its members for each claim it brings. It has such standing because (1) at least one identified HOV member would otherwise have Article III standing to sue in its own right, (2) the interests at stake are germane to HOV's purpose, and (3) neither the claims asserted nor the relief requested requires participation of individual members of HOV in the lawsuit. *See Hunt*, 432 U.S. at 343.

First, HOV has pled that at least some of its members would otherwise have Article III standing to sue in their own right to pursue each claim. *See supra* at Section IV.A; FAC ¶ 46.

Four such members are D.C.'s parents, Trevor and Vivian Chaplick, and M.B.'s parents, Sheila and James Bingham, who were members of HOV at the time the FAC was filed.  *See* FAC ¶ 38.

Second, the interests at stake for D.C. and M.B., as well as Mr. and Mrs. Chaplick and Mr. and Mrs. Bingham, are germane to HOV's purpose.  *See* FAC ¶¶ 17, 47.  HOV is "an association with a demonstrable interest in, or commitment to" the issues at stake in this litigation — disabled children's right to not be left behind. *Taubman Realty Grp. Ltd. v. Mineta*, 198 F. Supp. 2d 744, 758 (E.D. Va. 2002).  HOV was established to "achiev[e] a better education and life for disabled and special needs children and their families," "protect . . . the rights of children with special needs and disabilities, including under the federal civil rights laws and [the IDEA]," and to "end the systemic mistreatment in schools of disabled and special needs children." FAC ¶ 47.  This lawsuit challenging Defendants' treatment of special needs children and their families is plainly germane to HOV's purpose.  *See Equity in Athletics*, 639 F.3d at 99.

Finally, this lawsuit does not require participation of the individual members of HOV.  *See* FAC ¶ 48.  Individual participation is not normally necessary when an organization seeks prospective or injunctive relief for its members.  *See United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.,* 517 U.S. 544, 546 (1996); *see also Equity in Athletics, Inc.*, 639 F.3d at 99; *Council of Parent Att'ys & Advocs., Inc. v. DeVos*, 365 F. Supp. 3d 28, 46 (D.D.C. 2019) (holding that in a lawsuit related to IDEA regulation, disability-rights organization's "members d[id] not have to participate . . . for th[e] court to issue injunctive and declaratory relief").  Contrary to Defendants' contentions, this is not a case where adjudication turns on "facts specific to each student," nor where the requested relief that HOV asserts on behalf of its members involves monetary damages.  *Cf. Hanover Cnty. Unit of the Nat'l Ass'n of Colored People v. Hanover County*, 461 F. Supp. 3d 280, 290 (E.D. Va. 2020).  Rather, HOV seeks to remedy systemic issues

through prospective relief aimed at ensuring Defendants comply with—and monitor their compliance with—federal laws in the future.  *See* FAC ¶¶ 354–66.  Additionally, there is no conflict between members of the organization's interests such that individual participation would be necessary.  *See Retail Indus. Leaders Ass'n v. Fielder*, 475 F.3d 180, 187–88 (4th Cir. 2007).  HOV members "uniformly endorse[] the present litigation" as it goes directly to HOV's mission, *Fielder*, 475 F.3d at 188, and there is no concern that members must participate in the lawsuit "individually in order to protect their own interests," *Maryland Highways Contractors Ass'n, Inc. v. State of Md.*, 933 F.2d 1246, 1252 (4th Cir. 1991).

HOV thus satisfies each prong of the test for associational standing and can bring its pleaded claims for both declaratory and injunctive relief on behalf of its members.

V.   THE ADMINISTRATIVE EXHAUSTION REQUIREMENT OF THE IDEA DOES NOT BAR ANY OF PLAINTIFFS' CLAIMS

Plaintiffs' claims are not subject to dismissal for failure to exhaust administrative remedies for several reasons.  First, there is no mechanism by Plaintiffs could seek an administrative remedy against VDOE.  Second, Plaintiffs have alleged systemic violations of the IDEA that cannot be properly addressed through a due process hearing.  *See, e.g., Pullen v. Botetourt Cnty. Sch. Bd.*, No. CIV. 94-686-R, 1995 WL 738983, at *2 (W.D. Va. Feb. 13, 1995).  No individual hearing officer would have the legal authority to review system-wide violations of the IDEA — let alone compel both FCSB *and VDOE* to comply with federal law.  Third, D.C. and his parents were not required to exhaust their administrative remedies because doing so would have been "futile."  *MM ex rel. DM v. Sch. Dist. of Greenville Cnty.,* 303 F.3d 523, 536 (4th Cir. 2002); *Z.G. v. Pamlico Cty. Pub. Sch. Bd. of Educ.*, 744 Fed. App'x. 769, 777 (4th Cir. 2018).  As Plaintiffs have alleged, the hearing officer system in Virginia is so biased that it is impossible for D.C. and his parents to receive the impartial due process hearing required by the IDEA.  Fourth and finally, even if

15

exhaustion were required, Plaintiffs have vicariously exhausted their class claims because M.B. and his parents exhausted available administrative remedies.

### A.  Plaintiffs Had No Administrative Remedy Against VDOE

The administrative procedures implemented pursuant to the IDEA are designed solely to address disputes between individual students and LEAs with respect to IEPs, not state-wide issues that implicate the practices and policies of a state agency like VDOE.  *See* 20 U.S.C. §1415(i); *M.A. v. State Operated Sch. Dist. of Newark*, 344 F.3d 335, 343 (3d Cir. 2003) (allegations of "a widespread systemic breakdown of the provision of free, appropriate public education, ... could not be addressed sufficiently in administrative proceedings"); *Mrs. W. v. Tirozzi*, 832 F.2d 748, 756-57 (2d Cir. 1987).

Courts accordingly have held that "where the state agency is also a defendant and its practices are expressly at issue, there is even more reason to find that state administrative exhaustion would be futile."  *W.H. by & through M.H. D.R. v. Tennessee Dep't of Educ.*, No. 3:15-1014, 2016 WL 236996, at *6 (M.D. Tenn. Jan. 20, 2016); *accord D.M. v. New Jersey Dep't of Educ.*, 801 F.3d 205, 212 (3d Cir. 2015).

VDOE does not administer the evaluations, develop the IEPs, or evaluate students' progress—the subject of due process hearings.  Instead, VDOE is responsible for administering the entire Virginia special education system.  Plaintiffs have had no prior opportunity to challenge VDOE's decisions in a due process proceeding, because VDOE is not making the type of decisions that can be challenged in a due process proceeding.  Accordingly, the exhaustion requirement of the IDEA is simply not applicable to Plaintiffs' claims against the VDOE Defendants.

**B.     Plaintiffs Were Not Required to Exhaust Administrative Remedies Because They Have Brought a Systemic Challenge to Defendants' Violations**

Courts in the Fourth Circuit and elsewhere have recognized that "[r]ecourse to administrative procedures will generally be futile when the plaintiff alleges structural or systemic failure of an IDEA program and seeks systemwide reforms." *Pullen*, 1995 WL 738983, at *2; *see also Honig v. Doe*, 484 U.S. 305, 326–27 (1988) (noting that exhaustion requirements are excused where administrative process is futile or inadequate); *Beth V. by Yvonne V. v. Carroll*, 87 F.3d 80, 89 (3d Cir. 1996) (hold that exhaustion requirements may be excused where plaintiffs allege "systemic legal deficiencies and, correspondingly, request system-wide relief that cannot be provided (or even addressed) through the administrative process").

A systemic IDEA claim is one that "implicates the integrity or reliability of the IDEA dispute resolution procedures, or requires restructuring the education system itself in order to comply with the Act. . . ." *Doe v. Arizona Dep't of Educ.,* 111 F.3d 678, 682 (9th Cir. 1997). Examples of systemic IDEA violations include "alleged failure to notify parents of meetings as required by law . . . failure to provide appropriate training to school staff . . . failure to provide parents with required procedural safeguards regarding identification, evaluation, and accommodation of otherwise disabled children . . . and failure to perform legally required responsibilities in a timely manner, including providing and implementing transition plans, transitional support services, assistive technology services, and declassification services for children with disabilities." *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 115 (2d Cir. 2004).

Plaintiffs have alleged similar systemic violations of the IDEA.  FCSB and VDOE have failed to consistently provide parents with student records as required by law, *see* FAC ¶¶ 235–45, and have engaged in a practice of providing improper training for school staff and actively encouraged and incentivized bias against disabled students on the part of school staff, *see* FAC ¶¶

141–42, 171, 196, 218–19, 270–73.  Additionally, Plaintiffs allege that FCSB and VDOE have "fail[ed] to provide parents with required procedural safeguards" in many ways, *see J.S. ex rel N.S.*, 386 F.3d at 115: by creating a sham system of due process hearings with predetermined results, FAC ¶¶ 85–92, 143–77, delaying and manipulating student evaluations, FAC ¶¶ 195–228, and failing to properly implement and oversee student IEPs, FAC ¶¶ 246–50, 270–79, 282–86. Plaintiffs further allege that VDOE enables and encourages its hearing officers to rely on false testimony from schools, exclude parents' expert witness testimony, and engage in *ex parte* communications with FCSB, other LEAs, or VDOE representatives.  FAC ¶¶ 148–66. Though VDOE is responsible for selecting and monitoring hearing officers to protect the due process rights of disabled students and parents, Plaintiffs allege that VDOE instead incentivizes and rewards biased hearing officers.  FAC ¶¶ 157–77.  The U.S. Department of Education has previously found the VDOE in violation of multiple provisions of the IDEA, but VDOE has failed, if not refused, to appropriately address these violations. *See* FAC at ¶¶ 143–47.

Under these circumstances, pursuing relief through due process hearings would not further the purposes of exhaustion.  The exhaustion requirement is intended to give local educators and administrators an opportunity to use their expertise to resolve local issues regarding educational placement and services.  *See J.S. ex rel. N.S.*, 386 F.3d at 114.  However, where, as here, the key issues in a suit are not the placement or services afforded to an individual, but rather the system under which children do or do not receive the services required under the IDEA, local expertise plays no role and exhaustion does not serve this intended purpose.  *See id.* at 114–15.  Quite the contrary.  Requiring Plaintiffs to pursue a statewide challenge through administrative remedies "would only serve to insulate the state procedures from review—an outcome that would undermine

the system Congress selected for the protection of the rights of children with disabilities." *Heldman on Behalf of T.H. v. Sobel*, 962 F.2d 148, 158–59 (2d Cir. 1992) .

Defendants' assertion that "the unavailability of the relief sought does not render the administrative process futile" misses the point. *See* VDOE Motion at 18; FCSB Motion at 7 (citing *Z.G.*, 744 F. App'x 769). In *Z.G.*, the plaintiff did not allege a "widespread policy or custom" of wrongdoing, 744 F. App'x at 781, and the ALJ assigned to the case did in fact have the power to grant relief to the plaintiff, *id.* at 777–78. By contrast, Plaintiffs allege system-wide violations of the IDEA that require relief that is not merely unavailable to Plaintiffs as individuals, but is entirely beyond the capabilities of the available administrative remedies. Cases cited by Defendants purporting to demonstrate that exhaustion of administrative remedies is required regardless of the relief sought involved plaintiffs seeking *damages*, not class-wide injunctive relief or systemic reform. *See McMillen v. New Caney Indep. Sch. Dist.*, 939 F.3d 640, 648 (5th Cir. 2019) ("[T]he IDEA's exhaustion requirement applies to plaintiffs who seek *damages* for the denial of a free appropriate public education.") (emphasis added). These cases are inapposite; Plaintiffs do not seek money damages, but rather systemic reform that is entirely unavailable from the state administrative process. *See* FAC ¶¶ 187–91, 353–66. Therefore, exhaustion of administrative remedies is not required in this case.

### C.    Plaintiffs Were Not Required to Exhaust Administrative Remedies Because Systemic Bias Renders The Administrative Process Futile

In addition, Plaintiffs are not required to pursue relief through due process hearings because bias against D.C. and similarly-situated children renders such hearings futile. The concept of futility through bias "is consistent with the procedural safeguards of the IDEA, which guarantee that parents and school officials be given an *impartial* due process hearing." *K.I. v. Durham Public School Board of Education*, No. 1:19CV857, 2020 WL 3512213, at *6 (M.D.N.C. June 29, 2020)

(emphasis in original). Futility is established when an adverse ruling to the plaintiffs is effectively a certainty. *See R.S. v. Bedford Cent. Sch. Dist.*, 899 F. Supp. 2d 285, 290 (S.D.N.Y. 2012) ("To take advantage of the futility exception, the Plaintiffs would need to show that the SRO is so biased against them that they could not have prevailed had they presented their appeal directly to him"). Such a certainty exists in this case.

As noted above, Plaintiffs allege that VDOE has established a system comprised of biased due process hearing officers who nearly all rule uniformly in favor of LEAs and against families seeking relief. *See supra* at pp. 5–6. In addition to the statistics which starkly illustrate that Virginia's due process hearing system is insurmountably biased against disabled children and their families, *see* FAC Exhibits A–C, E, Plaintiffs also describe how this bias impacts specific due process hearings. Plaintiffs allege that the hearing officer assigned to D.C., though required by statute to be impartial, has demonstrated a decades-long pattern of bias against the families of disabled and special needs students seeking relief. *See* FAC ¶ 126. This decades-long record demonstrates that, as a result of the clear bias of the hearing officer, the result of any administrative hearing before Ms. Brooke-Devlin is preordained, adverse to the family of a disabled/special needs student, and futile. FAC ¶¶ 109–31. Indeed, she has *never* ruled in favor of a disabled child in more than two decades. *See id.* at ¶14. Plaintiffs further allege that Ms. Brooke-Devlin displayed this insurmountable bias in 2021 when she inexplicably denied D.C.'s recusal motion and repeatedly displayed hostility toward D.C. and his counsel. FAC ¶¶ 124–31.

Defendants FCSB and Superintendent Reid (the "FCSB Defendants) attempt to counter Plaintiffs' detailed allegations of systemic hearing officer bias by pointing out that "hearing officers are presumed to be free from bias." FCSB Motion at 6. However, Defendants omit that this presumption can be rebutted, such as by a showing of conflict of interests. *See, e.g.,*

*Schweiker v. McClure*, 456 U.S. 188, 195 (1982).  Plaintiffs have plausibly alleged such conflicts of interest that have created systemic bias throughout Defendants' system of due process hearings.  *See, e.g.*, FAC ¶¶ 156–77.[3]

Defendant VDOE takes a similarly erroneous approach.  Rather than addressing Plaintiffs' allegations, which must be taken as true, it merely labels them as "rank speculation," and "flawed statistics."  VDOE Motion at 18.  Defendants' mischaracterization of Plaintiffs' allegations is unavailing.  At the motion to dismiss stage, Plaintiffs' allegations must be taken as true and not, as Defendants suggest, held to post-discovery evidentiary standards.

It is futile to ask biased due process hearing officers to fix a system composed of biased due process hearing officers.  And, under such circumstances, exhaustion serves no purpose at all.  There can be no application of expertise to local educational issues where the resolution of those issues is predetermined in favor of the local education agencies.  Faced with such bias, exhaustion of administrative remedies would be futile.

> **D.    Plaintiffs' Class Claims Were Vicariously Exhausted Through M.B.'s and His Parents' Exhaustion of Their Individual Claims**

Even if the IDEA's exhaustion requirement was not excused as futile, under the doctrine of vicarious exhaustion, only one named plaintiff needs to exhaust his or her administrative remedy in order to bring a class action.  *See Albemarle Paper Co. v. Moody*, 422 U.S. 405, 414 n.8 (1975) (finding that relief "may be awarded on a class basis under Title VII without exhaustion of administrative procedures by the unnamed class members"); *see also Lewis v. City of Chicago*,

---

[3] Defendants' citations to decisions at summary judgment, FCSB Motion at 6 (citing *Antonia C. v. Kijakazi*, No. 3:20-CV-00987 (MHL), 2022 WL 3753962 at *7 (E.D. Va. May 9, 2022)*, and those involving the recusal of Article III judges, FCSB Motion at 6, 7 (citing *Liteky v. U.S.*, 510 U.S. 540 (1994); *In re Int'l Bus. Machs.*, 618 F.2d 923 (2d Cir. 1980)), are similarly inapposite.

560 U.S. 205, 211 n.4 (2010) (same).  This "judge-made exception to the requirement of administrative exhaustion" has long applied to class actions in the Fourth Circuit.  *King v. McMillan*, 233 F. App'x 242, 244 (4th Cir. 2007); *see also White v. BFI Waste Serv.*, *LLC*, 375 F.3d 288, 293 (4th Cir. 2004) (same)).  In the context of disabilities claims, a named plaintiff will vicariously exhaust claims on behalf of a class where plaintiffs and the plaintiff class complained about substantially similar failures to accommodate.  *See Jarboe v. Md. Dep't of Pub. Safety & Corr. Servs.*, Civ. A. No. ELH-12-572, 2013 WL 1010357, at *15 (D. Md. Mar. 13, 2013).

Here, M.B. has exhausted his administrative remedies and appealed Defendants' erroneous decision in his case to a federal district court.  *See* FAC ¶¶ 35–37.  Acting within the narrow limitations of his due process complaint, and the hopelessly futile due process hearing, M.B. asserted violations of his rights under the IDEA.  Despite M.B.'s complaint and the subsequent appeal, Defendants have not only failed to investigate or resolve those issues for other children across the Commonwealth; they continue to deny that those problems even exist.  Accordingly, to the extent that any exhaustion is required, M.B.'s exhaustion of administrative remedies serves to vicariously satisfy that requirement for the class.

VI.   DEFENDANTS' MOTION TO STRIKE PLAINTIFFS' CLASS CLAIMS IS UNFOUNDED AND PREMATURE

Plaintiffs' class claims are not subject to dismissal.  "Courts should only grant a motion to strike class allegations before discovery if the allegations are facially and inherently deficient. However, if the dispute concerning class certification is factual in nature and discovery is needed to determine whether a class should be certified, a motion to strike the class allegations at the pleading stage is premature." *Bryant v. Kings Creek Plantation, L.L.C.*, No. 4:20-CV-00061, 2020 WL 6876292, at *2 (E.D. Va. June 22, 2020) (internal quotations omitted).  Indeed, the Fourth Circuit has long recognized that "[i]t is seldom, if ever, possible to resolve class representation

questions from the pleadings." *Int'l Woodworkers of Am., AFL-CIO, CLC v. Chesapeake Bay Plywood Corp.*, 659 F.2d 1259, 1268 (4th Cir. 1981).

Defendants' assertion that Plaintiffs' claims could not possibly establish the requirements of Fed. R. Civ. Pro. 23 after the Supreme Court's decision in *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338 (2011), is incorrect. To the contrary, numerous courts in the Fourth Circuit and elsewhere have certified similar IDEA classes in recent years. *See, e.g., G.T. by Michelle v. Bd. of Educ. of Cnty. of Kanawha*, No. 2:20-CV-00057, 2021 WL 3744607, at \*\*12–14 (S.D.W. Va. Aug. 24, 2021) (*G.T.*) (injunctive relief class of students alleging that LEA violated the IDEA, ADA, and Section 504 by subjecting them to unnecessary discipline due to lack of adequate behavior supports satisfied commonality); *R. A-G ex rel. R.B. v. Buffalo City Sch. Dist. Bd. of Educ.*, No. 12-CV-960S, 2013 WL 3354424, at \*10 (W.D.N.Y. July 3, 2013) ("a finding of commonality here would not, as Defendants argue, run afoul of the Supreme Court's ruling in *Wal–Mart"*); *Chester Upland Sch. Dist. v. Pennsylvania*, No. CIV.A. 12-132, 2012 WL 1473969, at \*4 (E.D. Pa. Apr. 25, 2012).

For example, in *G.T.*, the plaintiffs alleged that the defendant LEA "d[id] not have an effective system for developing and implementing behavioral supports for students with disabilities whose behavior interferes with their learning or that of others." *G.T.*, 2021 WL 3744607, at \*14. The Court rejected the LEA's contention that it should examine these allegations by "focusing on the application of that system to each student as required under the IDEA." *Id.* at \*12. Instead, the Court held:

> Each student will need a different set of supports, but this case is not about the behavioral supports that should be provided to the individual students within the proposed class. It is about the procedures that [the LEA] uses, or does not use, to develop and implement those supports. Injunctive relief related to district-wide policies, procedures, and resources would resolve the claims for the class as a whole. Therefore, the Court finds that the Plaintiffs have adequately demonstrated commonality.

*Id.* at *14.  *See also Chester Upland Sch. Dist.*, 2012 WL 1473969, at *4.

Plaintiffs similarly allege that Defendants have engaged in uniform patterns and practices that deprive children with disabilities of their rights on a class-wide level.  The existence and legality of these practices will be the central issue in this case — one that is well-suited to class treatment under Fed. R. Civ. Pro. 23(b)(2).  Moreover, Plaintiffs specifically highlight no fewer than nine questions of law and fact that are common to the VDOE class, *see* FAC ¶65, and ten questions of law and fact that are common to the FCSB class, *see id.*  ¶66.  These questions are all subject to common proof, and amply satisfy the commonality requirement of Fed. R. Civ. Pro. 23.

VDOE Defendants' argument that the proposed classes are fundamentally unascertainable fares no better.  Ascertainability requires that there be a "readily identifiable" set of putative class members.  *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014).  Plaintiffs' classes are defined in such objective terms.  Whether or not a child is "eligible for IDEA services" or is "disabled" can be objectively determined based solely on that child's educational records and without resort to individualized inquiries.  *See* FAC ¶¶ 59–60.  These classes are further limited by objective criteria that VDOE omits.  The VDOE Class, for example, is composed only of students and parents "who have sought dispute resolution services from VDOE under the IDEA." *See id.* at ¶59.  A child has either sought such services, or it has not.  Similarly, the FCSB class is limited to children "who have requested or received an evaluation for special education and related services under the IDEA, and their parents." *See id.* at ¶60.  These too are objective bounds which clearly define who is, and is not, within the class.  Accordingly, Courts have readily determined that IDEA classes defined in similar ways are ascertainable.[4]  *See, e.g., G.T.,* 2021 WL 3744607

---

[4] VDOE Defendants suggest in a footnote that Plaintiffs' definitions would also create "fail-safe classes."  *See* VDOE Motion at 25 n. 9.  Not so.  The classes are objectively defined by children's status and relationship to Defendants, not by their entitlement to relief in this case.

at \*11 (certifying IDEA class defined, in part, as "students with disabilities who need behavior supports."). Moreover, class definitions are routinely revised at class certification, which highlights why VDOE's ascertainability argument is premature. *See, e.g., Henderson v. Corelogic Nat'l Background Data, LLC,* No. 3:12CV97, 2016 WL 4611571, at \*4 (E.D. Va. Sept. 2, 2016).

VDOE Defendants' further contention that class certification should be precluded on exhaustion grounds is also without merit. *Cf.* VDOE Motion at 25. As explained *supra* at Section V, exhaustion is not necessary due to the systemic nature of Plaintiffs' claims and the state-wide futility of pursuing relief through insurmountably biased due process hearings. These allegations distinguish this case from *Parent/Pro. Advoc. League v. City of Springfield, Massachusetts*, 934 F.3d 13 (1st Cir. 2019), on which the VDOE Defendants rely, where the court held that the plaintiffs failed to allege systemic violations or futility. *See id.* at 27. Moreover, unlike in *Parent/Pro Advoc. League*, the violations in this case are common to the class such that exhaustion by M.B. is sufficient to vicariously exhaust the claims of other class members. *Contra id.* at 31–32.

In any event, Defendants' class certification arguments are a premature diversion. Whether Plaintiffs will ultimately establish the requirements of Rule 23 should be addressed on a proper record and at the proper time – after discovery on a motion for class certification.

VII.    NO CLAIMS ARE WAIVED OR COLLATERALLY ESTOPPED

VDOE Defendants' arguments that various claims are waived or are collaterally estopped are improper and baseless.

Neither of these arguments is properly presented or decided on a motion to dismiss. Waiver and estoppel are affirmative defenses. *See, e.g.,* Fed. R. Civ. P. 8(c)(1). "[A] motion to dismiss pursuant to Rule 12(b)(6), based solely on an affirmative defense, may be considered only if all facts necessary to the affirmative defense 'clearly appear[ ] on the face of the complaint.'" *Crump*

*v. Tcoombs & Assocs., LLC*, No. 2:13CV707, 2014 WL 4748520, at \*4 (E.D. Va. Sept. 23, 2014) (quoting *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007)). VDOE's arguments are highly factual in nature. VDOE claims that "Plaintiffs never made these [due process] arguments in their due process hearings or in M.B.'s related federal court litigation", and that "D.C. and his parents' Section 1983 claims are virtually the same as the IDEA claims they raised in their prior due process hearings"). VDOE Motion at 19–20. However, the scope and details of those hearings is not evident from the face of the FAC, nor are the related administrative records before the Court. Accordingly, VDOE cannot rely on unsupported assertions about D.C.'s and M.B.'s prior hearings to seek dismissal of Plaintiffs' claims.

VDOE's waiver and estoppel arguments are also facially and fatally flawed. Rather than provide a basis for dismissal of the FAC, each argument serves to reinforce why Plaintiffs have turned to the Court for relief.

M.B. could not have waived the claims he presents in this case. "[W]aiver is the voluntary and intentional relinquishment of a *known* right." *Doe v. Kidd*, 501 F.3d 348, 354 (4th Cir. 2007) (internal quotation omitted) (emphasis added). Many of the facts underlying M.B.'s claims for systemic violations of the IDEA and his rights under the Fourteenth Amendment were not known by M.B. before September 21, 2022, the date when D.C.'s family publicly exposed the rampant bias in VDOE's due process hearing system. *See* ECF No. 1. M.B. could not have voluntarily and intentionally waived claims that are based, in part, on systemic bias that previously was not known to the public. Nor could M.B. voluntarily or intentionally relinquish claims in a due process hearing when his claims arise, in part, from what happened during that hearing. *See* FAC ¶¶ 132–40; *see also M.C. by & through M.N. v. Antelope Valley Union High Sch. Dist.*, 858 F.3d 1189, 1196 (9th Cir. 2017) (finding no waiver where "plaintiffs weren't aware that the District had

unilaterally changed the IEP until after the ALJ had restated the issues, so they could hardly have raised that as a procedural violation.").  And, as explained *supra* at section VI, it would have been futile for M.B. to raise his systemic violation claims in a fatally flawed VDOE due process hearing. Even if M.B.'s claims had fully accrued (they had not) and he was aware of all the facts underlying them at the time of his due process hearing (he was not), M.B. still could not have pursued his claims in that hearing.

Similarly, D.C. cannot be collaterally estopped from pursuing his claims in this case by his due process hearing in 2015, because D.C. and his parents are not basing their claims on anything that occurred prior to December 19, 2016.  FAC ¶ 114, n. 27.  As VDOE itself acknowledges, there can be no collateral estoppel unless, among other requirements, "the issue sought to be precluded is identical to one previously litigated" and "the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the previous forum."  *Westmoreland Coal Co. v. Sharpe ex rel. Sharpe*, 692 F.3d 317, 331 (4th Cir. 2012).  How could D.C.'s claims in this case, which are limited to events that occurred after December 2016, be "identical" to those adjudicated in a hearing that occurred before 2016?  Collateral estoppel is plainly inapplicable.

VDOE's waiver and collateral estoppel arguments only serve to highlight the catch-22 into which they seek to put the Plaintiffs.  First, they set up a biased due process hearing system where Plaintiffs cannot obtain relief.  Now, they suggest that Plaintiffs cannot seek relief regardless of how they attempted to pursue their rights in light of that biased system.  If Plaintiffs strove but inevitably failed to obtain relief through a due process hearing, Defendants claim they are collaterally estopped.  But if Plaintiffs appropriately opted not to participate in VDOE's sham, their claims should be waived.  The predetermined and inequitable outcomes that Defendants seek

to impose on disabled children across the Commonwealth are part and parcel of why Plaintiffs

have brought this case.

VIII.   THE DUPLICATIVE LITIGATION DOCTRINE DOES NOT BAR M.B.'s CLAIMS

M.B.'s claims are not subject to dismissal under the duplicative litigation doctrine.  As

explained by the Fourth Circuit in an unpublished opinion:

> [T]he general rule is that a suit is duplicative of another suit if the parties, issues
> and available relief do not significantly differ between the two actions.  Trial courts
> are afforded broad discretion in determining whether to stay or dismiss litigation in
> order to avoid duplicating a proceeding already pending in another federal court.
> However, a court abuses its discretion when it enjoins a party from proceeding in
> another   suit   that   is   not   truly duplicative of   the   suit   before   it.

*Robertson v. Apker*, 700 F. App'x 301, 302 (4th Cir. 2017) (unpublished) (internal quotations

omitted).  This doctrine does not bar any of M.B.'s claims in this suit for at least two reasons.

First, M.B. and his family's claims in this action are not duplicative of those in Case No.

1:22-cv-00930.  Claims are duplicative when "there are no significant differences between the

claims, parties, and available relief in the two suits."  *Krakauer v. Dish Network*, LLC, No. 1:14-

CV-333, 2017 WL 4417957, at *5 (M.D.N.C. Oct. 3, 2017).  Some overlap is not enough to render

claims duplicative—"the law requires substantial similarity."  *Dyer v. Air Methods Corp.*, No.

9:20-CV-2309-DCN, 2020 WL 7398711, at *3 (D.S.C. Dec. 17, 2020).

There is not substantial similarity between this action and M.B.'s far more limited

administrative appeal, *M.B., et al. v. Fairfax County School Board*, Case No. 1:22-cv-00930-TSE-

IDD.  Although FCSB is a party in both actions, this case involves three additional defendants,

two additional named plaintiffs, and two classes who are not parties to M.B.'s other action.  M.B.

brings claims in this action for systemic violations of the IDEA against FCSB and VDOE, and

systemic violations of the Due Process and Equal Protection Clauses of the Fourteenth Amendment

against Superintendents Balow and Reid, which he could not have brought in his administrative

appeal.  And, the relief requested and available in these two actions is fundamentally different.

Here, M.B. seeks statewide and Fairfax County-wide relief on behalf of two classes of children

with disabilities and their parents for violations of federal law.  As discussed, *supra* at Section VI,

M.B. could not have brought such claims or sought such relief in his administrative appeal action.

This is not an action where "the second suit raises issues that should have been brought in the

first;" the duplicative litigation doctrine does not apply to this case.  *Sensormatic Sec. Corp. v.*

*Sensormatic Elecs. Corp.*, 329 F. Supp. 2d 574, 579 (D. Md. 2004).

Second, even if the Court were to determine that this action and Case No. 1:22-cv-00930

are substantially similar – they are not – that determination would not compel this Court to dismiss

M.B.'s claims from this case.  Rather, "a district court *may* dismiss, stay, or transfer a later-filed

lawsuit in deference to the first filed action, although such action is likely discretionary."  *MVP*

*Grp. Int'l, Inc. v. Smith Mountain Indus., Inc.*, No. 2:11-CV-2608, 2012 WL 425010, at *1 (D.S.C.

Feb. 9, 2012) (emphasis added) *(*citing  *Colo. River Water Conservation Distrib. v. United*

*States,* 424 U.S. 800, 817 (1976)).  When exercising this discretion, courts in the Fourth Circuit

weigh a litigant's interest in pursuing their claims against concerns of judicial economy, protecting

defendants from vexatious litigation, and prohibiting plaintiffs from circumventing a court's

earlier adverse ruling. *See Brightview Grp., LP v. Glynn*, No. CV SAG-21-3027, 2022 WL 743937,

at *6 (D. Md. Mar. 11, 2022).  None of those issues are implicated in this case.

Here, the balance of these factors weighs in favor of permitting M.B. to pursue his claims

in this case.  M.B. and the classes he seeks to represent have a substantial interest in remedying

Defendants' ongoing violations of federal law and the recurring injuries that such violations have

inflicted upon them.  These classes are composed of children who suffer irreparable harm for every

day that they are denied an appropriate education.  Weighed against this compelling interest,

neither judicial economy nor FCSB's interests justify combining these actions or dismissing M.B. from this case.  The issues to be litigated in this case do not significantly overlap with those in Case No. 1:22-cv-00930, so neither the judiciary nor FCSB will be excessively burdened by litigating the same case twice.  Nor is this a case where Plaintiffs seek to avoid an adverse decision in the prior-pending action.  Rather, M.B. pursues his and the putative classes' claims in this action to remedy systemic issues that he could not raise in his administrative appeal.  Accordingly, it is well within the discretion of this Court to permit both actions to proceed in parallel.  The parties can easily and efficiently manage any duplication that might arise.

The cases Defendants cite are inapposite.  *Arendi S.A.R.L. v. LG Elecs. Inc.*, 47 F.4th 1380, 1384 (Fed. Cir. 2022), on which FCSB Defendants rely, involved the application of the duplicative litigation doctrine to a patent infringement suit.  The Federal Circuit has devised a patent infringement-specific test for determining whether two suits are duplicative, which turns on a number of factors that have no application here, such as the overlap between the products and patents in suit.  *See id.* at 1385.  And the cases that VDOE cites concern the first-to-file rule, a distinct doctrine that applies when two cases are pending in two different fora – not the same court.  *See* VDOE Motion at 21 (citing, *e.g., Fisher v. Rite Aid Corp.*, Civ. Action No. RDB-09-1909, 2010 U.S. Dist. LEXIS 56383, at *11 (D. Md. June 8, 2010)).

For these reasons, Defendants' effort to dismiss M.B. from this action on the basis of his pending administrative appeal is legally unsupported and should be rejected.

IX.     PLAINTIFFS HAVE STATED CLAIMS FOR VIOLATIONS OF THE IDEA
               AGAINST ALL DEFENDANTS

Plaintiffs have adequately alleged that both VDOE and FCSB have violated, and continue to violate, the IDEA.  An IDEA claim arises when defendants fail to follow substantive provisions of the Act or "'procedural inadequacies compromise the student's right

to an appropriate education, seriously hamper the parents' opportunity to participate in the formulation process, or cause a deprivation of educational benefits.'" *Doe ex rel. Doe v. Hampden-Wilbraham Regional School Dist.*, 715 F. Supp. 2d 185, 192, (D. Mass. 2010) (quoting *Roland M. v. Concord School Committee*, 910 F.2d 983, 994–95 (1st Cir. 1990); *see also L.J. by and through Hudson v. Pittsburg Unified School District*, 850 F.3d 996, 1003 (9th Cir. 2017) (holding that "[a] child is denied a FAPE when procedural inadequacies result in the loss of an educational opportunity, or seriously infringe on the parents' opportunity to participate in the IEP formulation process").

The injustices suffered by D.C., M.B., each of their families, and HOV and its members, during all of their efforts to obtain FAPE are described throughout the FAC. These include systematic violations of the evaluation processes,  the IEP processes, due process hearings, and other procedural safeguards and proceedings, *see, e.g.*, FAC ¶¶ 18–37, 106–40, 251–69, 280–81, 287–94. These allegations demonstrate Defendants' numerous procedural and substantive violations of the IDEA. Contrary to Defendants' arguments, named Plaintiffs' allegations are not individualized, or limited to actions taken against D.C. and M.B., or any other individuals; rather, they expose widespread systemic IDEA violations at both the local and state levels.

### A.   Plaintiffs Have Stated a Claim Against the VDOE Defendants for Violation of the IDEA

As against VDOE, the FAC reports numerous violations of the IDEA. Among other things, it specifically asserts that VDOE: fails to ensure that initial evaluations are properly completed, are not improperly limited and are not delayed, *see* FAC ¶¶202–05, 224–28; fails to ensure IEPs are implemented correctly or otherwise followed, *see* FAC ¶¶179–81, 182–86, 277–79, 293–94; fails to ensure the right to a fair and impartial due process hearing as well as other procedural safeguards are provided, *see* FAC ¶¶11, 249–50, 269, 273, 276–79; fails to investigate complaints,

*see* FAC ¶¶179–81; and fails to ensure that parents are provided access to their children's educational information and that such information is not manipulated, altered, withheld, or concealed, including through unjust and ineffective Virginia FOIA procedures, *see* FAC ¶¶ 46, 83, 150–51, 214–15, 218–21.  The detailed allegations in the FAC that are specific to D.C. and M.B. provide examples of how VDOE's unfair policies and practices play out on a day-to-day basis across the entire state of Virginia.  They are not alone.

Plaintiffs also allege that VDOE has failed to provide parents with required procedural safeguards, such as impartial due process hearings.  "Of all the procedural rights provided by Congress in the IDEA, '[t]he due process hearing is the Act's primary procedural protection.'" *Blackman v. District of Columbia*, 277 F. Supp. 2d 71, 80 (D.D.C. 2003).  Because the procedural safeguards set forth in the IDEA, including the due process hearing, are fundamental to protecting the substantive rights of children with disabilities under the IDEA, failure to provide these safeguards constitutes a denial of FAPE.  *See id.*

As Plaintiffs allege, VDOE has developed a due process hearing system that fails to protect students' rights by: retaining a cadre of biased, unqualified hearing officers, *see* FAC ¶¶142–77; enabling and encouraging its hearing officers to conduct sham due process proceedings, *see* FAC ¶177; authorizing and shielding reliance on false testimony from local districts and schools, *see* FAC ¶¶140–52, 175; allowing and encouraging the improper exclusion of parents' expert witness testimony, *see* FAC ¶¶153–55; and engaging in *ex parte* and other intrusive communications with and among FCSB, school personnel, hearing officers, and VDOE representatives.  *See* FAC ¶¶ 148–66, 179–82.  VDOE also incentivizes and rewards biased hearing officers.  *See* FAC ¶¶ 157–77.  Despite numerous IDEA violations cited by the United States Department of Education, VDOE has failed and refused to appropriately address them.

*See* FAC ¶¶ 143–47, 179–80.

VDOE's cursory argument that M.B. and D.C.'s claims should be dismissed because they have "fail[ed] to show that [they were] not provided a FAPE" misses the point and attempts to impose an artificially high standard to Plaintiffs' pleadings.  VDOE Motion at 21.  At this stage, Plaintiffs' "allegation[s] d[o] not need to be proven, or even probably true; [they] only nee[d] to be plausible on [their] face."  *Richards v. Berryhill*, 759 F. App'x 187, 189 (4th Cir. 2019).  The FAC meets this standard.  VDOE also ignores that the procedural inadequacies alleged are themselves adequate to state a claim under the IDEA.  Thus, VDOE's argument is doubly without merit.

Notably, VDOE further glosses over the fact that HOV, D.C.'s parents, and M.B.'s parents have their own independent claims under the IDEA, and has offered no explanation as to why those claims should be dismissed under Rule 12(b)(6).  This glaring omission provides another basis for denying VDOE's Motion.

### B.  Plaintiffs Have Stated a Claim Against the FCSB Defendants for Violation of the IDEA

The FAC also reports numerous IDEA violations by FCSB that have impacted D.C., M.B., each of their parents, and HOV, as well as the FCSB class that Plaintiffs propose to represent. Plaintiffs allege, among other things, that FCSB fails to: provide special education services and evaluations for students with disabilities even when prompted by concerned parents, *see* FAC ¶¶ 46, 195–99; ensure independent educational evaluations are properly provided, *see* FAC ¶ 205; address sensory and behavioral needs of students in FCSB-run schools, *see* FAC ¶¶ 107, 137–39, 292; ensure IEPs are properly developed and implemented, *see* FAC ¶¶ 32–35, 46, 251–57, 260, 292–93; ensure IEPs are followed, *see* FAC ¶¶ 46, 262–69, 280–87; provide procedural safeguards under the IDEA, *see* FAC ¶¶ 106–17, 118–26, 139, 160–63, 296–97; ensure that accurate

educational information, free of manipulation and obfuscation, is provided to parents, *see* FAC ¶¶ 46, 207–09, 215–16.  FCSB also engages in tactics designed to delay, limit and avoid providing required educational services under the IDEA.  *See* FAC ¶¶ 2, 16, 149, 195–201, 206–17.

FCSB improperly attempts to impose a heightened pleading standard on the FAC.  It asserts that Plaintiffs' claim for a declaratory judgment that FCSB has violated the IDEA and for injunctive relief requiring FCSB to conduct the evaluations required under the IDEA and otherwise implement policies and procedures to prevent further IDEA violations, *see* FAC ¶ 355, should be dismissed for lack of detail and specificity.  FCSB Motion at 18, 20.  FCSB is wrong.  Plaintiffs' allegations are more than sufficient to provide the "short and plain statement of the claim" required under Fed. R. Civ. Pro. 8.  No more is necessary at this stage.

X.    PLAINTIFFS HAVE PROPERLY PLED CLAIMS UNDER 42 U.S.C. § 1983

Plaintiffs have also appropriately brought claims under 42 U.S.C. § 1983 against Superintendents Balow and Reid for violations of their rights under the Fourteenth Amendment to the United States Constitution.  Plaintiffs' allegations that VDOE and FCSB have established and maintained policies and practices which deprive them of their rights under both the IDEA and the Constitution of Virginia, in contravention of Plaintiffs' federal Due Process and Equal Protection rights, amply state a claim against Balow and Reid in their official capacities.  Defendants' contrary arguments misconstrue the law concerning the relationship between the IDEA and 42 U.S.C. § 1983, as well as the nature of Plaintiffs' claims.

A.    **Plaintiffs' Section 1983 Claims Are Not Barred by the IDEA**

Defendants' threshold argument that Plaintiffs' section 1983 claims are barred by *Sellers by Sellers v. School Bd. of Manassas*, 141 F.3d 524 (4th Cir. 1998) (*Sellers*), is unavailing, as the relief sought in this case is completely different than that sought in *Sellers*.  *Contra* VDOE Motion at 12–13; FCSB Motion at 11 (citing *Sellers*).  In *Sellers*, the plaintiffs sought *monetary damages*

related to an isolated IDEA violation, and the court found that the plaintiffs could not "sue under section 1983 for an IDEA violation, which is *statutory* in nature." *Sellers*, 141 F.3d at 529 (emphasis in original). However, the *Sellers* court also expressly held that "[b]y preserving rights and remedies under the Constitution, section 1415(f) does permit plaintiffs to resort to section 1983 claims for *constitutional* violations, notwithstanding the similarity of such claims to those stated directly under IDEA." *Id.* at 530 (internal quotation omitted) (emphasis in original); *see also* 20 U.S.C. § 1415(f) ("Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution.").

Here, Plaintiffs have brought section 1983 claims to address systemic *constitutional* violations, which cannot be cured within the administrative remedial scheme; and Plaintiffs do not seek monetary damages. Accordingly, *Sellers*[5] does preclude Plaintiffs' claims.

For similar reasons, FCSB's argument that Plaintiffs' have brought their claims against the wrong defendant is without merit. *Contra* FCSB Motion at 12. Plaintiffs' claims under section 1983 arise out of violations of the Equal Protection and Due Process clauses of the Fourteenth Amendment – not violations of the IDEA. That there is some factual overlap between Plaintiffs' IDEA claims and section 1983 claims is of no moment. *See Sellers*, 141 F.3d at 530. FCSB Defendants' claim that Plaintiffs cannot bring their section 1983 claims against Superintendent Reid should be rejected.

---

[5] *Bills v. Virginia Department of Education*, on which Defendants alternatively rely, does not address this issue at all. The court in that case instead dismissed the plaintiffs' Due Process claims because they failed to "identify a specific right guaranteed by the United States Constitution or a federal statute." *Bills v. Va. Dep't of Educ.*, 605 F. Supp. 3d 744, 757 (W.D. Va. 2022), *appeal docketed*, No. 22-1709 (4th Cir. July 6, 2022)). *Cf.* FCSB Motion at 6. As explained *infra* at Section X, Plaintiffs have alleged such specific rights guaranteed by both the IDEA and the Virginia Constitution.

### B.   Plaintiffs Have Properly Pled Claims Against Superintendents Balow and Reid in Their Official Capacities

The FAC clearly and plausibly states claims under section 1983 against Superintendents Balow and Reid in their *official* capacities as the executive officers of VDOE and FCSB respectively.[6] "Whether an official is sued in her or his individual or official capacity determines what showing must be made" in a section 1983 action. *McDonald v. Dunning*, 760 F. Supp. 1156, 1160 (E.D. Va. 1991). "Official-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (internal quotations omitted). Accordingly, to state a claim against a state or municipal officer in their official capacity for a constitutional violation under section 1983, a plaintiff must allege (1) "the deprivation of constitutional rights" (2) which "was caused by an official policy, custom, or practice." *Courthouse News Serv. v. Schaefer*, 440 F. Supp. 3d 532, 552 (E.D. Va. 2020), aff'd, 2 F.4th 318 (4th Cir. 2021).

Defendants' argument that Plaintiffs must allege that the Superintendents personally undertook some action to deprive Plaintiffs of their due process and equal protection rights conflates Plaintiffs' official capacity suit with an individual capacity suit. *Contra* FCSB Motion at 17; VDOE Motion at 2. Whereas, in an individual capacity suit, a plaintiff must ordinarily allege that the official acted personally in the deprivation of rights, no such showing is necessary in an official capacity case like this. *See Sharpe v. Winterville Police Dep't*, 59 F.4th 674 at *2 (4th Cir. 2023) ("Sharpe need only plausibly allege (1) that the Town has a policy preventing a passenger from livestreaming their traffic stop and (2) that such a policy violates his First Amendment rights."). Indeed, "the decision that [the municipality] is suable 'necessarily decides'

---

[6] VDOE's Motion confuses this fact. *See* VDOE Motion at 6–7. Nowhere in the FAC do Plaintiffs state or otherwise suggest that Superintendent Balow and Reid are sued in their individual capacities in addition to their official capacities.

that the municipal officials named here may be sued in their official capacities." *Himmelbrand v. Harrison*, 484 F. Supp. 803, 811 (W.D. Va. 1980).

1. *Plaintiffs Have Alleged That Defendants Balow and Reid Deprived Them of Due Process*

Plaintiffs have stated a claim against Defendants Balow and Reid—in their official capacities—under 42 U.S.C. § 1983 for violations of due process.  To make out a § 1983 claim, a plaintiff must allege that"(1) she was deprived of a federal statutory or constitutional right; and (2) the deprivation was committed under color of state law." *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003).  For a due process claim, this requires allegations that a plaintiff (1) lost "something that fits into one of the three protected categories: life, liberty, or property," and (2) did not "receive the minimum measure of procedural protection warranted under the circumstances." *Mallette v. Arlington Cnty. Emps. Supplemental Ret. Sys. II*, 91 F.3d 630, 634 (4th Cir. 1996).  "Once these elements are established, the question turns to what process is due and whether it has been provided." *Echtenkamp v. Loudon Cnty. Pub. Sch.*, 263 F. Supp. 2d 1043, 1053 (E.D. Va. 2003).

First, Plaintiffs have appropriately alleged that Defendants Balow and Reid acted under color of law when, in their official capacities, they adopted a policy, practice, pattern, and/or custom that deprived Plaintiffs of their due process rights.  *See* FAC ¶¶ 16, 311–14, 321–22, 330; *see also Goldstein v. Chestnut Ridge Volunteer Fire Dep't*, 218 F.3d 337, 341 (4th Cir. 2000) ("In cases construing section 1983, 'under color' of law has been treated consistently as equivalent to the 'state action' requirement under the Fourteenth Amendment.").

Second, Plaintiffs have properly alleged that they have been deprived of at least two constitutionally protected property interests: (1) "a constitutionally protected property interest in 'a system of free public elementary and secondary schools,' as enshrined in the Constitution of Virginia," *see* FAC ¶ 329 (quoting Va. Const. art. VIII, § 1), and (2) "a constitutionally protected

property interest in being provided with an IEP consistent with the requirements of the IDEA." Courts have recognized that where, as in Virginia, a state mandates a free public education, students have a legitimate property interest in that education that cannot be deprived without notice and the opportunity to be heard.  *See Goss v. Lopez*, 419 U.S. 565, 579 (1975)[7]; *Stevenson ex rel. Stevenson v. Martin Cnty. Bd. of Educ.*, 3 F. App'x 25, 29 (4th Cir. 2001) (recognizing property interest in a public education).  Likewise, "while the IDEA by itself confers substantive rights— and is itself a vehicle for plaintiffs to vindicate those rights—plaintiffs may also bring an action pursuant to Section 1983 for the deprivation of a liberty or property interest created by the IDEA by a person acting under color of state law."  *M.H. ex rel. K.H. v. Mount Vernon City Sch. Dist.*, No. 13 CV 3596 VB, 2014 WL 901578, at *8 (S.D.N.Y. Mar. 3, 2014).

Third, Plaintiffs have alleged that their property and liberty interests have not been afforded sufficient procedural protections because Defendants are perpetuating a system of sham proceedings with predetermined outcomes, as exemplified by the cases of Plaintiffs D.C. and M.B., as well as other examples alleged in the FAC, including those of HOV members.  Due process of law primarily requires a fair proceeding with procedural safeguards which require proper notice and a fair opportunity to be heard.  *See Mathews v. Eldridge*, 424 U.S. 319, 333, 335 (1976); *Mallette*, 91 F.3d at 634, 640.  Accordingly, "due process requires that a hearing . . . 'be a real one, not a sham or a pretense.'"  *Joint Anti–Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 164 (1951) (Frankfurter, J., concurring).  In short, due process amounts to an opportunity to participate

---

[7] In *Goss*, the plaintiffs "plainly had legitimate claims of entitlement to a public education" because the state, by statute, extended the right to education and that right could not be withdrawn without fair procedures. 419 U.S. at 573–74; *Id.* at 579 (In the educational context, "students facing suspension and the consequent interference with a protected property interest must be given some kind of notice and afforded some kind of hearing").

in a "fair hearing before an impartial tribunal." *Breitling v. Solenberger*, 585 F. Supp. 289, 290 (W.D. Va. 1984).

Here, Plaintiffs plausibly allege that Superintendents Balow and Reid are depriving them of due process in at least two respects. First, they allege that Defendants have created a system of sham proceedings in which outcomes are predetermined. *See*, *e.g.*, FAC ¶¶ 314–20. For example, the FAC describes how VDOE employs so-called "hearing monitors" to attend and influence due process hearings. *See* FAC ¶11. These two VDOE monitors attend all due process hearings and display favoritism towards schools during the due process hearings. *See id.* at ¶¶ 158–59. And at least one of these two VDOE monitors engaged in *ex parte* communications with a due process hearing officer to try to persuade that officer to rule against the family of a child with disabilities. *See id.* at ¶¶ 158–59. Considering VDOE controls who gets to be a due process hearing officer, *see* FAC ¶¶ 7–8, the presence of these VDOE "monitors" undoubtedly has a heavy influence on the outcome of these due process hearings. This is particularly true, given that a hearing officer can make tens of thousands of dollars for handling a single due process hearing. *See id.*, Exhibit D. It is no wonder that 83% of hearing officers in Northern Virginia and 64% of hearing officers state-wide have never ruled in favor of a parent over more than two decades. *See id.* at ¶¶ 83–104. The parental success rates in Virginia are dramatically worse than any other state whose information could be located. *See id.*

It is shocking that the Virginia agency charged with ensuring that families of children with disabilities receive a fair IDEA hearing is using its oversight powers to ensure that those families have no chance of success. Such sham proceedings do not afford adequate due process.[8] *See Ross*

---

[8] The Fourth Circuit has examined the minimum procedural due process required under the Fourteenth Amendment, but not under the IDEA and "sham" or "predetermined" hearings. Therefore, it is appropriate to look to its sister circuits (as this Court has done previously). *See*

*v. City of Memphis*, 394 F. Supp. 2d 1024, 1038 (W.D. Tenn. 2005) (finding that the plaintiff's evidence of contradictory statements about his hearing and allegations of a predetermined outcome precluded summary judgment); *see, e.g.*, *Ryan v. Illinois Dep't of Child. & Fam. Servs.*, 185 F.3d 751 (7th Cir. 1999) ("A plaintiff who can introduce evidence that the decision has already been made and any hearing would be a sham is entitled to go forward with a procedural due process claim.").

Second, Plaintiffs allege that the due process hearing officers hand-selected by VDOE are strongly biased against families and their children with disabilities. Due process has long been recognized to require "a neutral and detached judge in the first instance." *Ward v. Monroeville*, 409 U.S. 57, 62 (1972); *see also In re Murchison*, 349 U.S. 133, 136 (1955) ("A fair trial in a fair tribunal is a basic requirement of due process"); *Goldberg v. Kelly*, 397 U.S. 254, 271 (1970) ("[A]n impartial decision maker is essential"). Accordingly, "[t]hat officers acting in a judicial or quasi-judicial capacity are disqualified by their interest in the controversy to be decided is, of course, the general rule." *Tumey v. Ohio*, 273 U.S. 510, 522 (1927). Impartiality may be further questioned when the government employer of the hearing officer is a "repeat player" in proceedings before the hearing officer. *See Lucky Dogs LLC v. City of Santa Rosa*, 913 F. Supp. 2d 853 (N.D. Cal. 2012).

VDOE maintains a roster of biased hearing officers to ensure these predetermined outcomes. FAC ¶¶ 7–8. VDOE is responsible for certification, training, and, most importantly, re-certification of these hearing officers. *See id.* VDOE has near total control over the selection, compensation, and oversight of the hearing officers. *See id.* As in *Lucky Dogs*, while the hearing

---

*Jefferson v. Sch. Bd. of City of Norfolk, Virginia,* No. 2:10cv316, 2011 WL 13195917, at *3, nn. 5–6 (E.D. Va. Feb. 28, 2011), *aff'd sub nom. Jefferson v. Sch. Bd. of City of Norfolk*, 452 F. App'x 356 (4th Cir. 2011).

officers are not hired on an ad hoc basis, the temptation to rule in favor of school administrations remains blatant because their future employment depends on VDOE's continued certification of the officers. *See Lucky Dogs*, 913 F. Supp. 2d at 861. In addition, as explained in the FAC, VDOE places its own representatives in every single due process hearing to "monitor" the hearing officers and influence their decisions. *See* FAC ¶¶ 158–59.

An examination of the current hearing officers' almost-uniformly one-sided rulings demonstrates that hearing officers are all too aware of this incentive. Plaintiffs further allege that LEA lawyers have made implicit financial threats against hearing officers if they do did not rule in favor of their clients and against parents. *See* FAC ¶ 171. These allegations are more than sufficient to overcome any presumption of impartiality and allege a deprivation of due process.

Named Plaintiffs' experiences before biased hearing officers are glaring examples of these sham proceedings. For example, M.B. was subjected to a sham due process proceeding in which the outcome was predetermined. M.B. filed a due process proceeding in January 2022, challenging FCSB's improper IEPs and public-school placements for the 2019, 2020, and 2021 school years. *See* FAC ¶ 35. M.B.'s parents and advocates presented testimony and evidence from multiple experts over seven days in March 2022 regarding M.B.'s challenges and needs and the inappropriateness of FCSB's proposed placement for the 2021 school year. *See* FAC ¶¶ 35, 133– 37. The evidence presented demonstrated that M.B. had not progressed while placed in public school, and had actually regressed in some respects due to FCSB's improper placement. *See* FAC ¶ 134. Contrary to the evidence presented by M.B. and his family, and relying on false claims by FCSB, the VDOE hearing officer denied all relief to M.B. and his parents. *See* FAC ¶¶ 36, 138.

Proceedings in D.C.'s case were similarly flawed and resulted in an inevitable predetermined outcome. After serving FCSB with a formal request for a due process hearing in

February 2021, Hearing Officer Brooke-Devlin, who had inexplicably ruled against D.C. and his family in 2015 was again appointed to serve as the hearing officer overseeing D.C.'s new due process litigation.  *See* FAC ¶¶ 122–23.  D.C. and counsel petitioned for removal of Ms. Brooke-Devlin based on the fact that their case would present the same basic fact pattern and request for a residential placement that Ms. Brooke-Devlin had previously ruled adverse to D.C., violating Ms. Brooke-Devlin's requirement to be neutral, impartial and objective.  *See* FAC ¶ 124.  On a pre-hearing conference call Ms. Brooke-Devlin acted with open hostility toward counsel for D.C.  *See* FAC ¶ 130.  Ms. Brooke-Devlin subsequently issued a preemptory ruling against D.C.'s motion to disqualify, providing no rationale for her decision other than an assertion that D.C.'s parents "failed to meet their burden of proof."  FAC ¶ 131.  Ms. Brooke-Devlin further ordered that the parties move forward with their case immediately. *Id.* By no legal standards could Ms. Brooke-Devlin be considered an impartial hearing officer; additionally, her documented history of *never* ruling in favor of disabled and special needs students further supports Plaintiffs' allegations of partiality to the school system.  *See* FAC ¶¶ 127–31.

The predetermined nature of these proceedings is further highlighted by the dismal outcomes for families seeking relief.  *See supra* at 6.  VDOE's handpicked hearing officers have settled on a practice of routine findings in favor of LEAs followed by annual re-certification by VDOE as hearing officers, with significant continued compensation.  *See* FAC ¶¶ 85–92, Exhibits A–C, E.

Plaintiffs have adequately alleged that the supposed procedural safeguards meant to protect Plaintiffs' due process rights instead reflect a system of sham proceedings with predetermined outcomes and do not provide sufficient protection for their liberty and property rights.

### C.    Plaintiffs Have Adequately Alleged That Defendants Balow and Reid Deprived Them of Their Rights to Equal Protection

To survive a motion to dismiss on a Fourteenth Amendment equal protection claim, Plaintiffs must plausibly plead (1) "that he or she was treated differently from others who were similarly situated" and (2) "that the unequal treatment was the result of discriminatory animus." *Equity in Athletics, Inc.*, 639 F.3d at 108; *Monegain v. Dep't of Motor Vehicles*, 491 F. Supp. 3d 117, 141 (E.D. Va. 2020).  Such analysis precedes the Court's determination of "whether the disparity in treatment can be justified under the requisite level of scrutiny."   *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001).  Plaintiffs have adequately pled each of these elements and have sufficiently alleged that Defendants' conduct fails the strict scrutiny review that applies to their actions.

#### 1.   Plaintiffs Allege That They Have Been Singled Out as A Class of Disabled Children and their Families

The FAC alleges that Defendants "have singled out Plaintiffs as a class based on Plaintiffs' status as individuals with disabilities and parents of children with disabilities and denied them their constitutionally protected right to a free public education." FAC ¶ 330.  Defendants have deprived students with disabilities of educational services and procedural protections that those children need to obtain an appropriate public education, as recognized by Congress in enacting the IDEA. 20 U.S.C. § 1400(c)(1).  Simultaneously, Defendants are providing "other children without disabilities and their parents with the free public education required by the Constitution of Virginia." *Id.*.

Students without disabilities in the Commonwealth are a similarly situated class because they are "similar in all respects relevant to attaining the legitimate objectives" of the State's public education system. *Van Der Linde Hous., Inc. v. Rivanna Solid Waste Auth.,* 507 F.3d 290, 293 (4th Cir. 2007).  Therefore, with respect to accessing public education, the harmful, discriminatory

treatment of Plaintiffs cannot be justified by Defendants' inhumane and irrational argument that Plaintiffs are not sufficiently similar to nondisabled students for purposes of pleading an equal protection claim.

Defendants' assertion that Plaintiffs are not similarly situated to nondisabled students for purposes of their equal protection claim is not supported by the authorities they cite. For example, in *Kolbe v. Hogan* the Fourth Circuit upheld the Maryland Firearm Safety Act in the face of equal protection challenges to the law's differential treatment of retired Maryland law enforcement officers, who were uniquely allowed to possess assault weapons and large-capacity magazines. 813 F.3 160, 185–188 (4th Cir. 2016), *reh'g en banc Kolbe v. Hogan*, 849 F.3d 114 (4th Cir. 2017), *abrogated on other grounds by N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 124 S.Ct. 2111 (2022). The court found that, for purposes of the firearm safety law's objectives, plaintiffs were not similarly situated because retired law enforcement officers had unique training and experience with firearms, were granted a special degree of trust, and faced special threats creating the need to defend themselves. *Id.* By contrast, in the context of the State's interest in providing a public education "necessary to prepare citizens to participate effectively and intelligently in our open political system" and society, there are no differences between Plaintiffs and nondisabled students similar to those outlined in *Kolbe* that are relevant to the State's legitimate objectives. *Plyler v. Doe*, 457 U.S. 202, 221 (1982). Defendants' arguments are thus unavailing.

## 2. *Plaintiffs Allege That Defendants Acted with Discriminatory Bias*

Plaintiffs have detailed the discriminatory bias that animated Defendants' actions against them. When ruling on the merits, a court considers several factors as probative of discriminatory intent in an equal protection claim: (1) "evidence of a consistent pattern of actions . . . disparately impacting members of a particular class of persons"; (2) "historical background of the decision . . . tak[ing] into account any history of discrimination by the decisionmaking body"; (3)

"specific sequence[s] of events leading up to" the action being challenged including "significant departures from normal procedures"; and (4) "contemporary statements by decisionmakers." *Sylvia Dev. Corp. v. Calvert Cnty., Md.*, 48 F.3d 810, 819 (4th Cir. 1995) (internal citations omitted).

Plaintiffs' FAC plausibly offers a variety of such allegations regarding Defendants' discriminatory animus.  Specifically, the FAC describes, in several instances, how Defendants deprived Plaintiffs of their rights through the development of a roster of hearing officers who are strongly biased against disabled children and through their improper influence over the IDEA and due process hearing procedures.  *See* FAC ¶¶ 8, 12, 110, 111, 139, 318.  Plaintiffs allege that the unequal treatment and deprivation of educational services that they face is a direct result of Defendants' discriminatory animus.  *See* FAC ¶¶ 136, 139, 175, 281– 86, 299–304, 321. Furthermore, the FAC identifies other instances  that show a history of discriminatory behavior toward children with disabilities, such as through the unlawful and primitive practice of physical restraint and seclusion, *see* FAC ¶ 302, through its repeated failures to comply with the IDEA, cited throughout the FAC, and through its disparate treatment of disabled students during the pandemic, *see* FAC ¶¶ 281–86.  These are not isolated incidents, but rather a pattern of violations stretching back for several years that has been investigated and condemned by the United States Department of Education.  *Id.* at ¶¶ 144–45, 180, 232, 282–83, 303.

Unlike the case VDOE Defendants rely upon in which Plaintiffs failed to allege purposeful discrimination, Defendants' intent to discriminate against disabled students like D.C. and M.B. is the only rational explanation for their consistent indifference to the law and evidence throughout the IDEA process.  *Contra Equity in Athletics, Inc. v. Dep't of Educ.*, 675 F. Supp. 2d 660, 680 (W.D. Va. 2009) (plaintiffs failed to state equal protection claim because state action was based

on compliance with Title IX).  At the motion to dismiss stage, the pleadings in the FAC thoroughly

alleging Defendants' broken IDEA system are sufficient to allege discriminatory animus.

### 3.  *Plaintiffs Allege That Defendants' Actions Violated Their Fundamental Rights and Cannot Withstand Strict Scrutiny*

Plaintiffs have alleged that Defendants' actions deprive of them of fundamental rights, thus

triggering strict scrutiny under the Fourteenth Amendment Equal Protection Clause.  When the

State treats a class of individuals differently from others, equal protection analysis warrants strict

scrutiny when such action interferes with the group's exercise of fundamental rights.  *See Zablocki*

*v. Redhail,* 434 U.S. 374, 388 (1978).  Those rights "explicitly or implicitly protected by the

Constitution" are considered fundamental for purposes of Equal Protection Clause analysis.  *San*

*Antonio Ind. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 33 (1973).

Once strict scrutiny is triggered, state action that "impinges upon a fundamental right

explicitly or implicitly protected by the Constitution" can only be sustained if it is narrowly tailored

to serve a compelling state interest.  *Rodriguez*, 411 U.S. at 17.  Under strict scrutiny review, the

States bears the burden of demonstrating that its education system has been structured with

precision, and is tailored narrowly to serve legitimate objectives and that it has selected the less

drastic means for effectuating its objectives.  *See id.* at 17–18.

Plaintiffs allege in the FAC that Defendants' actions are subject to strict scrutiny as they

deprive disabled students of fundamental rights protected by equal protection: procedural due

process, access to education, and liberty.

The right to procedural due process is explicitly guaranteed by the Constitution in the

Fourteenth Amendment.  In fact, the promise that no one shall be "deprived of life, liberty or

property without due process of law" is the only command stated twice in the Constitution.  It is

critical to our constitutional system and is well established as a fundamental right that is ensured

equally to all.  The Supreme Court has recognized the close relationship of procedural due process and equal protection principles as they have converged in the courts' analysis in a variety of cases.  *See Bearden v. Georgia*, 461 U.S. 660, 665 (1983)*; Griffin v. Illinois*, 351 U.S. 12, 16–17 (1956) (concept of "equal justice" ensured by both equal protection and due process)*.*

As discussed supra, Plaintiffs have properly alleged that Defendants' discriminatory actions constitute a deprivation of their procedural due process rights.  *See, e.g.* FAC ¶¶ 314–20, 85–92, Exhibits A, B, C, E, and F.  Because such state action deprives Plaintiffs of their fundamental rights to procedural due process in a manner different from similarly situated, nondisabled students, strict scrutiny is applicable to determine whether Defendants have violated the Equal Protection Clause.

In addition, Plaintiffs assert that Defendants' actions constitute a discriminatory deprivation of disabled students' fundamental right to education and, thus, warrants strict scrutiny analysis under the Equal Protection Clause of the United States Constitution.

The Supreme Court of Virginia has declared that education is a fundamental right under the Virginia Constitution.  *See Scott v. Commonwealth*, 247 Va. 379, 386  (Va. 1994).  In *Scott*, the Court found no occasion to scrutinize a deprivation of this right because students did not allege that the quality of their education was impacted by the alleged budgetary inequities in that case.  *See id.* at 383–84, 386.  In contrast, Plaintiffs have demonstrated that the deprivation of an appropriate education for disabled students results in the plaintiffs being provided an education that is below acceptable standards of quality and, thus, violates the education provisions in the Virginia Constitution.

The important relationship between Virginia Constitution's educational provisions and the Fourteenth Amendment's Equal Protection Clause was inherent in its drafting. This and similar

state constitutional provisions establishing a right to education were important developments in drafting the constitutions of former Confederate States after the Civil War, as they were written in order to guarantee children of formerly enslaved persons the right to education; as such, these constitutional provisions were essential to ensuring improvements in the equal treatment and protection of citizens in the Southern United States. Derek Black, *Freedom, Democracy, and the Right To Education*, 116 Northwestern L.R.1031, 1036–1037 (2022).  Furthermore, the Virginia Constitution's educational provisions were established in conjunction–both temporally and ideologically–with the Fourteenth Amendment's Equal Protection Clause.  *See id.* at 1034–35. This historical background demonstrates the Framers' intent to establish educational rights that would be enjoyed equally by all, as promised by the Fourteenth Amendment's Equal Protection Clause.

Once the state has established a constitutional right to education, Defendants "must demonstrate that any discrimination [in access to education] occasioned by the law serves a compelling governmental interest, and is narrowly tailored to serve that objective." *Brigham v. State,* 166 Vt. 246, 265 (Vt. 1997) (citing *Rodriguez*, 411 U.S. at 16–17); *see also Connecticut Coalition for Justice in Educ. Funding, Inc. v. Rell,* 295 Conn. 240, 281 (Conn. 2010) (infringement of educational rights must be "strictly scrutinized").  Although the Supreme Court has not yet recognized a fundamental right to education in the U.S. Constitution, the existence of a state constitutional right to education  triggers strict scrutiny under the Equal Protection Clause. *See Doe v. Ohio,* No. 2:91-cv-464, 2012 WL 12985973 at *15 (S.D. Ohio 2012).

Defendants' contrary arguments again misconstrue Plaintiffs' allegations.  *See* VDOE Motion at 14–15.  Plaintiffs do not claim narrowly that Defendants violated their state rights, but that the Defendants have violated disabled students' federal Equal Protection Clause rights that

ensure the fundamental right to education in the Virginia Constitution is equally enjoyed by all similarly situated persons.  *See* FAC ¶¶ 329–30.  Therefore, contrary to Defendants' assertions, such a claim is nonetheless considered a deprivation of federal rights—the right to equal protection under the Fourteenth Amendment—when disabled students are treated differently in their enjoyment of a right made fundamental under state law.  *See Doe,* 2012 WL 12985973 at *15.

Defendants further fail to acknowledge that Plaintiffs have plausibly alleged discrimination in educational opportunities recognized by the Supreme Court as constitutionally suspect, and warranting heightened equal protection scrutiny, under *Plyler*.  There, the Supreme Court recognized the special importance of equal access to education to our political system and cultural heritage, requiring that discriminatory deprivation of access to public education satisfy a form of heightened equal protection scrutiny.  *See* 457 U.S. at 221–22.  The *Plyler* Court found that deprivation of access to public education "imposes a lifetime" of "disabling" hardship on individuals by marking them with the "stigma of illiteracy," "deny[ing] them the ability to live within the structure of our civic institutions, and foreclose[ing] any realistic possibility they will contribute in even the smallest way to the progress of our Nation."  *Id.* at 223.  Therefore, when the State makes "innocent [disabled] children . . . its victims," even though they are not "accountable for their disabling status," by depriving them as a class of access to education, the State must demonstrate that such action furthers "some substantial goal of the State" to comply with the requirements of the Equal Protection Clause.  *Id.* at 223–24.

In this case, deprivation of the substantive and procedural rights under the IDEA is tantamount to a complete deprivation of education to disabled students.  As the U.S. Department of Education has explained, "[t]he IEP is the cornerstone of a quality education for each child with a disability" as "each IEP is critical in [their] education."  Office of Special Education and

Rehabilitative Services, U.S. Dep't of Educ., A Guide to the Individualized Education Program (July 2000), https://www2.ed.gov/parents/needs/speced/iepguide/iepguide.pdf.  By creating and enforcing a system designed to delay and deny services to children with disabilities, Defendants have taken away this essential cornerstone.  *See supra* at Section II.  And, by instituting sham due process hearings that deny IDEA accommodations for virtually all disabled children who request hearings, Defendants are ensuring that children with disabilities can never access an appropriate education.  *See, e.g.,* FAC ¶ 7.

As Plaintiffs have alleged, Defendants have not, and cannot, articulate a compelling state interest in denying children with disabilities of their fundamental rights to due process or a public education.  To the contrary, Superintendents Balow and Reid are *charged* with providing those children educational services and related procedural protections.  *See* FAC ¶¶ 50–53.

Plaintiffs' allegations thus state a claim for violation of the Equal Protection Clause and overcome Defendants' motions to dismiss.

XI.    <u>CONCLUSION</u>

For all of these reasons, Defendants' motions to dismiss should be denied.

Dated:  March 3, 2023                          Respectfully submitted,

                                      By:  */s/ R. Braxton Hill, IV*
                                          R. Braxton Hill, IV (VSB No. 41539)
                                          Craig T. Merritt (VSB No. 20281)
                                          MERRITTHILL, PLLC
                                          919 E Main Street, Suite 1000
                                          Richmond, VA 23219
                                          T  804-916-1600
                                          bhill@merrittfirm.com
                                          cmerritt@merrittfirm.com

                                          Aderson B. Francois
                                          (*pro hac vice to be submitted*)
                                          Civil Rights Clinic,
                                          Georgetown University Law Center
                                          600 New Jersey Avenue NW, Suite 532
                                          Washington DC 200001
                                          T 202-661-6721
                                          aderson.francois@law.georgetown.edu

                                          William R.H. Merrill (*pro hac vice*)
                                          Scarlett Collings (*pro hac vice*)
                                          Michael Adamson (*pro hac vice*)
                                          Justin Kenney (*pro hac vice*)
                                          SUSMAN GODFREY, LLP
                                          1000 Louisiana, Suite 5100
                                          Houston, TX 77002
                                          T 713-653-7865
                                          bmerrill@susmangodfrey.com
                                          scollings@susmangodfrey.com
                                          madamson@susmangodfrey.com
                                          jkenney@susmangodfrey.com

                                          *Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on the 3rd of March 2023, I filed a copy of this document using the Court's ECM/ECF filing system, which will send an electronic notification of the same (NEF) to counsel of record for the plaintiff.

*/s/ R. Braxton Hill, IV*
R. Braxton Hill, IV