**UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| **D.C., by his parents and guardians, et al.** | |
| *Plaintiffs,* | |
| v. | **1:22-cv-01070 (MSN-IDD)** |
| **FAIRFAX COUNTY SCHOOL BOARD, et al.** | |
| *Defendants.* | |

## REPLY BRIEF ON BEHALF OF DEFENDANTS FAIRFAX COUNTY SCHOOL BOARD AND DR.  MICHELLE REID[1]

### I.      INTRODUCTION

Plaintiffs' Opposition to the FCSB Defendants'[2] Motion to Dismiss the First Amended

Complaint ("FAC") fails to differentiate claims made against the FCSB Defendants and those

made against the VDOE Defendants.[3]  Instead, just as set forth in the FAC, Plaintiffs make broad

and conclusory statements about alleged *systemic violations* of the Individuals with Disabilities

Education Act ("IDEA"), 20 U.S.C. § 1415, purportedly attributable to *all* Defendants.

However, Plaintiffs fail to allege any sufficient facts that would support any such claims against

the FCSB Defendants.

---

[1] This Brief is a limited response to some of the issues raised in Plaintiff's Opposition Brief.  All arguments raised in full in the Memorandum in Support of the Motion to Dismiss are hereby adopted without waiver.

[2] "FCSB Defendants" refers collectively to the Fairfax County School Board and its superintendent, Dr. Michelle Reid. Plaintiffs refer to Fairfax County Public Schools ("FCPS") interchangeably with the FCSB.  FCPS is not a *sui juris* entity.  The correct party is the FCSB. Va. Code § 22.1-28.

[3] "VDOE Defendants" refers collectively to the Virginia Department of Education and Jillian Balow, Superintendent of Public Instruction.

At most, the FAC alleges that the families of two of Fairfax County's tens of thousands of students with disabilities are not satisfied with the individualized education programs ("IEPs") that have been offered to their students.  Without any factual support, and without identifying any specific practice or policy, the Plaintiffs conclude that because these two families are unhappy, the FCSB Defendants must be systemically engaging in violations of the most fundamental requirements of the IDEA.  Such a leap of logic is beyond speculative.

Further, the unsupported leap to systemic claims is a blatantly obvious attempt to avoid the procedural provisions of the IDEA, which include an administrative review process and the opportunity to have a federal or state court "conduct an independent review of the administrative record." *Durham Pub. Schs. Bd. of Educ.,* 54 F.4th 779, 788 (4th Cir. 2022).  Congress created this opportunity for judicial review to "'provide aggrieved persons with an *external* check on the state administrative action.'"  *Id.* at 789 (quoting *Kirkpatrick v. Lenoir Cnty. Bd. of Educ.*, 216 F.3d 380, 387 (4th Cir. 2000) (emphasis in original).

Plaintiffs want to avoid this comprehensive and codified process, which would have allowed them a mechanism for bringing an action to this Court, by making conclusory statements and arguments about what they primarily claim are problems with Virginia's IDEA statutory and regulatory provisions and processes, including the alleged inadequacy of state-appointed hearing officers who conduct due process hearings.  However, the FCSB Defendants have no responsibility for, or control over the process—including hearing officers—and therefore can have no liability. *See* FAC ¶ 7 ("Under state law, *VDOE* is responsible for: certifying hearing officers to hear special education due process cases, determining the number of hearing officers who will be certified, reviewing Hearing [sic] officer actions, and reviewing and recertifying hearing officers on an annual basis.  *VDOE* is also responsible for training and compensating

hearing officers.  These powers give *VDOE near-absolute control* over these hearing officers.")
(emphasis added).

Although the FAC complains of actions by VDOE and other school divisions around the
Commonwealth of Virginia, the FCSB Defendants are left wondering: what is it that Plaintiffs
allege *we* have done?  Plaintiffs claim to support the conclusory statements in the Opposition
Brief with citations to paragraphs in the FAC.  But a review of the cited paragraphs reveals that
they in fact support nothing other than the grievances of the two families who are the named
Plaintiffs.

Accordingly, the FCSB Defendants have not been given fair notice of the grounds upon
which claims of systemic violations rest, and the FAC must be dismissed with respect to the
FCSB Defendants.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## II.  PLAINTIFFS HAVE NOT ALLEGED FACTS SUFFICIENT TO SUPPORT A CLAIM OF SYSTEMIC VIOLATIONS OF THE IDEA

The FAC makes allegations about the IEPs offered to two Fairfax County Public Schools
students with disabilities, their parents' disagreements with those IEPs, and the families'
frustration that the administrative processes provided by the IDEA, and administered by VDOE,
did not provide them with the relief they sought.  Plaintiffs D.C. and his parents allege that they
disagree with FCPS' proposed educational placements for D.C.  FAC ¶¶ 114-21, 260-69.  D.C.
and his parents further allege that they filed a request for a due process hearing in June of 2015,
and that FCPS presented false testimony about D.C.'s academic abilities during that hearing.
FAC ¶¶ 27, 209.  The hearing officer ultimately ruled that D.C. and his parents were not entitled
to any relief.  FAC ¶ 28.  D.C. and his parents filed a second request for due process in February
of 2021, but withdrew the request when the same hearing officer was assigned and declined to
recuse herself.  FAC ¶¶ 122-24.

M.B. and his parents likewise allege their disagreement with FCPS' proposed (and mostly consented to) educational placements for M.B.  FAC ¶ 32, 137, 251-257, 288.  M.B. and his parents further allege that FCPS did not properly address M.B.'s behavioral challenges, which impacted M.B.'s academics, and instead "lower[ed] the bar" in terms of proposed goals for M.B., did not accurately record M.B.'s progress, and inflated M.B.'s grades.  FAC ¶¶ 208, 215-16, 287, 292-93.  M.B. and his parents also allege that the temporary learning plan that FCPS provided to M.B. during the early months of the COVID-19 pandemic was a failure to implement his IEP and did not provide him with the free appropriate public education ("FAPE") to which the IDEA entitles him.  FAC ¶¶ 32, 281.  In January of 2022, M.B. and his parents filed a request for a due process hearing, but the hearing officer ultimately ruled that M.B.'s IEPs and placements had been sufficient and denied any relief.  FAC ¶¶ 35-36, 137-39.

Based on these allegations regarding the experiences and complaints of two students and their families, the FAC then concludes, according to the Opposition Brief, that the FCSB Defendants *systemically*: (1) fail to provide special education services and evaluations for students with disabilities (FAC ¶ 195); (2) fail to ensure independent education evaluations are properly provided (FAC ¶ 205); (3) fail to ensure IEPs are properly developed, implemented, and followed (FAC ¶¶ 260, 280); (4) fail to provide procedural safeguards under the IDEA (FAC ¶ 63); (5) fail to ensure that accurate information is provided to parents (FAC ¶ 207, 209); and (6) delay, limit, and avoid providing educational services to students (FAC ¶¶ 2, 195, 200-01).  *See* Opp'n. Br. at 33-34.[4]

---

[4] Plaintiffs' Opposition Brief also states that the FCSB Defendants systemically fail to "address sensory and behavior needs of students."  Opp'n. Br. at 33.  However, the paragraphs of the FAC cited in support of this only relate to D.C. and M.B.  The FAC does not appear to contain even a conclusory allegation related to a *systemic* failure on this issue.

To survive a motion to dismiss, a complaint alleging systemic, or pattern or practice, violations must provide some factual basis to support that the claims at issue are something more than individual experiences. *See, e.g., Devi v. Prince George's Cnty.*, No. DKC 16-3790, 2017 WL 3591452, at *4 (D. Md. Aug. 21, 2017) (dismissing Section 1983 claim against the municipal defendant where plaintiff failed "to offer allegations of known, widespread conduct by County employees comparable to that allegedly committed by" two individual defendants against the plaintiff).

In the IDEA context, class actions have proceeded on claims of systemic violations in cases where defendants are alleged to have engaged in a specific policy or practice that resulted in a narrow category of violations, affecting a specific category of students in the same or similar way. For example, in *J.N. v. Oregon Department of Education*, six policies and procedures of the state department of education were alleged to result in school divisions across the state shortening school days of students with behavioral issues, denying those students the right to be educated in the least restrictive environment (LRE) alongside their peers without disabilities. 338 F.R.D. 256, 270-73 (D. Ore. 2021). In addition to identifying six policies and practices that risked systemic violation of the LRE requirement, the individual plaintiffs came from four different school divisions from four different geographical areas of the state, the United States Department of Education investigated at least two other school districts for systemic use of shortened days, and, in a timeframe of just six months, the organizational plaintiff received calls from 70 families from across the state seeking support about shortened days. *Id.* at 271.

In another IDEA class action case, plaintiffs alleged that the defendant school district maintained a policy of not providing related services (such as occupational, physical, or speech/language therapy) during the first two weeks (or longer) of the school year. *R. A-G. v.*

*Buffalo City Sch. Dist.*, No. 12-CV-960S, 2013 WL 3354424, at *3 (W.D.N.Y. July 3, 2013). Plaintiffs further alleged that this policy resulted in systemic violations of the IDEA because the school district was failing to assess individually the needs of students and to implement the related services required by the students' IEPs. *Id.*

Unlike those cases, Plaintiffs here do not allege a specific policy or practice of the FCSB Defendants. Rather, they support their leap from two families' complaints to a systemic denial of IDEA rights by citing to: (1) a communication between an FCSB employee and a hearing officer that was authorized and required by Virginia regulations; (2) the FCSB Defendants' agreement to provide compensatory services to students whose learning was impacted during the COVID-19 pandemic; (3) the actions of other school divisions across Virginia; (4) unidentified numbers of individuals from unidentified places in Virginia who are alleged to be members of the organizational plaintiff, HOV; (5) purported allegations by one unnamed teacher from an unidentified time period; and (6) purported allegations regarding two other unnamed students from unidentified time periods. *See* Opp'n. Br. at 33-34.

Specifically, the Opposition Brief references the following allegations in an attempt to connect the experience of the two named Plaintiffs to the conclusory statements regarding systemic violations:

**Failure to provide special education services and evaluations**: HOV's unidentified members from Virginia (FAC ¶ 46); report of one unnamed former teacher from unidentified time period (FAC ¶ 196); experience of one unnamed student from an unidentified time period (FAC ¶¶ 197-99).

**Failure to ensure independent evaluations are properly provided**: no citations to allegations other than one conclusory paragraph (FAC ¶ 205).

***Failure to ensure IEPs are properly developed and implemented***: HOV's unidentified members from Virginia (FAC ¶ 46); FCPS' Voluntary Resolution Agreement with the United States Department of Education to provide compensatory services to students with disabilities whose learning was impacted by the COVID-19 pandemic (FAC ¶¶ 83-86).

***Failure to provide procedural safeguards***: an email communication between an FCPS staff member and a hearing officer confirming the hearing officer's availability and acceptance for a due process hearing, consistent with the procedural requirements of Virginia regulations (FAC ¶¶ 160-63); FCSB's action for injunctive relief in Virginia court against two parents, seeking the return of erroneously produced attorney-client privileged documents containing confidential employee and student information.  (FAC ¶¶ 296-97).

***Failure to ensure accurate educational information is provided to parents***: HOV's unidentified members from Virginia (FAC ¶ 46).

***Delaying, limiting, and avoiding providing educational services***: report of one unnamed former teacher from unidentified time period (FAC ¶ 196); experience of two unnamed students from unidentified time periods (FAC ¶¶ 197-200); conclusory statements regarding the actions of "Virginia LEAs" generally and Prince William County specifically (FAC ¶¶ 206, 210-13). Opp'n. Br. at 33-34.

Put simply, Plaintiffs are asking this Court to accept legal conclusions couched as factual allegations without alleging any actual facts to support those conclusions. *See  Papasan v. Allain*, 478 U.S. 265, 286 (1986) (stating that on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").

Contemplating what evidence could be submitted as proof during a trial further establishes that Plaintiffs have not sufficiently alleged claims of systemic violations of the IDEA.  Unlike in

other IDEA "systemic" cases, Plaintiffs will not be presenting evidence about a *specific* policy or practice of the FCSB Defendants that results in systemic violations of the IDEA.  The FAC does not allege anything like the policy to delay implementation of related services that was at issue in the *R. A-G* case.  There, evidence that established the existence of such a policy could be deemed sufficient to prove a systemic violation of the IDEA precisely because such a policy results in a failure to make the individualized determinations required by the IDEA.  Here, Plaintiffs have not alleged the existence of some specific policy or practice that would result in systemic violations, regardless of the needs of individual students.  Instead, Plaintiffs allege that the FCSB Defendants have systemically not followed several requirements of the IDEA *at all* for each of the thousands of students with disabilities residing in Fairfax County.

To prove that the FCSB Defendants do not provide appropriate and timely educational services or do not conduct appropriate evaluations will require a review of thousands of student records to determine whether, in each individual case, appropriate services were provided and appropriate evaluations were conducted.  The resolution of those questions will be different for each of the thousands of students because the very nature of an *individualized* educational program is that not all students will require the same services and evaluations.  Although not providing one student with an evaluation *may* be a violation of the IDEA, it may not be for hundreds or thousands of other students.

The same is true for all of the other alleged "systemic" violations.  It is impossible to determine whether an individualized education program was appropriately developed and implemented without reviewing that particular IEP and determining whether it offered FAPE to the individual student.  It is impossible to determine whether appropriate procedural safeguards were provided without reviewing individual cases to determine what procedural safeguards were

8

appropriate and whether they were provided.  It is impossible to determine whether accurate information was documented and provided to parents without reviewing what information was documented and provided to the parents of each individual student.  And it is impossible to determine whether individual education evaluations were improperly denied without reviewing every request for such an evaluation and the basis for granting or denying that request.

The FAC has offered nothing more than speculation and suspicion, has failed entirely to state a claim for relief of *systemic* violations, and therefore should be dismissed.[5]  *Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.") (citing 5 Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed. 2004) (stating that "the pleading must contain something more…than…a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")).

### III.   CLAIMS OF PLAINTIFFS D.C. AND THE CHAPLICKS HAVE NOT BEEN EXHAUSTED

Claims under the IDEA that allege a denial of FAPE must be administratively exhausted prior to being brought before a federal court. *See Fry v. Napoleon Cmty. Schs.*, 580 U.S. 154, 170 (2017) (noting the IDEA's exhaustion requirement applies when the "gravamen of a complaint seeks redress for a school's failure to provide a FAPE"); 20 U.S.C. § 1415 (l). Plaintiffs do not dispute that the Chaplicks failed to exhaust their available administrative

---

[5] Counts V and VI of the FAC are claims of systemic violations of the IDEA and should be dismissed for failure to state a claim.  The failure to provide facts supporting systemic violations also supports dismissal of Counts I and II, purportedly alleging systemic violations of due process and equal protection, brought under Section 1983.  *See* additional discussion regarding Counts I and II in Section V below.

remedies regarding their disagreement with D.C.'s IEP. Moreover, Plaintiffs give no practical excuse as to why these administrative remedies were not pursued.

Instead, the Chaplicks seek to have their failure to exhaust excused by asking this Court to adopt a modified standard for the non-exhaustion of systemic claims that has not been recognized by the Court of Appeals for the Fourth Circuit. In the alternative, Plaintiffs assert that any attempts by the Chaplicks to exhaust their administrative remedies should be excused because they would have been futile based on subjective, self-serving conclusions of bias and flawed statistics against a particular hearing officer and indeed the entire pool of hearing officers in Virginia.

### A. The modified standard for exhaustion of systemic claims has not been recognized by the Court of Appeals for the Fourth Circuit.

In their Opposition Brief, Plaintiffs accuse Defendants of "attempt[ing] to apply a heightened pleading standard that does not exist." Opp'n. Br. at 1. Ironically, on the issue of exhaustion, it is the Plaintiffs who are asking this Court to apply precedent from other jurisdictions that has not been recognized in the Fourth Circuit and grant them a *lowered* standard to their own benefit. Absent binding precedent on this issue, this Court should decline to water down the exhaustion requirement required for IDEA litigation.

Plaintiffs insist that because their claims are "systemic" in nature, the Court should apply a lower standard of review on the futility exception to the administrative exhaustion requirement. Opp'n. Br. at 17.  In its Opposition, the Plaintiffs contend that "Courts in the Fourth Circuit and elsewhere" have recognized this lowered standard. Opp'n. Br. at 17. The only case from the Fourth Circuit cited for this sweeping assertion is an unreported district court opinion from 1995, *Pullen v. Botetourt County School Board*, No. CIV. 94-686-R, 1995 WL 738983 (W.D. Va. Feb. 13, 1995). In *Pullen*, the plaintiff did not allege systemic violations, nor was the Court required

to perform any analysis on that point. The line cited from that opinion by Plaintiffs is merely a recitation of a quotation from another Circuit that is presented by the Court in its broad examination of IDEA exhaustion case law—it is not commented upon or used in further analysis by the Court. *Id.* at *2. The Plaintiffs have taken this single line of dicta and inflated it to conclude that the lowered standard of exhaustion for systemic claims has been recognized in the Fourth Circuit.

In a further attempt to cobble together supporting precedent, Plaintiffs then cite to the Supreme Court case of *Honig v. Doe*, 484 U.S. 305 (1988), which, like *Pullen*, does not involve the Court engaging in any kind of analysis or making any conclusions that systemic claims should be addressed in a special manner. Instead, the cited portion of the *Honig* case merely restates the futility exception to the general exhaustion requirement. *Id.* at 326-327.

Plaintiffs then leave the universe of purported binding precedent entirely and begin citing authority from other jurisdictions. The first of these cases is *Beth V. by Yvonne V. v. Carroll*, 87 F.3d 80 (3d Cir. 1996), a Third Circuit decision that recognizes a modified standard of futility for systemic claims.[6] The Court should decline to follow the conclusions reached in this case as it has in the past. This same case was specifically examined by this Court in *Virginia Office of Protection and Advocacy v. Virginia Department of Education*, 262 F. Supp. 2d 648 (2003). There, in analyzing the plaintiff's arguments for a broad reading of the rights of action created by the IDEA, this Court rejected the Third Circuit's conclusions that systemic claims entitle plaintiffs to special rules not normally found in IDEA litigation. *Id.* at 659 n.4.

---

[6] The standard adopted in *Beth V.* is that "plaintiffs *may* . . . be excused from the pursuit of administrative remedies where they allege systemic legal deficiencies and, correspondingly, request system-wide relief that cannot be provided (or even addressed) through the administrative process." *Beth V.*, 87 F.3d at 89 (emphasis added).

These attempts at misdirection aside, it should be stated plainly: the Plaintiffs are asking this Court to adopt a modified standard for the futility exception that has not previously been recognized in this Circuit. The Court of Appeals for the Fourth Circuit has never found this proposed exception in its decades of review of IDEA litigation, and this Court should not do so now.

In any event, as discussed in Section II above, Plaintiffs have failed to state a claim for systemic relief.  Therefore, even if this Court were inclined to adopt a modified standard for futility when systemic claims are at issue, the allegations in this case do not support the application of such a standard.

**B.   Plaintiffs fail to meet their burden of proving futility as an excuse for the Chaplicks not exhausting available administrative procedures.**

The Chaplicks availed themselves of a due process hearing in 2015 and apparently were able to present a thorough and sophisticated case.  FAC at ¶¶ 106-109. Although they were not satisfied with the results of that process, clearly, they were aware of the procedures and indeed had the wherewithal to seek relief through the administrative process again in a future dispute regarding D.C.'s IEP. When they were dissatisfied with D.C.'s IEP placement in the 2020-2021 school year, the Chaplicks again requested a due process hearing, but chose to withdraw their complaint after their motion to recuse the hearing officer was denied. FAC ¶¶ 122-31.  Now, retroactively, Plaintiffs attempt to characterize this decision not as a choice made by the Chaplicks, but rather an excused withdrawal from the IDEA's administrative procedures based on the mere assumption that the administrative process would have been futile. The entirety of this futility argument hinges on the Plaintiffs' naked assertion that the assigned hearing officer and any other available hearing officer in the Commonwealth would have been so biased that a

12

fair hearing was impossible. Even under the motion to dismiss standard, this argument is inadequate to excuse the Chaplicks' refusal to exhaust the IDEA administrative procedures.

The plaintiff bears the burden of proving the applicability of the futility exception to the general exhaustion requirement. *Z.G. v. Pamlico Cnty. Pub. Sch. Bd. of Educ.*, 744 F. App'x 769, 777 (4th Cir. 2018). Although there appears to be no history in the Fourth Circuit of a court doing so, case law does suggest that an extreme case of hearing officer bias could implicate the futility of bringing a case before them. *See K.I. v. Durham Pub. Sch. Bd. of Educ.*, No. 1:19CV857, 2020 WL 3512213, at *6 (M.D.N.C. June 29, 2020), *aff'd*, 54 F.4th 779 (4th Cir. 2022) ("Though Plaintiffs have not identified—and the Court has not located—a Fourth Circuit opinion stating as much, IDEA case law suggests that a hearing officer could be so biased in favor of local or state educational authorities as to make administrative exhaustion futile.") Still, hearing officers "enjoy a presumption of honesty and integrity that can only be overcome by a clear showing of actual bias." *Id.* And Plaintiffs hardly come close to alleging facts supporting an extreme case.

Instead, the Plaintiffs predominantly rely on the fact that they did not receive the ruling they feel they were entitled to receive from this same hearing officer in 2015. They further cite their subjective and self-serving assessment of the quality and quantity of evidence presented in their 2015 case and the fact that their attorney was so upset that he lost the case that he wrote a letter of complaint to a supervisor at VDOE. FAC ¶¶ 107, 109, 110-111. These are not legitimate factual proof points of bias. Rather they are the predictable hard feelings internalized by litigants against a tribunal after a decision did not go their way. The IDEA provides a procedural process for litigants who disagree with an administrative decision. The Chaplicks could have sought

judicial review in either federal or state court.  20 U.S.C. § 1415(i)(2); Va. Code § 22.1-214. They chose not to do so.

Plaintiffs then fast-forward to 2021 and seek to use the denial of their recusal motion as further evidence of the hearing officer's bias. FAC ¶ 124.  There is a degree of circular logic in requiring a hearing officer to prove that they are not biased by granting a motion that accuses them of being biased. Regardless, Plaintiffs again fall back on their own subjective conclusion that their recusal motion was logical, factually supported, and persuasive as proof that only a biased hearing officer would deny it. This is not factual proof of bias. Plaintiffs then cite "open hostility toward counsel" but only get as specific in this allegation as noting that the hearing officer interrupted counsel. FAC ¶ 131.  Even in the aggregate and taken in the best light for the Plaintiffs, none of these subjective allegations comes close to meeting the standard of "a clear showing of bias" by the hearing officer. *K.I.*, 2020 WL 3512213, at *6.

After this recusal motion was denied, the Chaplicks withdrew from the due process proceeding and sought no further administrative remedies. Had they gone forward with the due process hearing and had they not prevailed, they could have sought judicial review of the substantive decision as well as their recusal motion. In that suit, a court would have reviewed the entire administrative record and even considered any further evidence that the Chaplicks could have presented. *See E.L. ex rel. Lorsson v. Chapel Hill Carrboro Bd. of Educ.*, 773 F.3d 509, 516-17 (4th Cir. 2014) (noting that under the IDEA, a reviewing court receives the full record of the administrative proceeding, can hear additional evidence, and conducts a *de novo* review). Instead, the Chaplicks now ask this Court to review the recusal issue not with an official record, but rather with only their own conclusory allegations that the denial of the motion was "inexplicable." Opp'n. Br. at 20. This situation is exactly why the exhaustion requirement exists

in the first place. Clear procedures exist under the IDEA that allow either a state or federal court the opportunity to consider the entirety of the administrative record, hear all evidence the parties think is persuasive, and issue rulings on the merits of the controversy presented.

In a further effort to meet their burden of proving actual bias, Plaintiffs cite flawed statistics that are the work product of the named Plaintiffs and allege a state-wide conspiracy between hearing officers and VDOE.[7] Although the Court is required to take Plaintiffs allegations as true at this stage, the Court is not required to join the Plaintiffs in making implausible conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that the "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully") (citations omitted).

## IV.   CLAIMS OF PLAINTIFFS M.B. AND THE BINGHAMS ARE DUPLICATIVE OF CLAIMS IN ANOTHER PENDING ACTION

Federal courts are charged to follow "the general principle . . . to avoid duplicative litigation." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). The Binghams are already litigating their same complaints about M.B.'s IEP process and placements and an alleged denial of FAPE under the IDEA that they outline in the FAC.  FAC ¶ 37.

Claims are duplicative when there are "no significant differences between the claims, parties, and available relief in the two suits." *Krakauer v. Dish Network, LLC*, No. 1:14-CV-333, 2017 WL 4417957, at *5 (M.D.N.C. Oct. 3, 2017); *see also New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am.*, 946 F.2d 1072, 1073 (4th Cir. 1991).

---

[7] As noted in the FCSB Defendants' memorandum in support its motion to dismiss, the FCSB Defendants dispute the accuracy of the purported statistics, as well as the underlying data.  FCSB Op. Brief at 7, fn.4.  However, even taken as true, the statistics do not necessarily support the conclusions that Plaintiffs draw.  *See* FCSB Br. at 7.

Here, there is no significant difference between the factual allegations recited in the FAC and those currently pending before another judge in this Court, seeking review of the due process hearing officer's findings in an administrative proceeding brought by the Binghams. In fact, the factual allegations are nearly identical. The basic allegations that M.B. was denied FAPE by FCPS and that a hearing officer erred in denying administrative relief are at the heart of both cases.  *See* Complaint, *M.B. v. Fairfax Cnty. Sch. Bd.*, Case No.  22-cv-00930 (E.D. Va. Aug. 24, 2022) ECF No. 5.

As discussed in Section II above, the FAC in this second-filed suit fails to state a claim for systemic violations against the FCSB Defendants, leaving only the individual claims of M.B. and his family.  Even if this Court determines that Plaintiffs have properly alleged new systemic claims regarding Virginia's statutory and regulatory system of implementing the IDEA, the FCSB Defendants are not proper parties to such claims, which would need to be remedied by either the Virginia legislature or the VDOE. So, even though VDOE is a "new party" in this case, that does not affect the substantial similarity of the claims in the two cases against the FCSB.

This Court should exercise its discretion and dismiss the Binghams' claims against FCPS as duplicative. "In fashioning a remedy, courts balance the interests of judicial economy and avoiding vexatious litigation against the plaintiff's interest in bringing the second suit." *Brightview Grp., LP v. Glynn*, No. CV SAG-21-3027, 2022 WL 743937, at *12 (D. Md. Mar. 11, 2022) (internal quotations omitted). Here, the Plaintiffs seek to litigate the same complex, factually-specific claims regarding M.B.'s IEP before the same Court on two separate occasions—the very opposite of efficient judicial process and requires a significant investment of taxpayer resources by the FCSB to defend each suit.

16

The Binghams' interest in bringing this second suit is clear—they want two bites at the apple. If this case is allowed to proceed and the Binghams do not obtain a favorable outcome in the already-filed case, or if that case remains unresolved as this case proceeds, they will be afforded a second chance to litigate the same issues against the same defendant. This Court should not allow the Binghams this inappropriate privilege.

## V.   PLAINTIFFS FAILED TO STATE A CLAIM FOR RELIEF UNDER SECTION 1983

Plaintiffs misunderstand the FCSB Defendants' arguments in support of dismissal of claims against Dr. Reid. Dr. Reid is not a proper party to claims challenging a failure to provide a FAPE under the IDEA.[8] Claims attempted against Dr. Reid are really claims against the School Board, the entity by which she is employed. *Kentucky v. Graham,* 473 U.S. 159, 165-66 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, *in all respects,* other than name, to be treated as a suit against the entity.") (emphasis added); *Monell v. N.Y.C. Dep't. Soc. Servs.,* 436 U.S. 658, 690, n.55 (1978). The real party in interest is the entity—here, the School Board. *Brandon v. Holt,* 469 U.S. 464, 471-72 (1985). Accordingly, Counts I and II should be treated as counts against the School Board.

In any event, Counts I and II should be dismissed because they are an attempt to circumvent the required statutory provisions of the IDEA. In *Sellers v. School Board of City of Manassas*, 141 F.3d 524, 529 (4th Cir. 1998), the Court of Appeals for the Fourth Circuit held that parties may not proceed on Section 1983 claims for IDEA violations "because the IDEA provides a

---

[8] It should also be noted that Dr. Reid, as alleged by the Plaintiffs, assumed her position as superintendent effective July 1, 2022. FAC ¶ 51.

comprehensive remedial scheme for violations of its own requirements." *Sellers* is dispositive.[9] Plaintiffs argue that *Sellers* does not apply because they are not currently seeking monetary damages.  But that is of no import.  Regardless of whether plaintiffs at this time seek monetary damages, it cannot be disputed that such relief is recoverable under Section 1983.

Additionally, even though Plaintiffs frame the Section 1983 claims as due process and equal protection violations, they are in fact challenges to the provisions of the FAPE required by the IDEA.  When the basis for the claim is a challenge to FAPE, Plaintiffs must proceed under the IDEA process, and cannot circumvent that process by reframing the claims as Section 1983 claims. *Sellers* at 529-32.  Accordingly, Counts I and II of the FAC should be dismissed.[10]

## VI.    PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR CLASS-WIDE RELIEF

Class claims may be dismissed pursuant to a rule 12(b)(6) motion when "it is apparent on the face of the complaint that [plaintiffs] cannot satisfy the requirements of Rule 23." *In re McCormick & Co.*, 217 F. Supp. 3d 124, 140 (D.D.C. 2016) (citing *McCrary v. Stifel, Nicolaus, & Co.*, 687 F.3d 1052, 1059 (8th Cir. 2012); *Pilgrim v. Universal Health Card, LLC*, 660 F.3d

---

[9] The plaintiffs in *Sellers* claimed two violations of the IDEA:  failure to evaluate and failure to provide special education services during a specific school year, thus denying their child a FAPE. *Id.* at 526.

[10] Additionally, Plaintiffs have failed to set forth any facts that would support a claim that Dr. Reid (or the FCSB) has systemically denied due process or equal protection rights of students with disabilities within Fairfax County.  There are no facts alleged to support a claim that the FCSB Defendants had any role in "create[ing] a system of sham proceedings in which outcomes are predetermined."  Opp'n. Br. at 39.  Nor are there any allegations to support how the FCSB Defendants have any liability resulting from "due-process hearing officers [that are] hand-selected by VDOE [and] strongly biased against families and their children with disabilities." Opp'n. Br. at 40.  Finally, as discussed in Section II above, the FAC does not allege facts sufficient to support a claim that the FCSB Defendants systemically "deprive students with disabilities of educational services and procedural protections that those children need to obtain an appropriate public education."  Opp'n. Br. at 43.

943, 947-49 (6th Cir. 2011); *John v. Nat'l Sec. Fire & Cas. Co*, 501 F.3d 443, 445 (5th Cir.

2007))*. Contrary to Plaintiffs' arguments, this suit does not have the capacity to provide "class-wide" relief to "[a]ll current [FCPS] students with disabilities aged 3 to 21 residing in Fairfax County who have requested or received an evaluation for special education and related services, under the IDEA and their parents" by generating common answers to questions that could drive resolution of this litigation.  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ; *D.L. v. Dist. of Columbia*, 713 F.3d 120, 124-25 (D.C. Cir. 2013).

Rule 23 class actions are not an appropriate vehicle for resolving individual allegations challenging distinct decisions made by different persons who have been given substantial discretion, because such situations are the antithesis of a situation in which the resolution of a challenge to a single policy or practice may efficiently resolve multiple claims at once.  The detailed allegations related to M.B. and D.C.'s claims are enough to demonstrate this conclusion.

As discussed in more detail in Section II above, adjudication of such claims as described for this class would require review of highly individualized facts given the nature of the IDEA process and the *individualized* education program requirements. Students receive a "specially designed instruction" to meet the unique needs of" each child, at the heart of which is the IEP. *Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist.*, 580 U.S. 386, 390-91 (2017). The IEP is a "comprehensive plan" prepared by the "child's 'IEP team'. . . (which includes teachers, school officials, . . . parents) . . . and must be drafted in compliance with a detailed set of procedures." *Id.* at 391.  It is the IEP that directs the special education and related services for the individual child.  And the IEP must be "tailored to the unique needs" of a particular child."  *Id.*

Because resolution of the claims raised in the FAC cannot possibly generate common answers, the class claims should be dismissed.  *Parent/Pro. Advoc. League v. City of Springfield,*

934 F.3d 13, 22-23 (1st Cir. 2019) (IDEA litigation in which plaintiffs failed to satisfy commonality requirement of Rule 23(a)).

### VII.   CONCLUSION

Plaintiffs insist that the FAC does not present claims for individual relief, but rather claims for systemic violations requiring systemic relief.  However, the FAC utterly fails to allege any facts that would support systemic claims based on any law for relief against the FCSB Defendants.  Accordingly, the Fairfax County School Board and Superintendent Michelle Reid, by counsel, respectfully request that the Court dismiss with prejudice the First Amended Complaint and this action as to the FCSB Defendants, and such other relief as the Court may allow.

Respectfully submitted this 17th day of March, 2023.
**FAIRFAX COUNTY SCHOOL BOARD and DR. MICHELLE REID.**

By Counsel

_____/s/_____
Julia B. Judkins, VSB# 22597
Assistant Division Counsel
Fairfax County Public Schools
8115 Gatehouse Road
Falls Church, VA 22042
Telephone: 571-423-1035
Fax: 571-423-1257
jbjudkins@fcps.edu
*Counsel for the FCSB Defendants*

Jeanne-Marie Burke, VSB#41820
Assistant Division Counsel
Fairfax County Public Schools
8115 Gatehouse Road
Falls Church, VA 22042
Telephone: 571-423-1035
Fax: 571-423-1257
jsburke@fcps.edu
*Counsel for the FCSB Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 17, 2023, I electronically filed the foregoing Reply Brief with the Clerk of Court using the CM/ECF system, which will accomplish service on all parties who have appeared by counsel.

/s/
Julia B. Judkins, VSB# 22597
Assistant Division Counsel
Fairfax County Public Schools
8115 Gatehouse Road
Falls Church, VA 22042
Telephone: 571-423-1035
Fax: 571-423-1257
jbjudkins@fcps.edu
*Counsel for the FCSB Defendants*
