**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| **D.C.,** *et al.*, | |
| **Plaintiffs,** | |
| **v.** | **Case No. 1:22-cv-01070** |
| **Fairfax County School Board,** *et al.* | |
| **Defendants.** | |

**REPLY IN SUPPORT OF VDOE DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT
<u>UNDER RULES 12(b)(1) AND 12(b)(6)</u>**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................... iii

INTRODUCTION .................................................................................................... 1

ARGUMENT .......................................................................................................... 2

    I.    Plaintiffs Lack Standing ............................................................................... 2

        A.    The Individual Plaintiffs Lack Standing for Prospective Relief ................ 2

            1.    The Individuals Cannot Meet the Requirement of Certainly Impending Injury .................................................................... 2

            2.    The Individuals Allege No Ongoing Injury Redressable by the Requested Relief ............................................................. 3

        B.    HOV Lacks Standing ...................................................................... 3

            1.    HOV Lacks Representational Standing Because Its Member Plaintiffs Lack Individual Standing and Require Individualized Litigation ..................................................... 3

            2.    HOV Lacks Organizational Standing Because It Is Not Harmed by Continuing to Spend Resources on Its Principal Mission, Advocacy ..................................................... 4

    II.    Plaintiffs State No Claim ............................................................................ 6

        A.    The Failure to Exhaust D.C. and His Parents' Administrative Remedies Bars Their Claims ......................................................... 6

            1.    Exhaustion Is Required for Claims against State Education Agencies ....................................................................... 6

            2.    There Is No "Systemic" Exception to Exhaustion Here ................ 7

            3.    "Vicarious Exhaustion" is Not Applicable ..................................... 8

        B.    The First-to-File Rule Bars M.B.'s Claim in the Same Court ..................... 9

i

C.      Plaintiffs Knowingly and Intentionally Waived the Arguments They Seek to Raise in this Lawsuit By Either Failing to Request a Due Process Hearing or Failing to Raise the Arguments in this Lawsuit in Any Due Process Hearing ..................................................................10

D.      D.C. is Collaterally Estopped from Pursuing his Claims Because D.C. Still Relies on His 2015 Due Process Hearing to Assert his Claims Against VDOE .................................................................................11

E.      Plaintiffs May Not Veil their IDEA claims as Constitutional Claims under 42 U.S.C. § 1983 ....................................................................12

F.      Plaintiffs Received Ample Due Process ...................................................12

G.      Plaintiffs Fail to State an Equal Protection Claim ...................................13

    1.      Plaintiffs Fail to Establish They Were Treated Differently from Any Other Similarly Situated Person ....................................13

    2.      Plaintiffs Fail to Demonstrate That VDOE Acted with Animus ..........................................................................................14

    3.      Strict Scrutiny Does Not Apply to Plaintiffs' Claims, and Plaintiffs' Claims Do Not Survive Rational Basis Review ..........15

H.      Plaintiffs Fail to State an IDEA Claim ....................................................16

    1.      Plaintiffs Solely Allege Procedural Violations of the IDEA .........16

    2.      The Plaintiffs Fail to Assert Any Violation of VDOE's Duties Under the IDEA ..................................................................17

I.      The Class Allegations Cannot Survive Rule 23 ........................................18

CONCLUSION ....................................................................................................................20

CERTIFICATE OF SERVICE ............................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*A.B. ex rel. D.B. v. Lawson*,
  354 F.3d 315 (4th Cir. 2004) ........................................................................................17

*A.J. v. Bd. of Educ.*,
  679 F. Supp. 2d 299 (E.D.N.Y. 2010) ...........................................................................20

*Albemarle Paper Co. v. Moody*,
  422 U.S. 405 (1975)........................................................................................................9

*Andreana v. Va. Beach City Pub. Sch.*,
  No. 2:17-cv-574, 2019 U.S. Dist. LEXIS 22941 (E.D. Va. Feb. 11, 2019) ................. 9-10

*Bills v. Va. Dep't of Educ.*,
  605 F. Supp. 3d 744 (W.D. Va. 2022) ......................................................................6, 7, 8

*Camac v. Long Beach City Sch. Dist.*,
  No. 09 CV 5309 (DRH) (ARL),
  2011 U.S. Dist. LEXIS 79997 (E.D.N.Y. July 22, 2011) .................................................13

*Capuano v. Fairfax Cnty. Pub. Bd.*,
  No. 1:13-cv-00568-GBL-TRJ,
  2013 U.S. Dist. LEXIS 155750 (E.D. Va. Oct. 29, 2013)................................................11

*Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.*,
  587 F.3d 176 (3d Cir. 2009)...........................................................................................12

*Deal v. Mercer Cnty. Bd. of Educ.*,
  911 F.3d 183 (4th Cir. 2018) ...........................................................................................3

*Defs. of Wildlife v. Boyles*,
  608 F. Supp. 3d 336 (D.S.C. 2022)..................................................................................6

*Elson v. Black*,
  56 F.4th 1002 (5th Cir. 2023) ........................................................................................19

*Endrew F. v. Douglas Cnty. Sch. Dist. RE-1*,
  580 U.S. 386 (2017).......................................................................................................13

*EQT Prod. Co. v. Adair*,
  764 F.3d 347 (4th Cir. 2014) .........................................................................................20

*Fry v. Napoleon Cmty. Suhs.*,
    580 U.S. 154 (2017)...........................................................................................7

*Gadsby by Gadsby v. Grasmick*,
    109 F.3d 940 (4th Cir. 1997) ..........................................................................18

*Goss v. Lopez*,
    419 U.S. 565 (1975)...................................................................................12, 13

*Greece v. N.J. Dep't of Educ.*,
    No. 06-CV-4077 (PGS), 2007 WL 1876498 (D.N.J. June 27, 2007)............................ 7-8

*Griffin v. Dep't of Labor Fed. Credit Union*,
    912 F.3d 649 (4th Cir. 2019) ............................................................................2

*Hanover Cnty. Unit of the NAACP v. Hanover Cnty.*,
    461 F. Supp. 3d 280 (E.D. Va. 2020) ..................................................................4

*Hernandez v. Grisham*,
    508 F. Supp. 3d 893 (D.N.M. 2020) ..................................................................14

*Hosemann Bros. v. Cont'l Cas. Co.*,
    No. 4:16cv187, 2017 U.S. Dist. LEXIS 58491 (E.D. Va. Apr. 17, 2017)........................10

*In re Int'l Bus. Machines Corp.*,
    618 F.2d 923, 930 (2d Cir. 1980)................................................................. 14-15

*Int'l Woodworkers of Am. v. Chesapeake Bay Plywood Corp.*,
    659 F.2d 1259 (4th Cir. 1981) ........................................................................19

*J.N. v. Or. Dep't of Educ.*,
    338 F.R.D. 256 (D. Or. 2021) ............................................................................2

*Jarboe v. Md. Dep't of Pub. Safety & Corr. Servs.*,
    Civ. Action No. ELH-12-572, 2013 WL 1010357 (D. Md. Mar. 13, 2013).......................9

*Jefferson v. Sch. Bd. of Norfolk*,
    No. 2:10-cv-316, 2010 WL 11527350 (E.D. Va. Nov. 18, 2010) .................................4

*K.A. ex rel. F.A. v. Fulton Cnty. Sch. Dist.*,
    741 F.3d 1195 (11th Cir. 2013) .......................................................................12

*K.I. v. Durham Pub. schuss. Bd. of Educ.*,
    No. 1:19CV857, 2020 WL 3512213 (M.D.N.C. June 29, 2020), *aff'd*,
    54 F.4th 779 (4th Cir. 2022) ............................................................................8

iv

*K.J. ex rel. B.J. v. Fairfax Cnty. Sch. Bd.*,
    361 F. App'x 435 (4th Cir. 2010) ....................................................................16

*Kilorad v. Westhampton Beach Sch. Dist.*,
    No. 20-CV-4121(JS)(SIL),
    2022 U.S. Dist. LEXIS 52169 (E.D.N.Y. Mar. 22, 2022) ......................... 13-14

*King v. McMillan*,
    233 F. App'x 242 (4th Cir. 2007) ....................................................................9

*Know Your IX v. DeVos*,
    Civ. Action No. RDB-20-01224,
    2020 U.S. Dist. LEXIS 194288 (D. Md. Oct. 20, 2020) ....................................5

*Kravitz v. Dep't of Commerce*,
    366 F. Supp. 3d 681 (D. Md. 2019) ...............................................................6

*Lane v. Holder*,
    703 F.3d 668 (4th Cir. 2012) ........................................................................6

*Lee v. Va. State Bd. of Elections*,
    188 F. Supp. 3d 577 (E.D. Va. 2016) ...........................................................6

*M.C. by & through M.N. v. Antelope Valley Union High Sch. Dist.*,
    858 F.3d 1189 (9th Cir. 2017) .....................................................................11

*Mathews v. Eldridge*,
    424 U.S. 319 (1976) ...................................................................................12

*McArthur v. Brabrand*,
    No. 1:21-cv-1435 (LMB/IDD), 2022 WL 2528263 (E.D. Va. July 7, 2022) ...................15

*McMillen v. New Caney Inda. Sch. Dist.*,
    939 F.3d 640 (5th Cir. 2019) ........................................................................8

*Meeropol v. Nicer*,
    505 F.2d 232 (2d Cir. 1974) .......................................................................10

*Parent/Pro. Advice. League v. City of Springfield*,
    934 F.3d 13 (1st Cir. 2019)....................................................................4, 19

*Pullen v. Botetourt Cnty. Sch. Bd.*,
    No. CIV. 94-686-R, 1995 WL 738983 (W.D. Va. Feb. 13, 1995) .....................7

*R.F. by & through E.F. v. Cecil Cnty. Pub. Sch.*,
    919 F.3d 237 (4th Cir. 2019) .....................................................................16

v

*Ratana v. Patchogue-Medford Sch. Dist.*,
No. 06-CV-5367 (JFB) (ARL),
2009 U.S. Dist. LEXIS 23731 (E.D.N.Y. Mar. 20, 2009) ................................................. 14

*S. Walk at Broadlands Homeowner's Assn's v. OpenBand at Broadlands, LLC*,
713 F.3d 175 (4th Cir. 2013) ...................................................................................... 3-4

*Scott v. Commonwealth*,
443 S.E.2d 138 (Va. 1994) ............................................................................................. 15

*SECSYS, LLC v. Vigil*,
666 F.3d 678 (10th Cir. 2012) ...................................................................................... 14

*Sellers v. Sch. Bd. of Manassas*,
141 F.3d 524 (4th Cir. 1998) ........................................................................................ 12

*Simpson-Vlach v. Mich. Dep't of Educ.*,
No. 21-CV-11532, 2022 WL 2910184 (E.D. Mich. July 22, 2022) ................................. 2

*T.B., Jr. by & through T.B., Sr. v. Prince George's Cnty. Bd. of Educ.*,
897 F.3d 566 (4th Cir. 2018) ........................................................................................ 16

*Thomas v. Salvation Army S. Terr.*,
841 F.3d 632 (4th Cir. 2016) .......................................................................................... 2

*Va. Animal Owners All. v. Herring*,
543 F. Supp. 3d 302 (E.D. Va. 2021) ........................................................................ 2, 3

*Wallerstein v. Dole Fresh Vegetables, Inc.*,
967 F. Supp. 2d 1289 (N.D. Cal. 2013) ......................................................................... 9

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ...................................................................................................... 19

*Walton v. Eaton Corp.*,
563 F.2d 66 (3d Cir. 1977) .............................................................................................. 9

*Washington v. Davis*,
426 U.S. 229 (1976) ...................................................................................................... 17

**STATUTES**

42 U.S.C. § 1983 ......................................................................................................12

8 Va. Admin. Code § 20-81-110 ...........................................................................18

8 Va. Admin. Code § 20-81-210 ...........................................................................17

**REGULATION**

34 C.F.R. § 300.28 .................................................................................................18

**RULE**

Fed. R. Civ. P. 23 ..........................................................................................1, 18, 19

**OTHER AUTHORITY**

1 McLaughlin on Class Actions § 3:4 (19th ed.) ...............................................19

## INTRODUCTION

This lawsuit seeks to convert the dissatisfaction of two families with the free appropriate public education ("FAPE") they were offered under the Individuals with Disabilities Education Act ("IDEA") in one particular local education agency ("LEA"), Fairfax County Public Schools ("FCPS"), into a class action attack on the administrative process for all LEAs in Virginia.  But their cherry-picked statistics cannot plausibly show the asserted conspiracy among Virginia's administrative hearing officers.  And their remaining allegations improperly try to pin the blame for local functions on a state agency.  The First Amended Complaint ("FAC") should be dismissed for at least four reasons, none of which Plaintiffs have rebutted.

*First*, Plaintiffs still fail to show Article III standing.  The individuals assert only past injuries that do not warrant (and would not be redressed by) the prospective relief they seek.  And Plaintiff Hear our Voices, Inc. ("HOV") cannot gin up standing by spending money on its principal mission.

*Second*, D.C. failed to exhaust administrative remedies.  Plaintiffs ask this Court to import a host of exceptions to that bedrock requirement, but none are supported by Fourth Circuit law.

*Third*, Plaintiffs' claims fail on the merits because they allege no plausible systemic bias by hearing officers, no IDEA violations for which the Virginia Department of Education ("VDOE") is responsible, and no plausible constitutional violation.  And their claims are procedurally barred to boot.

*Fourth*, the asserted claims have patent Rule 23 defects, and Plaintiffs offer no plausible explanation how discovery or further proceedings could cure them.[1]

---

[1] Effective March 9, 2023, Ms. Balow resigned as Superintendent of Public Instruction.

## ARGUMENT

### I.     Plaintiffs Lack Standing.

#### A.     The Individual Plaintiffs Lack Standing for Prospective Relief.

##### 1.     The Individuals Cannot Meet the Requirement of Certainly Impending Injury.

Fatal to the individuals' standing is the Article III standard for prospective relief: "[A]n injury should be 'certainly impending' to serve as the basis for standing in a suit for injunctive relief." *Griffin v. Dep't of Labor Fed. Credit Union*, 912 F.3d 649, 655 (4th Cir. 2019); *accord Thomas v. Salvation Army S. Terr.*, 841 F.3d 632, 638 (4th Cir. 2016).  Plaintiffs do not even contend they meet that standard.  Opp. at 9-10.

Plaintiffs assert that there are "widespread and recurring violations," *id.* at 10, but do not try to show how those violations *will* injure *these* Plaintiffs.  Their only explanation concerns how these individuals allegedly "suffered injury" from *past* proceedings.  *Id.*  And they have not even purported to have plans to request any future due process hearings.  MTD at 8-9.  So they seek prospective relief in vain based "only on events that occurred in the past."  *Va. Animal Owners All. v. Herring*, 543 F. Supp. 3d 302, 311-12 (E.D. Va. 2021) (internal quotation marks omitted).

Plaintiffs' suggestion that alleged "state-wide violations of the IDEA . . . against state defendants like VDOE" somehow categorically provide standing is incorrect.  Opp. at 10; *see, e.g.*, *Simpson-Vlach v. Mich. Dep't of Educ.*, No. 21-CV-11532, 2022 WL 2910184, at *11 (E.D. Mich. July 22, 2022) (plaintiffs alleging systemic IDEA violations by a state education agency lacked standing).  And the case Plaintiffs cite says nothing of the sort.  *See J.N. v. Or. Dep't of Educ.*, 338 F.R.D. 256, 273 (D. Or. 2021).  To the contrary, *J.N.* turns on the key future-facing allegation missing here: that the plaintiffs *themselves* face "a significant risk of future FAPE denials."  *Id.*

Without that allegation, Plaintiffs are "no more entitled to an injunction than any other citizen." *Va. Animal Owners All.*, 543 F. Supp. 3d at 312 (citation and internal quotation marks omitted).

### 2.   The Individuals Allege No Ongoing Injury Redressable by the Requested Relief.

Unable to meet the applicable "certainly impending" standard, Plaintiffs argue they alleged an "ongoing" injury.  Opp. at 9.  But they do not allege any ongoing injury that would be redressed by the prospective relief they seek.  *See Deal v. Mercer Cnty. Bd. of Educ.*, 911 F.3d 183, 189 (4th Cir. 2018) (requiring plaintiffs to "show that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision") (citation and internal quotation marks omitted).

Plaintiffs' theory of ongoing injury hinges on due process hearings.  Plaintiffs assert that deficiencies in due process hearings "injure them" by, for example, "depriving children of the free full, initial evaluation" and relief that would be available "through adequate due process hearings," such as increased payment for services under the IDEA.  Opp. at 9.  They allege the prospective relief they seek would change those due process hearings going forward.  FAC ¶¶ 335, 337, 342.

At best, those allegations might allow standing for someone who would actually benefit from a due process hearing and presuppose the result of any such hearing.  But Plaintiffs concede they have no plans to request any future due process hearings.  MTD at 8-9.  Even if they had any ongoing injury, the individual Plaintiffs lack standing because they have not shown that "they personally would benefit in a tangible way from the court's intervention."  *Deal*, 911 F.3d at 189 (citation and internal quotation marks omitted).

### B.   HOV Lacks Standing.

### 1.   HOV Lacks Representational Standing Because Its Member Plaintiffs Lack Individual Standing and Require Individualized Litigation.

HOV fares no better.  It cannot sue on its members' behalf because it fails two of the requirements for representational standing.  *See S. Walk at Broadlands Homeowner's Ass'n v.*

*OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013).  First, none of HOV's identified members have standing in their own right.  MTD at 9; Section I(A) *supra*.  Second, this lawsuit requires the participation of individual members.  MTD at 9-10.

Plaintiffs contest the second prong, insisting that since "HOV seeks to remedy systemic issues," individual members need play no role.  Opp. at 14.  Not so.  Courts routinely hold that organizations lack representative standing to sue over purported systemic issues where (as here) "the fact and extent of the injury that gives rise to the claims for injunctive relief would require individualized proof."  *Hanover Cnty. Unit of the NAACP v. Hanover Cnty.*, 461 F. Supp. 3d 280, 289 (E.D. Va. 2020) (quoting *Jefferson v. Sch. Bd. of Norfolk*, No. 2:10-cv-316, 2010 WL 11527350, at *3 (E.D. Va. Nov. 18, 2010)); MTD at 9-10.  That organizational standing problem is acute in this IDEA context, where the litigation will turn on questions of *individualized* disabilities and education plans.  *See Parent/Pro. Advoc. League v. City of Springfield*, 934 F.3d 13, 35 (1st Cir. 2019) (rejecting organizational standing because "adjudication of the [IDEA] claims here would turn on facts specific to each student, including unique features of each student's unique disability, needs, services, and placement").  The IDEA's administrative exhaustion requirement would make it even more inappropriate for HOV to lead the charge here on behalf of unexhausted claims.  *See id.* at 34 ("[I]t would not make sense to allow the organizations here to escape the exhaustion requirement for the students they are purportedly representing").

## 2. HOV Lacks Organizational Standing Because It Is Not Harmed by Continuing to Spend Resources on Its Principal Mission, Advocacy.

Nor does HOV have organizational standing to sue on its own behalf.  MTD at 10-11.  HOV's theory of direct standing boils down to asserting that the government did something HOV is organizationally opposed to, so now HOV feels compelled to reallocate resources to fix

4

it.  Opp. at 11-12.  But that theory would mean carte blanche standing for advocacy organizations and would render Article III's injury-in-fact requirement illusory.

HOV hangs its organizational standing on the notion that its reallocation of resources is "involuntary."  *See id.* at 11 (claiming an "involuntary diversion of its resources"); *id.* at 12 (asserting that "HOV has no choice but to invest significant time and money").  But that assertion is both implausible and hopelessly conclusory.  Even if HOV is within its rights to prioritize investigations, Freedom of Information Act requests and media campaigns for IDEA issues in the Commonwealth, *see id.* at 12, those are the sorts of pursuits HOV engages in anyway. *See id.* at 11; *see also Know Your IX v. DeVos*, Civ. Action No. RDB-20-01224, 2020 U.S. Dist. LEXIS 194288, at *19 (D. Md. Oct. 20, 2020) ("If this Court were to allow a party whose organizational mission is to engage in policy advocacy to claim injury on the basis of a need to engage in that exact activity, *any* advocacy group could find standing . . . .") (emphasis in original).  An organization's decision to prioritize an existing mission in response to a perceived need does not compromise that mission—and certainly not in a way that opens the door to federal court.

HOV does not allege that existing projects suffered because of an alleged reallocation of resources–it merely suggests there are other projects it would like to undertake.  *See* FAC ¶ 41 (HOV "[h]a[d] *started to form* a legislative drafting committee"); ¶ 42 ("HOV *had also initiated plans* to meet with key officials"); *id.* ("[a]nother core effort HOV *was beginning to explore* was expanding work with parents"); ¶ 43 ("HOV's efforts *also were to include seeking* commitments

from law schools") (emphases added).  Claiming postponement of an inchoate wish list is not a

ticket to federal court.[2]  Holding otherwise would open the floodgates of organizational standing.[3]

## II.      Plaintiffs State No Claim.

### A.      The Failure to Exhaust D.C. and His Parents' Administrative Remedies Bars Their Claims.

There is no dispute that D.C. and his parents did not exhaust their administrative

remedies.  That failure is fatal to all their claims.  MTD at 15-19.

#### 1.      Exhaustion Is Required for Claims against State Education Agencies.

First, Plaintiffs ask this Court to excuse the exhaustion requirement because a state agency

is a party.  But they offer no support from within the Fourth Circuit.  Opp. at 6.  Authority in this

Circuit rejects the idea that suing a state agency like VDOE excuses exhaustion.  In *Bills v. Virginia*

*Department of Education*, the court dismissed all claims regarding denial of FAPE because

plaintiffs failed to exhaust administrative remedies.  605 F. Supp. 3d 744, 755 (W.D. Va. 2022);

*id.* at 753 ("The exhaustion requirement applicable to the IDEA applies equally to *any and all*

*claims* challenging the denial of a FAPE.") (emphasis added).  The same result is warranted here.

---

[2] *Compare Defs. of Wildlife v. Boyles*, 608 F. Supp. 3d 336, 343 (D.S.C. 2022) (organization alleged a specific "mission-based project that has suffered"); *Kravitz v. Dept. of Commerce*, 366 F. Supp. 3d 681, 733 (D. Md. 2019) (organization "ha[d] diverted staff time away from advocacy and education around Texas Senate Bill 4"); *Lee v. Va. State Bd. of Elections*, 188 F. Supp. 3d 577, 584 (E.D. Va. 2016) (identifying specific forgone past campaign activities).
[3] HOV thus fails to distinguish this case from the controlling *Lane v. Holder*, 703 F.3d 668 (4th Cir. 2012).  *Lane* rejected standing for a similar organization that promoted "education, research, publishing and legal action" regarding gun rights.  703 F.3d at 671.  That organization claimed that Virginia and federal laws "caused it to expend resources in response."  *Id.*  But the Fourth Circuit held that "[t]o determine that an organization that decides to spend its money on educating members, responding to member inquiries, or undertaking litigation in response to legislation suffers a cognizable injury would be to imply standing for organizations with merely 'abstract concern[s] with a subject that could be affected by an adjudication.'"  *Id.* at 675 (alteration in original).  HOV thus lacks standing along with the individual Plaintiffs.

Plaintiffs demand an exception based on their contention that VDOE does not "administer the evaluations, develop the [individualized education plans ("IEP")], or evaluate students' progress." Opp. at 16. But "the unavailability of the specific relief sought in the administrative process does not render resort to the administrative process futile." *Bills*, 605 F. Supp. 3d at 754. Even assuming that VDOE does not have the authority to grant the specific relief, the Plaintiffs "are not excused from exhausting their administrative remedies just because the specific form of relief they are seeking would have been outside the authority of an administrative hearing officer to grant." *Id.* Accordingly, Plaintiffs cannot avail themselves of any futility exception.

**2.     There Is No "Systemic" Exception to Exhaustion Here.**

Second, Plaintiffs argue that exhaustion is futile because their claims comprise a "systemic challenge" and they allege "systemic bias." Opp. at 17-21. But there is no such exception in the Fourth Circuit. The Fourth Circuit has never recognized a "systemic exemption" to exhaustion requirements under the IDEA. In the sole case Plaintiffs rely upon from within this Circuit, the court *refused* to apply a systemic exemption – or any other exception to exhaustion – and dismissed plaintiff's IDEA claim for failure to exhaust administrative remedies. *Pullen v. Botetourt Cnty. Sch. Bd.*, No. CIV. 94-686-R, 1995 WL 738983, at *3 (W.D. Va. Feb. 13, 1995). Nor do Plaintiffs offer any authority for a "systemic bias" exception in this Circuit.

Even if the Fourth Circuit did recognize a "systemic exemption," Plaintiffs' attempt to avoid exhaustion through artful pleading must fail. In *Fry v. Napoleon Community Schools*, 580 U.S. 154, 170 (2017), the Supreme Court warned that parties bringing IDEA claims cannot "evade the [IDEA's] restrictions through artful pleading." (citation and internal quotation marks omitted). Here, Plaintiffs structured their FAC as a challenge to general "systemic" issues with respect to policies, rather than as a challenge to a Plaintiff's specific IEP formulated pursuant to these policies. But that technique of abstraction cannot excuse exhaustion. *See Grieco v. N.J. Dep't of*

*Educ.*, No. 06-CV-4077 (PGS), 2007 WL 1876498, at \*9 (D.N.J. June 27, 2007) ("[F]raming a complaint as a class action challenge to a general policy does not automatically convert the case into the kind of systemic violation that renders the exhaustion requirement inadequate or futile.").[4]

Nor have Plaintiffs made any plausible showing to satisfy any "systemic bias" exception.  Plaintiffs ask the Court to infer "systemic bias" based on the actions of a single hearing officer, Ms. Brooke-Devlin.  But Ms. Brooke-Devlin handled only *44 out of 395* due process hearings between 2010 and July 2021 (ECF No. 43-1 at 2), and more than 70% of those cases were withdrawn or settled, skewing the percentage of cases ruled in favor of the school district.  And Plaintiffs offer only conclusory allegations that her rulings were incorrect.  That does not establish bias, let alone "systemic bias."  *See K.I. v. Durham Pub. Sch. Bd. of Educ.*, No. 1:19CV857, 2020 WL 3512213, at \*7 (M.D.N.C. June 29, 2020), *aff'd*, 54 F.4th 779 (4th Cir. 2022) (declining to apply a "systemic bias" exemption where "[t]he substance of [the hearing officer's] opinion [was] inconsistent with [p]laintiffs' allegations that [the hearing officer] was so biased against [plaintiffs] that their appeal through proper administrative channels was futile . . . .").

### 3.   "Vicarious Exhaustion" is Not Applicable.

Third, Plaintiffs assert that their class claims were "vicariously exhausted" through M.B. and his parents.  Opp. at 32.  But again, they offer no authority from this Circuit allowing plaintiffs to "piggyback" IDEA class claims based on a different plaintiff's exhaustion.  Instead, Plaintiffs rely on cases applying employment laws or the Prison Litigation Reform Act of 1996, not the

---

[4] While attempting to distinguish caselaw adverse to Plaintiffs' position, Plaintiffs suggest that exhaustion requirements do not apply since they do not seek damages.  Opp. at 30.  Yet parties cannot "sidestep administrative procedures by simply drafting a civil complaint that requests [unavailable] relief."  *Bills*, 605 F. Supp. 3d at 754 (alteration in original) (citation and internal quotation marks omitted); *accord McMillen v. New Caney Indi. Sch. Dist.*, 939 F.3d 640, 648 (5th Cir. 2019) (plaintiff could not "subvert the procedures Congress designed for prompt resolution of [IDEA] disputes" "'merely by tacking on a request for money damages'").

IDEA. While vicarious exhaustion may be appropriate in those contexts where the law plainly permits vicarious exhaustion,[5] or where an administrative body is unable to handle the number of potential administrative claims,[6] there is no such allegation in this case. Class actions in the employment context invoke claims common to a class such as discrimination based on the same practice with respect to the same protected characteristic, or discrimination on the basis of race in pay or in hiring practices. For the reasons set forth in Section II(I), Plaintiffs have not shown that the claims of all the individuals comprising the class are substantially similar and collective in nature. *King*, 233 F. App'x at 244. There is no basis to expand the doctrine to this case.

   **B.    The First-to-File Rule Bars M.B.'s Claim in the Same Court.**

   M.B.'s claims should also be dismissed because this lawsuit duplicates the ongoing lawsuit in this same Court over the same IDEA claims. MTD at 20-21. Plaintiffs are wrong that the First-to-File rule applies only "when two cases are pending in two different fora." Opp. at 30. That rule is "not limited to cases brought in different districts." *Wallerstein v. Dole Fresh Vegetables, Inc.*, 967 F. Supp. 2d 1289, 1294 (N.D. Cal. 2013); *see also Walton v. Eaton Corp.*, 563 F.2d 66, 70 (3d Cir. 1977) (a plaintiff has "no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant"). Rather, when a plaintiff files an individual lawsuit and later joins a collective action in the same court, dismissal from the collective action is appropriate. *Andreana v. Va. Beach City Pub. Sch.*, No. 2:17-cv-574,

---

[5] *See Albemarle Paper Co. v. Moody*, 422 U.S. 405, 414 n.8 (1975) (recognizing that Congress ratified a construction of Title VII permitting backpay to be awarded "on a class basis under Title VII without exhaustion of administrative procedures by the unnamed class members.")

[6] *See, e.g.*, *King v. McMillan*, 233 F. App'x 242, 244 (4th Cir. 2007) (applying vicarious exhaustion where the court found it would be vain for employees with the same grievance "'to have to process many identical complaints with the EEOC'"); *Jarboe v. Md. Dep't of Pub. Safety & Corr. Servs.*, Civ. Action No. ELH-12-572, 2013 WL 1010357, at *15 (D. Md. Mar. 13, 2013) (applying vicarious exhaustion where the correctional agency's "grievance procedure simply [was] not equipped to address programmatic complaints such as those advanced here by plaintiffs").

2019 U.S. Dist. LEXIS 22941, at *9 (E.D. Va. Feb. 11, 2019) (applying the First-to-File doctrine to dismiss party's claim because her instant claim involved the same subject matter at the same time in the same court and against the same defendant as her earlier individual action). Otherwise two judges in the same court may reach different decisions on the same issue.

While Plaintiffs argue that "[t]here is not substantial similarity between this action and M.B.'s far more limited administrative appeal," the "actions being assessed" under the "first-to-file rule" "need not be identical if there is substantial overlap with respect to the issues and parties." *Hopeman Bros. v. Cont'l Cas. Co.*, No. 4:16cv187, 2017 U.S. Dist. LEXIS 58491, at *23-24 (E.D. Va. Apr. 17, 2017) (citations omitted); *see also Meeropol v. Nizer*, 505 F.2d 232, 235 (2d Cir. 1974). Because M.B. already has a pending lawsuit before this Court involving nearly identical factual allegations and subject matter, his claims should be dismissed under the First-to-File rule.

### C. Plaintiffs Knowingly and Intentionally Waived the Arguments They Seek to Raise in this Lawsuit By Either Failing to Request a Due Process Hearing or Failing to Raise the Arguments in this Lawsuit in Any Due Process Hearing.

Plaintiffs' claims should be dismissed because D.C. never requested a due process hearing, and M.B. never raised these arguments in his due process hearing.[7] MTD at 19. Plaintiffs argue that waiver cannot apply "because the scope and details of those hearings is not evident from the face of the FAC." Opp. at 26. However, the FAC summarizes the arguments M.B. made at his due process hearings and in related federal court proceedings. FAC ¶¶ 17-37. Plaintiffs acknowledge that they did not raise in a due process hearing any arguments made in this case by alleging that bringing such claims would be futile. *Id.* ¶¶ 187-191.

---

[7] To the extent that Plaintiffs argue that M.B. could not have raised these arguments in a due process hearing because of the bias of the hearing officer, it is undisputed that M.B. did not ask the hearing officer to recuse themself.

Although Plaintiffs argue that M.B. could not "voluntarily or intentionally relinquish claims in a due process hearing when his claims arise, in part, from what happened during that hearing," their reliance on *M.C. by & through M.N. v. Antelope Valley Union High School District*, 858 F.3d 1189, 1196 (9th Cir. 2017) is misplaced.  Opp. at 26-27.  The plaintiff in *M.C. did* challenge the LEA's inadequate teacher of the visually impaired ("TVI") services in his initial due process complaint and raised it again in his appeal to the district court. *M.C.*, 858 F.3d at 1195-96. The Ninth Circuit determined there was no waiver because the plaintiff previously raised this issue throughout the administrative process even though he did not challenge the Administrative Law Judge's "restatement of issues [] which omitted the adequacy of TVI services." *Id.* at 1196.  D.C. could not have raised any arguments because he never pursued the due process hearing, and M.B. chose not to raise the arguments he raises in this lawsuit in any due process hearing.

**D.    D.C. is Collaterally Estopped from Pursuing his Claims Because D.C. Still Relies on His 2015 Due Process Hearing to Assert his Claims Against VDOE.**

D.C.'s claims related to his 2015 placement dispute are barred because collateral estoppel applies to IDEA administrative decisions. MTD at 20. Yet, Plaintiffs assert that collateral estoppel does not bar D.C.'s claims because "D.C. and his parents are not basing their claims on anything that occurred prior to December 19, 2016." Opp. at 27.  While this may be true as to "claims against FCPS, relating to D.C." (FAC ¶ 114 n.27), D.C. still relies on his 2015 due process hearing to assert his claims against VDOE.  Because D.C. litigated these similar issues previously in 2015 and chose not to timely appeal the decision in state or federal court, he is collaterally estopped from re-litigating these issues here.  *See Capuano v. Fairfax Cnty. Pub. Bd*., No. 1:13-cv-00568-GBL-TRJ, 2013 U.S. Dist. LEXIS 155750, at *2-3 (E.D. Va. Oct. 29, 2013) (finding that plaintiff's claims were barred by collateral estoppel because he chose not to appeal the decision of the administrative hearing).  Thus, dismissal of D.C.'s claims is appropriate.

11

**E.** **Plaintiffs May Not Veil their IDEA claims as Constitutional Claims under 42 U.S.C. § 1983.**

Plaintiffs fail to assert a constitutional violation because their claims are simply IDEA violations cloaked as constitutional claims.   MTD at 12-13.  Plaintiffs try to distinguish *Sellers v. School Board of Manassas*, 141 F.3d 524 (4th Cir. 1998) since their claims concern "systemic *constitutional* violations, which cannot be cured within the administrative remedial scheme," and they only seek monetary damages." Opp. at 35.  The fact that Plaintiffs do not seek monetary damages is inapposite.  When a Section 1983 claim is "entirely based on rights arguably conferred by the IDEA," and there is no "right at issue conferred by the Constitution or other federal laws and not by the IDEA," dismissal of a Section 1983 claim is appropriate.  *K.A. ex rel. F.A. v. Fulton Cnty. Sch. Dist.*, 741 F.3d 1195, 1210 (11th Cir. 2013) (dismissing parents' Section 1983 claims asserting deprivation of their constitutional right to due process when the parents participated in a due process hearing, had their case heard by a hearing officer, and appealed the hearing officer's decision to the federal court).  Plaintiffs maintain that VDOE interfered with or deprived them of their constitutional property interest not to be deprived of a FAPE and their constitutionally protected interest to receive an IEP. Opp. at 37; FAC ¶ 313.  But a school district's failure to fulfill its IDEA obligations to a specific student does not amount to a constitutional violation.  *Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 193–94 (3d Cir. 2009).

**F.** **Plaintiffs Received Ample Due Process.**

Although Plaintiffs rely on *Goss v. Lopez*, 419 U.S. 565, 579 (1975), to argue they have "a legitimate property interest in that education that cannot be deprived without notice and the opportunity to be heard," the FAC shows Plaintiffs received ample due process.  Opp. at 38.  Due process requires "the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333-35 (1976).  "At the very minimum . . . students facing . . .

12

interference with a protected property interest must be given some kind of notice and afforded some kind of hearing." *Goss*, 419 U.S. at 579. Assuming *arguendo* that Plaintiffs have such a property interest in an IEP, FAC ¶ 311; Opp. at 37–38, Plaintiffs' allegations show that they were afforded due process because: (1) D.C. and M.B. were issued IEPs (FAC ¶¶ 35, 262); (2) D.C. and M.B., and their parents, participated in IEP team meetings when they had the opportunity to present evidence of D.C.'s and M.B.'s needs or requests for changes in the existing IEPs (*id.* ¶¶ 116, 251); (3) D.C. and M.B.'s parents agreed to IEPs (*id.* ¶¶ 35, 251, 262); and (4) D.C., M.B, and their parents had an avenue to appeal any disagreement with D.C.'s and M.B.'s IEPs, both through the administrative due process hearing and through a lawsuit filed with the courts. (*Id.* ¶¶ 27, 35).

### G. Plaintiffs Fail to State an Equal Protection Claim.

#### 1. Plaintiffs Fail to Establish They Were Treated Differently from Any Other Similarly Situated Person.

Plaintiffs' equal protection claims fail because they do not allege that they were treated differently from other similarly situated persons. MTD at 23. Plaintiffs allege that children in the Commonwealth with disabilities are similarly situated to those without disabilities. Opp. at 43; FAC ¶ 330. But neither group is similarly situated. *See, e.g.*, *Camac v. Long Beach City Sch. Dist.*, No. 09 CV 5309 (DRH) (ARL), 2011 U.S. Dist. LEXIS 79997, at *47-48 (E.D.N.Y. July 22, 2011) (dismissing equal protection claims because plaintiff could not show that the circumstances of "'similarly situated' non-disabled students" are "'prima facie identical' to [plaintiff]'s"). More important, Plaintiffs ignore that other children with disabilities may not be similarly situated to each other, as one child may have an emotional disability, and another child may have autism or a developmental disability. *See Endrew F. v. Douglas Cnty. Sch. Dist. RE-1*, 580 U.S. 386, 400 (2017); *Killoran v. Westhampton Beach Sch. Dist.*, No. 20-CV-4121(JS)(SIL), 2022 U.S. Dist. LEXIS 52169, at *25-27 (E.D.N.Y. Mar. 22, 2022) (dismissing plaintiff's equal

13

protection claims because plaintiff failed to plead "any factual allegations demonstrating how these 'alternately assessed special education students' circumstances are 'prima facie identical' to [plaintiff]'s.") (citations omitted) (emphasis in original).  Here, D.C. and M.B. do not suffer from the same alleged disabilities nor need the same types of accommodations.  Because Plaintiffs cannot establish a similarly situated comparator, they fail to establish an equal protection claim. *Rafano v. Patchogue-Medford Sch. Dist.*, No. 06-CV-5367 (JFB) (ARL), 2009 U.S. Dist. LEXIS 23731, at *16-17 (E.D.N.Y. Mar. 20, 2009).

### 2.   Plaintiffs Fail to Demonstrate That VDOE Acted with Animus.

Plaintiffs' equal protection claims also fail because there is no allegation that the allegedly unequal treatment stemmed from intentional or purposeful discrimination.  MTD at 14.  Plaintiffs assert that they "have detailed the discriminatory bias that animated Defendants' actions against them." Opp. at 44.  But Plaintiffs' claim that VDOE Defendants acted with discriminatory animus is unsupported by their flawed statistics.  "'[A] discriminatory effect against a group or class [that] may flow from state action, . . . does not run afoul of the Constitution unless it is an intended consequence of state action.'" *Hernandez v. Grisham*, 508 F. Supp. 3d 893, 991 (D.N.M. 2020) (quoting *SECSYS, LLC v. Vigil*, 666 F.3d 678, 685 (10th Cir. 2012)).  Plaintiffs claim VDOE Defendants acted with discriminatory animus yet do not allege evidence of intent.  Plaintiffs provide no specific allegations of how the hearing officers acted in a biased manner.  Instead, Plaintiffs support their claims with a flawed statistical analysis of VDOE hearing decisions which they assert demonstrates a history of bias.  Statistics alone cannot demonstrate bias because there is no disparate impact claim under the IDEA.[8]  *See* Section II(H)(1); *In re Int'l Bus. Machines*

---

[8] Applying Plaintiffs' flawed methodology to federal court cases underscores the shortcomings of their arguments.  A cursory review of 47 cases decided by federal district courts in the Eastern District of Virginia, from 1992 to 2022 (with one outlier case from 1981), shows that 79% of suits

*Corp.*, 618 F.2d 923, 930 (2d Cir. 1980) ("It seems evident that statistics alone, no matter how computed, cannot establish extrajudicial bias."). Moreover, mere speculation and unsupported conclusions as to why such outcomes occurred cannot establish animus.

> **3.    Strict Scrutiny Does Not Apply to Plaintiffs' Claims, and Plaintiffs' Claims Do Not Survive Rational Basis Review.**

Plaintiffs allege that "Defendants' actions deprive of [sic] them of fundamental rights, thus triggering strict scrutiny." Opp. at 46. First, Plaintiffs have no fundamental right to an education under the U.S. Constitution, nor do they assert any basis for a federal fundamental right to education. *McArthur v. Brabrand*, No. 1:21-cv-1435 (LMB/IDD), 2022 WL 2528263, at *7 (E.D. Va. July 7, 2022) (finding that because "education is not a 'fundamental' right within the United States Constitution," a policy that plaintiffs claimed jeopardized their right to an education was subject to a rational basis review). Second, while Plaintiffs assert that they are "being provided an education that is below acceptable standards of quality," there is no fundamental right to substantial equality in education under the Virginia Constitution. Opp. at 47; *Scott v. Commonwealth*, 443 S.E.2d 138, 142 (Va. 1994) ("Clearly, nowhere in Article VIII, §§ 1 and 2 is there any requirement for 'substantial equality' in spending or programs among or within the school divisions in the Commonwealth."). Third, even if there were a fundamental right to education, Plaintiffs do not assert that they have been denied that right. The FAC shows that free access to public education was offered to Plaintiffs. Because there is no fundamental right to free education catered to the peculiar preferences of each family, rational basis review applies.

Plaintiffs do not even contend that they can prevail under rational basis review. Opp. at

---

contesting the adequacy of a FAPE or asserting a violation of the IDEA were decided in favor of VDOE or the LEA involved. Only 21% of cases granted a child, or the parents of the child, all or part of the relief sought. Despite these statistics, Plaintiffs do not assert that the judiciary is biased, or that it is futile to seek judicial relief. Thus, any assertion based on Plaintiffs' flawed statistical analysis without more is pure speculation and cannot demonstrate animus. *See* **Ex. A.**

46-50.   Plaintiffs' own individualized IEPs demonstrate a legitimate government interest for differential treatment: students' approved plans are *individually* tailored to meet the needs of each student within the parameters set forth by the IDEA. *See R.F. by & through E.F. v. Cecil Cnty. Pub. Sch.*, 919 F.3d 237, 245-46 (4th Cir. 2019) ("[U]nder the IDEA, a school must offer an IEP reasonably calculated to enable a child to make progress appropriate in light of the child's . . . unique circumstances . . . .") (internal quotation marks omitted).

### H.   Plaintiffs Fail to State an IDEA Claim.

Plaintiffs argue that it satisfied its pleading requirements by alleging that (i) VDOE failed to provide adequate IEPs and that (ii) VDOE did not offer proper procedural safeguards due to "biased, unqualified hearing officers."  Opp. at 31-32.  However, Plaintiffs fail to state a claim against VDOE because Plaintiffs only allege procedural, not substantive, violations of the IDEA, and Plaintiffs have pled no IDEA violations for which VDOE is responsible.

### 1.   Plaintiffs Solely Allege Procedural Violations of the IDEA.

First, Plaintiff cannot establish a claim under the IDEA because procedural violations alone are insufficient to establish an IDEA claim unless they "result[] in the loss of an educational opportunity for the disabled child."  *T.B., Jr. by & through T.B., Sr. v. Prince George's Cnty. Bd. of Educ.*, 897 F.3d 566, 573 (4th Cir. 2018) (citation and internal quotation marks omitted). "[P]rocedural violations committed by [a LEA], including its failure to offer a *specific* placement[, are] not actionable [if] they did not result in a loss of an educational opportunity to [the child] or infringe on the parents' right to participate in the IEP process."  *K.J. ex rel. B.J. v. Fairfax Cnty. Sch. Bd.*, 361 F. App'x 435, 438 (4th Cir. 2010) (emphasis in original).

Here, FCPS provided both M.B. and D.C. with a FAPE because both were issued IEPs that addressed their identified needs, and FCPS provided their parents with an opportunity to participate in the formulation of those IEPs.  FAC ¶¶ 11, 13–14.  The Plaintiffs admit that they

were never prevented from participating in the IEP formulation process and that the Chaplicks and the Binghams participated in the IEP team's formulation of M.B.'s and D.C.'s IEPs. FAC ¶¶ 118–20, 136. While the Chaplicks and Binghams request that M.B. and D.C. be placed in their school-of-preference, the issue under the IDEA is not whether either of the schools identified by the Chaplicks or Binghams "is better, or even appropriate, but whether [FCPS] has offered . . . an appropriate program for [M.B. and D.C.] at [the FCPS schools identified in their IEPs]." *A.B. ex rel. D.B. v. Lawson*, 354 F.3d 315, 324 (4th Cir. 2004) (second alteration in original). The individual Plaintiffs received a FAPE and were not prevented from participating in the IEP process.

Plaintiffs' argument about the bias of hearing officers is a red herring. VDOE's due process hearing system mirrors the systems of many of Virginia's administrative agencies—and the Supreme Court of Virginia provides a roster of vetted hearing officers. 8 Va. Admin. Code § 20-81-210(C). The Plaintiffs base their claim of bias on the fact that VDOE compensates due process hearing officers. But many government officers with adjudicative responsibilities are paid by the agencies they serve, such as hearing officers for the worker's compensation system.

At best, Plaintiffs assert a disparate impact claim by alleging bias based on a neutral policy supporting "an impartial hearing officer system that is administered by the Supreme Court of Virginia." 8 Va. Admin. Code § 20-81-210(B). Yet, this claim must fail because the IDEA does not provide a cause of action for disparate impact. *See Washington v. Davis*, 426 U.S. 229, 248 (1976) (holding that a disparate impact claim can be raised only if a statute expressly provides for its application, as in Title VII or statutes concerning public employment).

### 2. The Plaintiffs Fail to Assert Any Violation of VDOE's Duties Under the IDEA.

Even taking Plaintiffs' allegations as true, Plaintiffs' arguments are inapposite because any purported IDEA violations asserted are outside the scope of VDOE's duties. Plaintiffs list several

alleged procedural shortcomings by VDOE affecting the day-to-day offering of a FAPE.  Opp. at 31-32.  However, nowhere do Plaintiffs claim that the alleged failures were responsibilities belonging to VDOE.  Indeed, the LEA like FCPS has the statutory duty to "direct[ly] provi[de] services under IDEA, including the development of an [IEP] . . . , the expenditure of IDEA funds . . . , and the maintenance of records and the supply of information to [VDOE] as needed to enable [VDOE] to function effectively in its supervisory role."  *Gadsby by Gadsby v. Grasmick*, 109 F.3d 940, 943 (4th Cir. 1997); 34 C.F.R. § 300.28 (providing that the LEA is the "authority legally constituted within a State for either administrative control or direction of, or to perform a service function for, [schools or districts]").

Simply, Plaintiffs ask this Court to require VDOE, the state education agency, to supplant an LEA's role by second-guessing the FAPE that the LEA offers.  Plaintiffs' principal complaint is that the FAPE provided by FCPS was not the FAPE they preferred.  However, FCPS, not VDOE, forms and implements the IEP, and the parents of the child were given an opportunity to participate in the formulation of an IEP.  8 Va. Admin. Code §§ 20-81-110(A), (E).  Moreover, while VDOE has the duty to establish an impartial due process hearing system, any changes to the system like the changes Plaintiffs seek do not guarantee any particular outcome in a due process hearing for Plaintiffs or any other children.  Plaintiffs' true disagreement is with the type of FAPE that FCPS offered, but even the most impartial due process hearing system may not change that outcome. Plaintiffs fail to state a claim that VDOE violated its duties under the IDEA.

## I.    The Class Allegations Cannot Survive Rule 23.

As VDOE's motion explained, claims over *individualized* education plans based on *individual* class members' distinct disabilities and circumstances do not meet the requirements of Rule 23.  MTD at 22-25.  Plaintiffs ask the Court to ignore class certification problems, insisting (based on a forty-year-old case) that such determinations are rare as hen's teeth at the pleading

stage.  Opp. at 22-23 (citing *Int'l Woodworkers of Am. v. Chesapeake Bay Plywood Corp.*, 659 F.2d 1259 (4th Cir. 1981)).  But class claims should be dismissed "when it is apparent from the complaint that a class action cannot be maintained."  *Elson v. Black*, 56 F.4th 1002, 1006 (5th Cir. 2023); *see also* 1 McLaughlin on Class Actions § 3:4 (19th ed.) (citing cases).  The class claims should be dismissed here because (1) Plaintiffs cannot satisfy the Rule 23(a)(2) commonality requirement; (2) they fail the ascertainability requirement; and (3) the IDEA exhaustion requirement bars class adjudication of unexhausted claims.

First, these claims cannot establish commonality as required by Rule 23(a)(2) and *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).  MTD at 23-24.  The VDOE Defendants explained that class certification is impossible for the same reasons as in *Parent/Professional Advocacy League v. City of Springfield*, in which there was no "particular driver—a 'uniform policy or practice that affects all class members.'"  934 F.3d at 30.  Plaintiffs do not even try to distinguish *Parent/Professional Advocacy League* on commonality grounds.  *See* Opp. at 23-24.  Instead, they offer the conclusory and unsupported assertion that the FAC alleges "uniform patterns and practices that deprive children with disabilities of their rights on a class-wide level." *Id.* at 24.  But Plaintiffs themselves admit that some due process hearings result in favorable rulings, many are settled on mutually agreeable terms, and less than a third result in no relief for parents.  Opp. at 6.  So Plaintiffs' own allegations rebut their unsubstantiated assertions of "uniform" violations, and thus make class certification impossible under Rule 23(a)(2).[9]

Second, the proposed classes are crafted in a way that require individualized inquiries that render them unascertainable.  MTD at 24-25.  Plaintiffs object that questions of eligibility and

---

[9] Plaintiffs' allegations also distinguish the cases they rely on for the generic proposition that some IDEA classes—none of which bear any resemblance to Plaintiffs' theory focused on supposedly "uniform" bias in due process hearings—could be certified.  Opp. at 23-24.

disability "can be objectively determined based solely on that child's educational records and without resort to individualized inquiries."  Opp. at 24.  But that objection admits that those questions require reviewing each "child's educational records"—reviews that are *themselves* "individualized inquiries" and often contested ones at that.  *See, e.g.*, *A.J. v. Bd. of Educ.*, 679 F. Supp. 2d 299, 305 (E.D.N.Y. 2010).  That is fatal under the established test for ascertainability that asks whether class identification would require "extensive and individualized fact-finding or 'mini-trials.'"  MTD at 24 (quoting *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014)).  Plaintiffs' response that those individualized inquiries might rest on "objective" questions, *see* Opp. at 24, thus is beside the point.  And their request to punt on ascertainability until later should be rejected as they do not even try to offer any alternative ascertainable classes.  *See* Opp. at 25.[10]

Third, the need for administrative exhaustion makes class certification impossible.  MTD at 25.  As explained above, the bedrock IDEA requirement of administrative exhaustion makes it impossible to afford class-wide injunctive relief.  *See supra* Section II(A).  And there is no basis for creating the exceptions to that exhaustion requirement that Plaintiffs require.  *See* Opp. at 25.  Plaintiffs do not dispute that without those exceptions, their class claims cannot proceed.

## CONCLUSION

For these reasons, the Court should grant VDOE and Superintendent Balow's Motion to Dismiss.

---

[10] Plaintiffs' argument that the proposed classes are not fail-safe classes because they are not defined by "entitlement to relief in this case" is incorrect.  Opp. at 24 n.4.  The classes are defined by reference to disability and IDEA eligibility.  Baking those questions into the class definitions impermissibly tethers class membership to the merits of the claim.  MTD at 25 n.9.

Dated: March 17, 2023

Respectfully submitted,

**MCGUIREWOODS LLP**

/s/ Jackie L. White
Jackie L. White (VSB No. 96317)
1750 Tysons Boulevard
Suite 1800
Tysons, VA 22102
Telephone: (703) 712-5474
Facsimile: (703) 712-5206
jwhite@mcguirewoods.com
*Counsel of Record for VDOE
and Jillian Balow, in her official capacity as
Superintendent of Public Instruction of
VDOE*

Farnaz F. Thompson (VSB No. 75892)
888 16th Street NW
Suite 500
Washington, DC 20006
Telephone: (202) 857-2488
Facsimile: (202) 828-3358
fthompson@mcguirewoods.com

Brian D. Schmalzbach (VSB No. 88544)
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
Telephone: (804) 775-4746
Facsimile: (804) 698-2304
bschmalzbach@mcguirewoods.com

Amy E. Hensley (VSB No. 80470)
Assistant Attorney General
Office of the Attorney General
202 North 9th Street
Richmond, Virginia 23219
Telephone: (804) 371-2267
Facsimile: (804) 371-2087
ahensley@oag.state.va.us

Jason S. Miyares
Attorney General of Virginia

Steven G. Popps
Deputy Attorney General

Jacqueline C. Hedblom
Senior Assistant Attorney General/Chief

Deborah A. Love
Senior Assistant Attorney General/Chief

**CERTIFICATE OF SERVICE**

I hereby certify that on the 17th of March 2023, I filed a copy of this document using the Court's ECM/ECF filing system, which will send an electronic notification of the same (NEF) to counsel of record for the plaintiff.

/s/ Jackie L. White
Jackie L. White (VSB No. 96317)
MCGUIREWOODS LLP
1750 Tysons Boulevard
Suite 1800
Tysons, VA 22102
Telephone: (703) 712-5474
Facsimile: (703) 712-5206
jwhite@mcguirewoods.com