IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| D.C., *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> FAIRFAX COUNTY SCHOOL BOARD, *et al.*, <br><br> *Defendants*. | 1:22-cv-01070 (MSN/IDD) |

## **MEMORANDUM OPINION & ORDER**

This matter comes before the Court on Fairfax County School Board's Motion to Dismiss (Dkt. No. 51) and the Virginia Department of Education's Motion to Dismiss (Dkt. No. 58). Having considered the arguments made in the parties' written briefs and at oral argument, the Court will grant those motions for the reasons that follow.

**I.   BACKGROUND**

Congress enacted the IDEA to guarantee children with disabilities an education that meets their needs and to give parents of children with disabilities a say in how their children are educated. Specifically, the IDEA grants children a substantive right to a free appropriate public education (a "FAPE"), *see* 20 U.S.C. § 1401(9), and grants children and their families procedural rights to safeguard that FAPE, *see id.* § 1415. To realize its goals, the IDEA conditions federal funding on school systems' provision of both the substantive rights and the procedural safeguards outlined by the law. *See id.* § 1407(a)(1). Most often, school systems satisfy that condition by providing disabled students with individualized education plans ("IEPs") that provide necessary accommodations. *Hogan v. Fairfax Cnty. Sch. Bd.*, 645 F. Supp. 2d 554, 562 (E.D. Va. 2009).

1

Plaintiffs seek to bring this action on behalf of a class led by D.C. and M.B. (two Fairfax County students with disabilities), their parents (with D.C. and M.B., the "Individual Plaintiffs"), and Hear Our Voices, Inc. (a disability advocacy organization).[1] Together, Plaintiffs challenge Virginia's administration of the IDEA. In all, they raise nine claims against the Virginia Department of Education ("VDEO"), VDEO Superintendent Jillian Balow, Fairfax County Public Schools ("FCPS"), and FCPS Superintendent Michelle Reid seeking both declaratory and injunctive relief. Specifically, Plaintiffs ask this Court to declare that Virginia's IEP-review process violates the IDEA and deprives families of due process. Plaintiffs then ask the Court to enter an injunction that would force Defendants to implement changes that would bring Virginia into compliance with Plaintiffs' understanding of the IDEA.

## II. DISCUSSION

Article III requires "any person invoking the power of a federal court" to "demonstrate standing to do so." *Virginia House of Delegates v. Bethune-Hill*, 139 S.Ct. 1945, 1950 (2019). Thus, before proceeding to the merits of a case, the Court must first address that jurisdictional requirement. Having done so, the Court finds that none of the Plaintiffs have standing, and their claims must therefore be dismissed.

### A. Standing (All Plaintiffs)

Generally, to establish standing, plaintiffs are required to show that they (1) suffered a concrete and particularized injury, that (2) is fairly traceable to the challenged conduct, and (3) is likely to be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–

---

[1] The Individual Plaintiffs' claims arise out of two different adverse IEP determinations. D.C. and his parents claim that his rights under the IDEA were violated when Defendants refused to modify his IEP determination and declined to pay for the cost of his full-time residence at a group home. Dkt. No. 43 ¶¶ 258–69 ("Am. Compl."). M.B. and his parents claim that his rights were violated when Defendants refused to modify his IEP determination and declined to pay his tuition at a private day school. Am. Compl. ¶¶ 287–94.

61 (1992). And when forward-looking injunctive relief is sought, there must also be a showing that the plaintiff faces a "real and immediate threat" of being injured in the future. *See Thomas v. Salvation Army S. Terr.*, 841 F.3d 632, 638 (4th Cir. 2016) (quoting *City of L.A. v. Lyons*, 461 U.S. 95, 111 (1983)). For the reasons stated below, the Court finds that only the Individual plaintiffs have standing to sustain this action.

### 1. The Organizational Plaintiff

Organizations, like individuals, may sue in their own right by satisfying the standard tripartite test. *S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands*, LLC, 713 F.3d 175, 182 (4th Cir. 2013). However, organizations can also sue on behalf of their members when they show that (1) the represented members have standing to sue on their own behalf; (2) the interest the organization seeks to protect is connected to the organization's purpose; and (3) neither the claim nor the relief would require the participation of the individual members. *Id.* at 184. HOV fails on both fronts.

#### a. HOV's Standing to Sue on Behalf of Its Members

First, HOV cannot stand in the shoes of its members. And because there is no doubt that the first two prongs of the associational standing inquiry are satisfied here, this case turns on Plaintiffs' ability to satisfy the third. The Court finds that they do not.

Unlike the first two requirements of the associational standing inquiry (which are rooted in Article III's goal of ensuring adversarial vigor), the third is "less than a constitutional necessity" and is "best seen as focusing on matters of administrative convenience and efficiency, not on elements of a case or controversy within the meaning of the Constitution." *United Food & Com. Workers Union v. Brown Grp., Inc.*, 517 U.S. 544, 556–57 (1996). For that reason—even when a claim is justiciable—"[p]rudential concerns often bar a third party from suing on behalf of others

who chose not to sue." *Parent/Professional Advoc. League v. City of Springfield*, 934 F.3d 13, 33 (1st Cir. 2019).

Here, even if the Court found that pursuing Plaintiffs' claims would not require the participation of individual students,[2] associational standing is inappropriate because HOV would be standing in the shoes of putative class members that may not have been able to bring these claims on their own behalf.

Take the two families before the Court in this case. As will be discussed below, D.C. and the Chaplicks are unable to sustain their claims because they failed to exhaust Virginia's administrative procedures. And—absent that exhaustion—there is no reason why organizations (like HOV) should be able to press the claims of students (like D.C.) in the aggregate. *Cf. id.* ("[I]t would not make sense to allow the organizations here to escape the exhaustion requirement for students they are purportedly representing."). Similarly, allowing HOV to sue on behalf of M.B. and the Binghams does not cure the fact that those claims are duplicative and undercut the interest in judicial efficiency. For those reasons, the Court finds that associational standing is inappropriate.

---

[2] The Court in unconvinced that adjudicating these claims would require individual participation. Individualized proof is not required "when the defendant's conduct is the primary subject of inquiry." *Hanover Cnty. NAACP v. Hanover Cnty.*, 461 F. Supp. 3d 280, 289 (E.D. Va. 2020). And, to grant relief here, the Court would need only focus on the Defendants' conduct (not Plaintiffs') to determine whether Virginia's system provides all the rights and procedural safeguards that the IDEA requires. And even if that inquiry did require resolving some individualized issues, those secondary questions do not foreclose HOV's ability to satisfy the standing requirements. *See All. For Open Soc'y Int'l, Inc. v. U.S. Agency for Int'l Dev.*, 570 F. Supp. 2d 533, 543 (S.D.N.Y. 2008) (finding that—even though some individualized showings will need to be made—associational standing was proper because "the conduct of Defendants . . . will be the primary subject of the inquiry").

However, as the Court explains, other prudential and administrative concerns block HOV's ability to show that associational standing would be appropriate in this case.

### b. HOV's Standing to Sue in Its Own Right

Second, the organization also lacks the ability to sue on its own behalf. Again, to establish Article III standing to sue in its own right, HOV must show that it faces an imminent threat of being injured in the future. *Lujan*, 504 U.S. at 560–61. As do many organizations, HOV claims that it is and will continue to suffer a cognizable injury because Defendants' conduct caused an "involuntary diversion of resources" which "frustrated HOV's ability to carry out its mission." Dkt. No. 65 at 22. Specifically, HOV seems to suggest that, because Virginia's IEP-review process is riddled with "insidious" problems, the organization will have to spend more of its time and resources lobbying to have the policies changed. *Id.* But even accepting that as true, the Fourth Circuit has routinely rejected similar arguments.

In *Lane v. Holder*, a gun-rights organization whose activities included advocacy as well as "education, research, publishing and legal action," challenged a federal firearm statute. 703 F.3d 668, 671 (4th Cir. 2012). The group alleged that it had suffered an Article III injury because it needed to divert resources in order to help its members navigate the new law, and thus could not spend those funds on other goals. *Id.* The Fourth Circuit held that voluntary "budgetary choices" are not cognizable injuries under Article III. *Id.* at 675. And in *CASA de Maryland, Inc. v. Trump*, the Fourth Circuit, "put a finer point" on *Lane*'s holding when it explained that "it is not relevant for Article III purposes whether [the plaintiff] felt moved to act in a particular manner." 971 F.3d 220, 238 (4th Cir. 2020). Indeed, as the Court found, "[m]any statutes and regulations may spur private organizations to react to them in some fashion." *Id.* at 239. Thus, "a voluntary budgetary decision, however well-intentioned, does not constitute Article III injury." *Id.* Holding otherwise "would give *carte blanche* for any organization to manufacture standing by choosing to make

5

expenditures about its public policy of choice." *Id.* (internal quotation omitted). The Court follows those instructions today.

HOV has the "principal mission of securing appropriate and equal education services for students with disabilities." Am. Compl. ¶ 39. HOV, like the organizational plaintiffs in the cases discussed above, pursues its (admittedly noble) goals "through assistance, advocacy, and legislative efforts." *Id.* For that reason, like the organizational plaintiffs in the cases discussed above, HOV cannot establish standing. Simply put: HOV is an advocacy organization; and as such, it is not injured simply because Defendants action compelled the organization to do the very thing it was formed to do. Indeed, "[i]f this Court were to allow a party whose organizational mission is to engage in policy advocacy to claim injury on the basis of a need to engage in that exact activity, any advocacy group could find standing to challenge laws when there are changes in policy." *Know Your IX v. DeVos*, No. 1:20-cv-1224, at *6 (D. Md. Oct. 20, 2020); *see also Knowledge Ecology Int'l v. Nat'l Institutes of Health*, No. 1:18-cv-1130, at *6 (D. Md. Apr. 11, 2019) (explaining that the organizational plaintiff's "core purpose" as an organization was "pursuing precisely the type of advocacy it undertook" and that resources spent on litigating the case in front of the court were "very much in line with [the plaintiff's] core mission rather than a diversion of resources away from it.").

### 2. The Individual Plaintiffs

The Individual Plaintiffs have standing.

#### a. The Individual Plaintiffs Have Alleged Cognizable Injuries

Defendants first argue that the Individual Plaintiffs lack standing to pursue declaratory and injunctive relief because they have not shown a threat of imminent injury since neither alleges that they will go through the IEP-review process again in the future. *See* Dkt. No. 59 at 17. Plaintiffs

respond that, under Fourth Circuit law, they are not required to establish an imminent threat of future injury—because the Defendants are "engaged in ongoing violations of federal law that cause Plaintiffs *ongoing* injury." Dkt. No. 65 at 19 (emphasis added). Specifically, Plaintiffs claim that Defendants continue to injure them by depriving children and their families of "the protections afforded by the IDEA," Am. Compl. ¶ 196, and of "viable avenues of relief through adequate due process hearings," *id.* ¶ 280, and of "free, full, initial evaluation," *id.* ¶ 225. *See* Dkt. No. 65 at 20. Plaintiffs also assert that they suffer an ongoing injury because "Defendants' actions have compelled [Plaintiffs] to pay, *and continue to pay*, for a significant portion of the services to which their children are entitled." *Id.* at 8 (citing Am. Compl. ¶¶ 260–69, 293–94) (emphasis added).

To support their argument, Plaintiffs convincingly rely on *Deal v. Mercer Cnty. Bd. of Educ.*, 911 F.3d 183 (4th Cir. 2018). The plaintiffs in that case challenged a school district's "Bible in Schools" program on Establishment Clause grounds. The defendant school district attacked plaintiffs' standing to assert the claim. Specifically, the defendant there argued that plaintiffs failed to establish a cognizable injury that would entitle them to forward-looking relief. Plaintiffs disagreed, asserting that they faced an ongoing injury because (among other things) the family had—and continued—to bear the additional costs of having the student attend school in another district. The Fourth Circuit accepted that claim. In doing so, the appellate court held that—because the injury persisted, *i.e.*, because the family remained compelled to have the student attend school in a different district and incur the additional costs of doing so—the plaintiffs adequately alleged that they suffered an "ongoing" injury and thus were entitled to pursue injunctive relief. *Deal*, 911 F.3d at 188.

Like the plaintiffs in *Deal*, Plaintiffs here have adequately alleged that they continue to be injured by Defendants' alleged conduct. Again, the Amended Complaint alleges that, because

7

D.C.'s IEP request was denied, the Chaplicks are forced to pay his residential expenses at the Grafton School. Am. Compl. ¶¶ 258–69. Plaintiffs also allege that, because M.B.'s IEP was denied (and because that denial was upheld by a hearing officer), the Binghams are forced to pay his tuition costs at the Phillips School. *Id.* ¶¶ 287–94. Each of these allegations state ongoing injuries. And notwithstanding Defendants' arguments to the contrary, Plaintiffs are not required to also allege an imminent injury as the ongoing nature of the injuries that were alleged is sufficient to maintain an action for injunctive relief. *See Deal*, 911 F.3d at 189 (citing *Kenny v. Wilson*, 885 F.3d 280, 288 (4th Cir. 2018) (recognizing that a plaintiff can "satisfy the injury-in-fact requirement for prospective relief" either by demonstrating "a sufficiently imminent injury in fact" *or* by demonstrating "an ongoing injury")); *see also Abbott v. Pastides*, 900 F.3d 160, 168 (4th Cir. 2018) (noting that a plaintiff may seek prospective relief against a defendant's "*ongoing or imminent*" conduct) (emphasis added)).

As such, the Court finds that Plaintiffs have established a cognizable injury capable of supporting their claims for prospective relief.

### b. The Individual Plaintiffs' Injuries are Redressable by a Favorable Decision

Defendants also argue that, even if Plaintiffs had alleged a cognizable injury, that injury would not be redressable. Dkt. No. 69 at 11.

To satisfy the redressability element of standing, a plaintiff "must show that 'it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Sierra Club v. U.S. Dep't of the Interior*, 899 F.3d 260, 284 (4th Cir. 2018) (*quoting Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 181 (2000)). However, the burden imposed by this requirement is not onerous: Plaintiffs "need not show that a favorable decision will relieve [their] every injury." *Id.* (quoting *Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982)). Instead,

8

plaintiffs "need only show that they personally would benefit in a tangible way from the court's intervention." *Id.* (internal quotation omitted).

Meeting that low bar, Plaintiffs have established that their injuries are redressable. Plaintiffs alleged that, because Defendants are depriving them of the opportunity to have a due process hearing before an unbiased hearing officer, their IEP requests were improperly denied, and they are forced to bear additional educational costs for D.C. and M.B. As relief, Plaintiffs ask the Court to order Defendants to bring its systems into compliance with the IDEA and allow Plaintiffs to reassert their claims to a now-neutral decision-maker. Thus, taking those allegations as true, Plaintiffs' injuries would certainly be remedied if this Court were to grant the sought-after relief.

Urging the Court to reach the opposite conclusion, Defendants argue that Plaintiffs injuries would be redressable only if a favorable decision in this case would guarantee a different outcome in future IEP-review processes. Dkt. No. 89 at 14:17–21 ("What wouldn't be solved is redressability, because even if Your Honor granted everything that plaintiffs requested, it still wouldn't really remedy the situation, because what they're asking for is a different outcome from the due process hearing."). However, the Supreme Court has not required such certainty. Rather, as that Court has held, "[t]he removal of even one obstacle to the exercise of one's rights, even if other barriers remain, is sufficient to show redressability." *Sierra Club v. U.S. Dep't of Interior*, 899 F.3d 260, 285 (2018).

Here, Plaintiffs allege that the inability to assert their claims to a neutral arbiter is the primary obstacle standing between them and the relief they seek. And although it is no doubt possible that even a new hearing officer would reach the same conclusion on Plaintiffs' IEP requests, that alone is insufficient to preclude a finding of redressability. *See Larson*, 456 U.S. at 243 n.15 (rejecting the "draconic" notion that a plaintiff must show that they are certain to

9

ultimately obtain everything they seek to establish redressability). Instead, it is enough to find that this Court would be removing at least one obstacle by granting relief which gives Plaintiffs the *opportunity* to present their claims to an unbiased hearing officer. And, for that reason, a favorable decision in this case would bestow a "tangible benefit" on Plaintiffs. *Cf. Deal*, 911 F.3d at 190. Thus, the Individual Plaintiffs' injuries are redressable.

### B. Exhaustion (D.C. and the Chaplicks)

Notwithstanding their (failed) standing arguments, Defendants assert that the Court lacks jurisdiction to hear the claims brought by D.C. and the Chaplicks because the family did not exhaust their administrative remedies by challenging that decision through a due-process hearing. Dkt. No. 52 at 5–8; Dkt. No. 59 at 15–19. The Court agrees.[3]

To bring a claim under the IDEA, plaintiffs must first exhaust their administrative remedies. *E.L. v. Chapel Hill-Carrboro Bd. Of Educ.*, 773 F.3d 509, 514–15 (4th Cir. 2014). To do so, plaintiffs are typically required to: first, request an independent evaluation of the challenged IEP determination; then, second, try other dispute-resolution procedures (like mediation); then, finally, assert their challenge in a due process hearing before a hearing officer. *See generally* 20 U.S.C. § 1415. And when a plaintiff fails to do so, the court lacks subject matter jurisdiction to hear their claims. *See K.I. v. Durham Pub. Sch. Bd. of Educ.*, 54 F.4th 779, 794–95 (4th Cir. 2022).

By their own admission, the Chaplicks did not satisfy the exhaustion requirement. Instead, Plaintiffs argue that they were not required to go through a due process hearing for two reasons: first, because they are making "systemic" claims; and second, because going through the administrative process would have been futile. Both arguments fail.

---

[3] While Counts I and II are brought under 42 U.S.C. § 1983, this exhaustion requirement applies to those claims all the same. *See Fry v. Napoleon Cmty. Schs.*, 580 U.S. 154, 168 (2017) ("[The IDEA]'s exhaustion rule hinges on whether a lawsuit seeks relief for the denial of a FAPE . . . . If a lawsuit charges such a denial, the plaintiff cannot escape [the IDEA's exhaustion requirements] merely by bringing [their] suit under a statute other than the IDEA").

First, the Court rejects Plaintiffs' invitation to apply a lowered exhaustion standard to claims that challenge entire systems. *See* Dkt. No. 65 at 27–30 (relying on out-of-circuit cases, including *W.H. v. Tennessee Dep't of Educ.*, No. 3:15-cv-1014, 2016 WL 236996, at *6 (M.D. Tenn. Jan. 20, 2016)). But—while it acknowledges the courts in other jurisdictions that have done so—this Court is nonetheless constrained by the law of the Fourth Circuit, which has not yet adopted that modified standard. For that reason, the Court will not alter the existing exhaustion standards here.

Second, the Court rejects Plaintiffs' futility arguments. The Chaplicks suggest that exhausting their administrative remedies would have been futile because that hearing officer "has demonstrated a decades-long pattern of bias against families of disabled and special needs students seeking relief." Dkt. No. 65 at 31. However, to support that suggestion, Plaintiffs point to statistics about how often that hearing officer rules in favor of families seeking relief, the fact that the hearing officer ruled against the Chaplicks several years prior, and the fact that the officer refused to recuse herself from D.C.'s more-recent case. *Id.* None of those things are enough to overcome the "presumption of honesty and integrity" that hearing officers enjoy. *See K.I. v. Durham Pub. Sch. Bd. Of Educ.*, No. 1:19-cv-857, 2020 WL 3512213, at *6 (M.D.N.C. June 29, 2020). And because Plaintiffs' speculations fall short of a "clear showing of actual bias," this Court finds that exhaustion would not have been futile and the failure to do so is not excused. *Cf. id.*

### C. Duplicative Litigation (M.B. and the Binghams)

Finally, Defendants argue that the claims brought by M.B. and the Binghams should also be dismissed because, after the hearing officer denied their claim at the due process hearing, the Binghams filed an administrative appeal that is currently pending before another judge in this

11

courthouse. *See* Dkt. No. 52 at 8–9 (referring to *M.B. v. Fairfax Cnty. Sch Bd.*, 1:22-cv-930 (E.D. Va.) (Ellis, J.)). The Court agrees.

The Supreme Court has charged the lower federal courts to adhere to the principle of avoiding duplicative litigation. *See Colorado River Conserv. Dist. v. United States*, 424 U.S. 800, 817 (1976). Generally, "[d]uplicative claims include those in which there are no significant differences between the claims, parties, and available relief in the two suits." *Krakauer v. Dish Network, LLC*, No. 1:14-cv-333, 2017 WL 4417957, at *5 (M.D.N.C. Oct. 3, 2017). And when faced with duplicative suits, a district court may exercise its discretion to dismiss, transfer, or stay the iterative action. *MVP Grp. Int'l, Inc. v. Smith Mountain Indus., Inc.*, No. 2:11-cv-2608, 2012 WL 425010, at *1 (D.S.C. Feb. 9, 2012).

Here, the Binghams' claims in their administrative appeal are substantially similar to the ones made in this case. In both cases, the family makes almost identical factual allegations. Both cases seek to undo the hearing officer's determination on M.B.'s IEP request. And both cases would give the Binghams separate bites at the proverbial apple. Worse than that, however, is the reality that (as with any duplicative suit) entertaining the Binghams claims would create a risk of dueling decisions coming from judges in the same courthouse. For that reason, the Court will, in the interest of judicial economy, use its discretion to dismiss the claims brought by M.B. and the Binghams as impermissibly duplicative.

## III.     CONCLUSION

For the reasons discussed above, none of the Plaintiffs have presented a claim that can move beyond this stage.[4] Accordingly, it is hereby

**ORDERED** that Plaintiffs' Motion for Leave to File Supplemental Authority (Dkt. No. 71) is **GRANTED**; it is further

**ORDERED** that Fairfax County School Board's Motion to Dismiss (Dkt. No. 51) is **GRANTED**; and it is further

**ORDERED** that Virginia Department of Education's Motion to Dismiss (Dkt. No. 58) is **GRANTED**.

**SO ORDERED.**

/s/
Michael S. Nachmanoff
United States District Judge

July 25, 2023
Alexandria, Virginia

---

[4] This opinion should not be read as foreclosing a different plaintiff's (or group of plaintiffs') ability to pursue the claims at issue here. Indeed, at this time, the Court does not see how the deficiencies discussed above would apply to plaintiffs that had taken full advantage of all available administrative procedures—including the ability to seek the disqualification of an allegedly biased hearing officer in the Virginia Supreme Court—and chose to challenge Virginia's implementation of the IDEA in a single suit. The Court also doubts that HOV's (or a different organization's) ability to establish associational standing would implicate the same prudential concerns if attempting to stand in the place of such individuals. Thus, while this case must be dismissed, a future case may fare differently.

13